# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION
### www.flmb.uscourts.gov

In re:

GABRIEL C. MURPHY,             Case No.: 9:17-bk-07843-FMD

       Debtor.             Chapter 7

_____/

## CERTIFICATION OF GABRIEL C. MURPHY IN SUPPORT OF
## MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION

COMES NOW, Gabriel C. Murphy, the Debtor in the above matter, in support of his motion to dismiss the within involuntary bankruptcy proceeding, hereby certifies as follows:

1.       I am the Debtor in the above captioned matter, and as such, am fully familiar with the facts contained herein. I am also willing to testify as to these facts, should the Court determine that an evidentiary hearing is necessary.

2.       The within involuntary bankruptcy proceeding was filed on September 5, 2017 by three entities – Investment Theory, LLC ("Investment Theory"), Digital Technology, LLC ("Digital Technology"), and Guaranty Solutions Recovery Fund 1, LLC ("Guaranty Solutions"), hereinafter collectively referred to as the "Creditors."

3.       The Creditors list my address on the petition as 1237 Homestead Road North #14, Lehigh Acres, FL 33936. The Summons that was issued in this case was issued on September 7, 2017 (Doc. 3), and the Creditors' attorney filed a Second Amended Certificate of Service (Doc. 6) indicating that he mailed the Summons and Involuntary Petition to that address, "his dwelling house or usual place of abode." However, as the Creditors are well aware, that address is a post office box, and is not my residence. In fact, I no longer use that post office box. Annexed hereto as Exhibit "A" is a copy of the docket of a Lee County case filed against me by Investment Theory,

case no. 17-CA-001354, and a Return of Service of a Writ, indicating that Investment Theory instructed the Sheriff to serve me at my actual residence of 421 La Perouse Street, Lehigh Acres, Florida 33974, and that I was indeed personally served at that residential address. This personal service was accomplished on May 16, 2017. Also indicated is that the attorney for Investment Theory is Kelly Kwiatek, who is the same person who signed the Involuntary Petition as "attorney in fact" for both Investment Theory and Digital Technology. Thus, the Creditors intentionally mailed the Summons and Involuntary Petition to an address which they knew was not my "dwelling house or usual place of abode."

4.      I never received the Summons or Involuntary Petition, and was not made aware of the existence of the involuntary bankruptcy until my Kansas attorney informed me that a Notice of Automatic Stay was filed in a lawsuit in Kansas, case no. 16CV01123, in which I am a Plaintiff (among other Plaintiffs). Annexed hereto collectively as Exhibit "B" are the Notice of Automatic Stay and the caption of the 41-page Complaint in that matter. Note that the Notice indicates in the Certificate of Service that it was served on September 7, 2017, but it was not filed with the Court until September 19, 2017. I have thus had only a few days to respond to this involuntary filing.

5.      It is my understanding that in order for the involuntary bankruptcy to stand, each of the Creditors must have a claim which is not contingent or disputed. This is not the case with respect to Digital Technology. Digital Technology represents in the involuntary petition that it is due $325,664.45 pursuant to a "promissory note and personal guaranty." Annexed hereto collectively as Exhibit "C" are the following documents: Promissory Note between Digital Technology and Crowd Shout Ltd. in the face amount of $400,000; my Personal Guaranty of that Note; the Asset Purchase Agreement relating to the Note; and a Notice of Indemnification Claim relating to those documents.

6.      Paragraph 3 of the Promissory Note provides that the amount due under the Note is subject to the terms and conditions of the Asset Purchase Agreement, including a right of offset of any amount due.  Sections 5.3 and 5.5 of the Asset Purchase Agreement provides for a right of indemnification against Digital Technology by Crowd Shout Ltd. of up to $400,000 (which is the "holdback amount," as defined in section 2.3).  The Notice of Indemnification Claim dated November 19, 2014 effectively eliminated the obligation under the Promissory Note, since it eliminated the "holdback amount" of $400,000.  Thus, I am not liable for any amount under the Personal Guaranty.  I am not requesting that this Court rule on the merits of this issue, but I am simply demonstrating that at the very least, the amount allegedly owed to Digital Technology is both disputed and contingent.  This particular issue is the subject of litigation presently underway in the Isle of Man and the Republic of Malta.  See captions collectively annexed hereto as Exhibit "D."

7.      I assert that this involuntary bankruptcy was filed against me in bad faith, for the improper purpose of Michael Connolly attempting to avoid having his deposition taken in a state court matter which he filed against me in Kansas in January of 2015.  Michael Connolly is the majority and controlling owner of both Digital Technology and Investment Theory.  See letter from one of his attorneys confirming this, annexed hereto as Exhibit "E."  There is ongoing litigation between myself individually and my companies and Michael Connolly and his companies, in Kansas, Florida, the Isle of Man, and the Republic of Malta.  Kelly Kwiatek, who signed the involuntary petition on behalf of Digital Technology and Investment Theory, is one of Michael Connolly's attorneys.

8.      Annexed hereto as Exhibit "F" is the 18-page docket of one of the Kansas lawsuits, case no. 15CV00453.  In that lawsuit, as shown on page 17 of the docket, a subpoena duces tecum

3

was issued to Michael Connolly, an application for a commission was made so that Mr. Connolly could be served in Florida. Thereafter, in December of 2016, a notice to take his video-taped deposition was served upon Mr. Connolly, and an affidavit of service was filed. As a result of Michael Connolly being served with a subpoena, he filed suit in Orange County, Florida, the day prior to his scheduled deposition, attempting to enjoin me from doing so. However, the Orange County court issued an Order compelling the deposition of Michael Connolly. The Orange County Complaint and the Order Compelling Deposition are annexed hereto collectively as Exhibit "G."

9.     Michael Connolly appealed the Order compelling his deposition to the 5th District Court of Appeals (the "5th DCA") through the filing of a Writ of Certiorari. The 5th DCA did not hold oral argument, and briefs and reply briefs had been submitted approximately one month ago. Thus, prior to the filing of this involuntary bankruptcy petition, this issue was ripe for determination by the 5th DCA. See 5th DCA docket, annexed hereto as Exhibit "H." Thus, the 5th DCA could have rendered its decision at any time, when Michael Connolly's companies filed the involuntary bankruptcy case against me.

10.     Michael Connolly, through his attorney, filed a Notice of Automatic Stay in the 5th DCA matter, indicating that a bankruptcy petition was filed against me, and that therefore the appeal should be stayed. See Notice annexed hereto as Exhibit "I." So, essentially, Michael Connolly stayed the Order compelling his deposition, by having his companies file a bankruptcy against me.

11.     Similarly, as set forth previously, Michael Connolly had his attorney in Kansas file a Notice of Automatic Stay in the Kansas case in which I am a Plaintiff and Michael Connolly is a Defendant. It is my understanding that this Notice of Automatic Stay is improper, since only

actions against me are stayed, not actions being prosecuted by me. This is just other evidence of bad faith on the part of Michael Connolly and the Creditors.

12.     The within involuntary bankruptcy filing is basically the latest in a series of litigious matters over several years between me (and my companies) and Michael Connolly (and his companies). It is respectfully submitted that the involuntary petition has been filed for an improper purpose, and should not be allowed to continue.

13.     I certify under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2017.

/s/ Gabriel C. Murphy
Gabriel C. Murphy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished **electronically via CM/ECF**, or otherwise by **Regular US Mail**, to the following interested parties, on September 28, 2017:

U.S. Trustee, 501 E. Polk Street, Suite 1200, Tampa, FL 33602
Richard R. Thames, Esq., Thames Markey & Heekin, P.A., 50 N. Laura St. #1600, Jacksonville, FL 32202
All persons receiving notice via CM/ECF

BRIAN D. ZINN, LLC
*Counsel for Debtor*
1342 Colonial Boulevard, Suite K230
Fort Myers, Florida 33907
Phone: (239) 418-1529
Facsimile: (239) 236-0295

  /s/ Brian D. Zinn
BRIAN D. ZINN, Esq.
Fla. Bar No. 012497
brian@zinn.law
www.zinn.law

# Exhibit A

Lee County Clerk - Court Records Search



**17-CA-001354 :** Investment Theory LLC Plaintiff vs Murphy, Gabriel C Defendant

| | | | |
|---|---|---|---|
| Case Type: | CA Contracts and Indebtedness | Date Filed: | 04/24/2017 |
| Location: | Div I | UCN: | 362017CA001354A001CH |
| Judge: | Elizabeth V Krier | Status: | Filed |
| Citation Number: | CA Contracts and Indebtedness | Appear By Date: | |

## Parties

| Name | Type | Attorney | Atty Phone |
|---|---|---|---|
| Investment Theory LLC | Plaintiff | Kelly Kwiatek | 386-323-9269 |
| Gabriel Murphy | Defendant | | |

## Charge Details

| Offense Date | Charge | Plea | Arrest | Disposition | Sentence |
|---|---|---|---|---|---|

## Docket Events

| Date | Description | Pages |
|---|---|---|
| 04/24/2017 | Civil Cover Sheet | 2 |
| 04/24/2017 | Complaint | 10 |
| 04/26/2017 | Standing Order in Civil Cases | 2 |
| 05/01/2017 | Writ of Execution Issued handed to local courier | 0 |
| 05/26/2017 | Writ of Execution Returned Not Satisfied | 4 |
| 05/26/2017 | Summons Submitted for Issuance - Existing Caseissued | 3 |
| | Comments: issued | |
| 05/26/2017 | Notice of Taking Deposition | 5 |
| 05/31/2017 | Motionfor Supplementary Proceedings | 17 |
| | Comments: for Supplementary Proceedings | |
| 06/06/2017 | Motion for Protective Order | 13 |
| 09/13/2017 | Notice | 2 |

## Hearings

| Date | Hearing | Time | Location | Pages |
|---|---|---|---|---|

## Financial

| Date | Description | Payer | Amount |
|------|-------------|-------|--------|
| 04/24/2017 | Charge | Investment Theory LLC | 400.00 |
| 04/24/2017 | Payment | Investment Theory LLC | 400.00 |
| 05/26/2017 | Charge | Investment Theory LLC | 10.00 |
| 05/26/2017 | Payment | Investment Theory LLC | 10.00 |
| | | Balance Due: | 0.00 |

| Bonds | | | |
|-------------|-------------|-------------|--------|
| Description | Status Date | Bond Status | Amount |

| Warrants | | | | | | |
|--------|--------------------|------------|--------------|-------------|-----------------|--------------|
| Number | Status Description | Issue Date | Service Date | Recall Date | Expiration Date | Warrant Type |



# LEE COUNTY SHERIFF'S OFFICE

**LEE COUNTY CIRCUIT COURT**

I.D. Number: 18

Court Number: **17CA001354**

Process Number: **170012182**

INVESTMENT THEORY LLC     Plaintiff vs Defendant     **GABRIEL C MURPHY**

| SERVE **GABRIEL C MURPHY** ( 550172) **421 LA PEROUSE ST LEHIGH ACRES, FL, 33974** | LEVY | Fee: $2500.00 COBB & COLE ATTORNEYS AT LAW 149 SOUTH RIDGEWOOD AVE; SUITE 700 DAYTONA BEACH, FL 32114 |
|---|---|---|

Received this process on the 3rd day of May, 2017 and posted/served/non-served the same on **GABRIEL C MURPHY**, the within named DEFENDANT on the _1 6_ day of _MAY_ 20_1 7_ Time: _1 50_ AM/PM, in Lee County, Florida,

### INDIVIDUAL/SERVICE

_L_ By delivering to the within named DEFENDANT a true copy of this process with the date and hour of service endorsed thereon by me, and at the same time I delivered to the within named DEFENDANT a copy of Plaintiff's initial pleading as furnished by the Plaintiff-petitioner.

### SUBSTITUTE SERVICE

___ By leaving a true copy with a member of the household then and there residing above the age of 15 years to wit: _____ and informing such person of contents thereof.

### CORPORATE SERVICE

___ By delivering a true copy of the process with the date and hour endorsed thereon by me and a copy of Plaintiff's initial pleading as furnished by the Plaintiff to _____ as _____ of said Corporation in the absence of any superior officer as defined in F.S.48.081 or 48.091.

### POSTING

___ By attaching a true copy of this process with the date and hour of service endorsed thereon by me, together with a copy of the Complaint or Petition to a conspicuous place on the property described within. The above named DEFENDANT could not be found, and there was no person at the **DEFENDANT's usual place of abode 421 LA PEROUSE ST, LEHIGH ACRES, FL 33974** in Lee County, Florida, above the age of 15 years upon whom service could be made.

Comments:

_Stated she has no weapons in the residence presently a Glock Pistol. Nor did he have any Certificate_

Executed on _5/16/17_ . Non-executed on _____ for above stated reason.

Attempts made for Service:

| Date: _____ | Time: _____ |
| Date: _____ | Time: _____ |
| Date: _____ | Time: _____ |

MIKE SCOTT, SHERIFF
LEE COUNTY, FLORIDA
By: _____
Deputy Sheriff I.D. #: _1212_



*Mike Scott*
**Office of the Sheriff**

**State of Florida**
**County of Lee**

STATE OF FLORIDA
COUNTY OF LEE

Case Number: 17CA001354

**Investment Theory LLC**
Plaintiff

**Gabriel C Murphy**
Defendant

Type of Writ: **Execution / Instructions for Levy**

Received the above-named writ on May 3rd, 2017 at 10:19 am in Lee County, Florida and Executed the Following,

**Per Instructions for Levy, in response to a Writ of Execution against Gabriel C Murphy; on the 16th day of May, 2017, Gabriel C Murphy was served with the Wirt of Execution documents. Upon making demand of property, Mr. Murphy stated to the Deputy that he did not have the weapon nor certificates. On the 17th day of May, 2017, the levy was cancelled via email by Kelsie Willett from Cobb & Cole Attorneys at Law. Due to these circumstances, the Writ of Execution was returned to the Lee County Clerk of Court as unsatisfied.**

Received From:
Cobb & Cole Attorneys at Law
149 South Ridgewood Ave; Suite 700
Daytona Beach, FL. 32114

Date Returned: 05/25/2017

Signed _Cpt. [signature] 97-36_          Dated _5/25/17_

Mike Scott
Lee County Sheriff
By: Captain Adam Sedwick
2072 Victoria Avenue
Fort Myers, Florida 33901
Phone: (239)477-1353



**Civil Division • 2072 Victoria Ave • Fort Myers, Florida 33901-3750 • (239) 477-1353**

## Serrano, Lourdes

**From:**       Kelsie Willett <kelsie.willett@cobbcole.com>
**Sent:**       Wednesday, May 17, 2017 11:40 AM
**To:**         Serrano, Lourdes
**Subject:**    RE: Investment Theory LLC vs Gabriel C Murphy 17-CA-001354

Lourdes,

Please cancel the levy. As Mr. Murphy stated he does not have the property requested, we will proceed with attempting to obtain relief from the court. Thank you for your assistance.

Regards,
Kelsie

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA**                                        **CIVIL ACTION**

LEE COUNTY CASE NO.: 17-CA-001354
OTHER CASE NO.: 10-0714-CV-W-DGK
COURT: In The United States District For the
Western District of Missouri
STATE: Missouri

Investment Theory LLC
   Plaintiff
vs
Murphy, Gabriel C
   Defendant

Issued pursuant to Florida
Enforcement of Foreign
Judgment Act 84-5
Laws of Florida

2017 MAY -3  AM 10: 19
OFFICE OF THE SHERIFF
LEE COUNTY, FL
RECEIVED

## EXECUTION

THE STATE OF FLORIDA:

To each Sheriff of the State:

YOU ARE COMMANDED to levy on the property subject to execution of Gabriel C Murphy in the sum of ($1,723,189.86) One Million Seven Hundred Twenty Three Thousand One Hundred Eighty Nine Dollars and 86/100 with interest accruing at $213.50 per diem from September 24, 2012 plus $27,000.00 for reasonable attorneys' fees and expenses until April 27, 2017, at the rate of 5.05% per year thereafter, adjusted annually on January 1st of each year in accordance with the interest rate in effect on that date set by the Chief Financial Officer until the judgment is paid and to have this writ before the court when satisfied.

Dated: May 01, 2017                                    LINDA DOGGETT, CLERK OF COURT

BY: _Lisa M.___
                                      Deputy Clerk

Attorney:
Kelly Parsons Kwiatek
860611
149 S Ridgewood Ave Ste 700
Daytona Beach FL  32114-4335
386-323-9269

F.S. 56

# Exhibit B

## IN THE TENTH JUDICIAL DISTRICT
## DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| Techbiz Advisors, LLC, et. al. | ) |
| | ) |
| Plaintiffs | ) |
| | )   Case Number 16CV01123 |
| v. | )   [Consolidated with 16CV05461] |
| | )   Division 4 |
| The Katz Law Firm, LC, et. al. | )   K.S.A. Chapter 60 |
| | ) |
| Defendants. | ) |

### NOTICE OF AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE

Defendant Cory Lagerstrom ("Lagerstrom") hereby provides notice that an involuntary

bankruptcy petition has been filed *In re Gabriel C. Murphy*, Case No. 9:17-bk-07843-FMD

(Middle District of Florida), invoking the automatic stay provisions of 11 U.S.C. § 362.

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: /s/ Timothy R. West
    Jeff D. Morris,            KS Bar #16123
    Timothy R. West,        KS Bar #23892
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri  64108
    Telephone:  (816) 561-7007
    Facsimile:  (816) 561-1888
    Email:      jmorris@berkowitzoliver.com
    Email:      twest@berkowitzoliver.com

*Attorneys for Defendants Cory Lagerstrom and
James McClymont*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following via email on this 7th day of September 2017, on:

Andrew B. Protzman
Julie A. Bush
Protzman Law Firm
1100 Main Street, Suite 2550
Kansas City, MO 64105
andy@protzmanlaw.com
julie@protzmanlaw.com
*Attorney for Plaintiff*

Lora M. Jennings
David E. Larson
Martin Pringle
9401 Indian Creek Pkwy Building 40, #1150
Overland Park, KS 66210
lmjennings@martinpringle.com
delarson@martinpringle.com
*Counsel for Kraft Law, LLC*
*and Eric G. Kraft*

Byron A. Bowles, Jr.
Alan R. Fogleman
McAnany, Van Cleave & Phillips, P.A.
10 E. Cambridge Circle Drive
Kansas City, KS 6103
bbowles@mvplaw.com
afogleman@mvplaw.com
*Attorneys for The Katz Law Firm, L.C.,*
*Richard B. Katz, and James Charles*
*Neeld*

Anthony L. Gosserand
Van Osdol, PC
1000 Walnut Street, #1500
Kansas City, MO 64106
tgosserand@vanosdolkc.com
*Counsel for Nicholas J. Gaugler*

Michael G. Norris
Norris & Keplinger, L.L.C.
9225 Indian Creek Parkway, #750
Overland Park, KS 66210
mnorris@nkfirm.com
*Counsel for Defendant Richard B. Katz*

In addition, a courtesy copy was emailed and mailed to:

The Honorable Rhonda K. Mason
District Court of Johnson County, Kansas
Johnson County Courthouse
Division 4
100 N. Kansas Avenue
Olathe, KS 66061
Torri.Doughty@jocogov.org

  /s/ Timothy R. West
*Attorney for Defendants Cory Lagerstrom*
*and James McClymont*

*Clerk of the District Court, Johnson County Kansas*
*09/19/17  10:30am EP*

Div1

# IN THE TENTH JUDICIAL DISTRICT
## DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL COURT DEPARTMENT

| | |
|---|---|
| Techbiz Advisors, L.L.C., <br> 6320 Brookside Plaza #110 <br> Kansas City, Missouri 64113 | ) <br> ) <br> ) <br> ) |
| Westmark Capital, L.L.C., <br> 6721 West 146th Terrace, #5204 <br> Overland Park, Kansas 66223 | ) <br> ) <br> )    Case No. <br> ) <br> )    Div. No. |
| GCM Holdings, Ltd., <br> 103, Palazzo Pietro Stiges, Straight Street <br> Valletta VLT 1436, Malta | ) <br> ) <br> ) <br> )    *K.S.A. Chapter 60* |
| and | ) <br> ) |
| Gabriel Craig Murphy <br> 6721 West 146th Terrace, #5204 <br> Overland Park, Kansas 66223 | ) <br> ) <br> ) <br> ) |
|      Plaintiffs, | ) <br> ) <br> ) |
|      v. | ) <br> ) <br> ) |
| The Katz Law Firm, L.C., <br> 7227 Metcalf Avenue <br> Overland Park, Kansas 66204 | ) <br> ) <br> ) <br> ) |
| Richard B. Katz, <br> 5701 Newton Street <br> Overland Park, Kansas 66202 | ) <br> ) <br> ) <br> ) |
| James Charles Neeld, <br> 3909 West 132nd Street <br> Leawood, Kansas 66209 | ) <br> ) <br> ) <br> ) |
| Kraft Law, LLC, <br> 104 East Popular Street <br> Olathe, Kansas 66061 | ) <br> ) <br> ) <br> ) |
| Eric G. Kraft, <br> 11917 West 117th Terrace <br> Overland Park, Kansas 66210 | ) <br> ) <br> ) <br> ) <br> ) |

**Michael Connolly,**
4528 Mills Court
Deland, Florida 32714-1143

**Nathaniel Robert Thomas,**
104 East Villa Capri Circle, Apartment H
Deland, Florida 32714-7838

**I-Cap Group Ltd,**
West Quay, Ramsey
Isle of Man  IM99 4PD

**Integrated Capabilities Ltd,**
West Quay, Ramsey
Isle of Man  IM99 4PD

**Integrated Capabilities (Malta) Ltd,**
45/13 Strait Street
Valletta, Malta VLT 1434

**Kevin John Perks,**
Ballagorry Beg, Glen Mona
Maughold, Isle of Man IM7 1HF

**Cory Lynn Lagerstrom,**
6456 Verona
Mission Hills, Kansas 66208

**James Rowland McClymont,**
7901 Sagamore Road
Leawood, Kansas 66206-1228

**Robert Michael Hepting,**
500 Northeast Sawgrass Court
Lee's Summit, Missouri, 64064

and

**Nicholas J. Gaugler**
16868 Bluejacket Street
Overland Park, Kansas 66202

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

                    Defendants.    )

2

# Exhibit C

## PROMISSORY NOTE

$ 400,000.00                                                        August 10, 2012
                                                                   Deland, FL

FOR VALUE RECEIVED, the undersigned (the "Maker") promises to pay to the order of DIGITAL TECHNOLOGY, LLC, a Nevis limited liability company ("Holder"), c/o 125 E. Indiana Ave., Suite B, DeLand, Florida 32724, or at such other place and to such other designee as the Holder of this note may designate in writing, the principal sum of FOUR HUNDRED THOUSAND and 00/100 DOLLARS ($400,000.00) in the following manner:

> Equal monthly payments of principal and interest shall commence on the date that is fifteen (15) months from the date hereof (the "Payment Date") and on each monthly anniversary of the Payment Date for a term of twelve months, subject to the further terms of this note.

1.      Interest. Interest shall accrue under this note at the applicable federal rate per annum, as in effect on the date of this note, subject to the further provisions of this note. Interest shall begin to accrue from the date of this note.

2.      Computation of Interest. Interest accruing under this note shall be computed on the balance of principal remaining unpaid from time to time. All payments under this note shall be first applied in payment of interest on the unpaid balance of the principal accruing since the last preceding payment, and the remainder, if any, of such payment shall be then applied on the unpaid principal of the indebtedness until the same is paid in full.

3.      Prepayment, Acceleration, Offset, and Suspension of Payments. Prepayment of the principal balance of this note may be made at any time without penalty. The Holder of this Note may accelerate the payment of this Note and declare all amounts hereunder due and payable in the event of a default (as contemplated by paragraph 4 below). This note shall be subject to the terms and conditions of that certain Asset Purchase Agreement entered into by Maker and Holder on or about the date hereof (the "APA"). Without limiting the generality of the foregoing, this note shall be subject to certain rights of offset as contemplated in the APA. Further, payments due hereunder shall be subject to suspension, and the term of this note shall be deemed amended accordingly, in accordance with those provisions of the APA pertaining to Adverse YouTube Actions (as defined in the APA). In the event of any conflict between the terms of this note and the APA, the terms of the APA shall control.

4.      Default. If default be made in the payment of principal or interest under this note or in the performance of any of the terms of this note, and such default continues for five (5) business days, then at the option of the Holder, the entire principal sum remaining unpaid, together with accrued interest, expenses and costs of collection, shall become immediately due and payable. Failure to exercise the option to accelerate shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

5.      Default Interest Rate. If any amount remains outstanding under this note after default, then all such amounts outstanding shall thereafter bear interest at the highest rate allowable by law.

1

6.    <u>Maximum Interest</u>.  The total interest payable under this note in any one year shall not exceed the highest lawful rate of interest in Florida.  In the event that interest in excess of the highest lawful rate shall be paid or collected at any time, the amount of such excess shall be applied on the unpaid principal of the indebtedness as of the time of such payments, and the interest shall be re-computed so as not to exceed the highest lawful rate.

7.    <u>Guaranty</u>.  This note and Maker's obligations hereunder are personally guaranteed by Gabriel C. Murphy ("Murphy"), as contemplated in that certain personal guaranty executed by Murphy in Holder's favor simultaneously herewith.

8.    <u>Joint and Several Liability</u>.  All persons liable on this note as makers, endorsers, guarantors, or otherwise, are jointly and severally liable for all obligations represented by or arising under this note and any instruments securing payment of this note.

9.    <u>Governing Law and Venue</u>.  This note shall be governed and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.  In the event of any litigation arising out of or relating to this note, such litigation shall be brought exclusively in the courts of the State of Florida, County of Volusia, and Maker hereby consents and submits to the jurisdiction of such courts.  The prevailing party to any such litigation shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and costs incurred by the prevailing party as a result of such litigation, whether incurred at trial, on appeal, or in connection with a bankruptcy proceeding.

10.    <u>Waiver</u>.  The undersigned waive presentment, demand, protest, notice, notice of protest, dishonor, notice of maturity, notice of non-payment on maturity or otherwise.

11.    <u>Number</u>.  Whenever the singular number is used in this note, the same shall include the plural and vice versa.

12.    <u>Due on Sale</u>.  Notwithstanding anything contained herein, in the event of a sale of a controlling equity interest in Maker (whether direct or indirect) or in the event of a sale of substantially all of the assets of Maker related to the Website (as defined in the APA), all amounts outstanding hereunder shall become immediately due and payable.

Intending to be legally bound hereby, the undersigned have executed this note as of the date first written above.


Note: Documentary Stamp
Tax required by Florida Statutes
Section 201.08 in the amount of
$1400.00 has been paid by the
Maker of this Note.

**CROWD SHOUT LTD,**
a company incorporated in the Isle of Man with
registration number 008432V

By: _____

Name:  Kevin John Perks _____

Title:  Director _____

By: _____

Name:  Robert Arthur Cannell _____

Title:  Director _____

# PERSONAL GUARANTY

THIS PERSONAL GUARANTY (hereafter, "Guaranty") is made this 10th day of August, 2012, in favor of DIGITAL TECHNOLOGY, LLC, a Nevis limited liability company (referred to herein as "DT") by GABRIEL C. MURPHY, individually (the "Guarantor").

## W I T N E S S E T H:

WHEREAS, Guarantor is the principal (indirectly) of Crowd Shout, LLC, an Isle of Man limited liability company (the "Company"); and

WHEREAS, on or about the date hereof, Company is acquiring substantially all of the assets of DT as contemplated by that certain Asset Purchase Agreement entered into by Company and DT (the "APA"); and

WHEREAS, as contemplated by the APA, a portion of the purchase price payable by Company to DT is payable over time and evidenced by delivery of that certain promissory note of even date herewith (the "Note"); and

WHEREAS, Guarantor will derive substantial benefit from DT's agreement to accept part of the payment due and payable from the Company under the APA over time via the Note; and

WHEREAS, as a condition precedent to the transactions contemplated by the APA, Guarantor has agreed to enter into this Guaranty in order to secure performance of all of the Company's obligations pursuant to the Note;

NOW, THEREFORE, in light of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor covenants and agrees as follows:

1.      Guarantor hereby unconditionally guarantees to DT the  performance of all of Company's obligations pursuant to the Note. This Guaranty shall include the guarantee of the payment of all damages, costs and expenses which become recoverable as a result of the nonperformance or breach of the obligations so guaranteed, or as a result of the nonperformance of this Guaranty. DT may, at its option and in its sole discretion, proceed against Guarantor for the performance of any of the Company's obligations pursuant to the Note, or for damages for default in the performance thereof, without first proceeding against the Company or against any of its properties or against any other party.

2.      Guarantor further agrees that this Guaranty shall be an irrevocable guarantee and shall continue in effect notwithstanding any extension or modification of any of the Company's obligations pursuant to the Note, any assumption of any of such obligations by any third party, or any other act or thing which might otherwise operate as a legal or equitable discharge of a guarantor, and Guarantor hereby expressly waives all special suretyship defenses and notice requirements.

3.      This Guaranty shall be governed and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.  In the event of any

litigation arising out of or relating to this Guaranty, such litigation shall be brought exclusively in the courts of the State of Florida, County of Volusia, and Guarantor hereby consents and submits to the jurisdiction of such courts.  The prevailing party to any such litigation shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and costs incurred by the prevailing party as a result of such litigation, whether incurred at trial, on appeal, or in connection with a bankruptcy proceeding.

4.    Guarantor acknowledges and agrees that he has had the opportunity to  review the Note, and that he is familiar with the covenants and obligations of the Company as set forth therein and consents to the same.

IN WITNESS WHEREOF, the undersigned has executed this Personal Guaranty as of the date first set forth above.

WITNESS:

_Rogina Mueller_

_____

_____
Gabriel C. Murphy, individually

# PERSONAL GUARANTY

THIS PERSONAL GUARANTY (hereafter, "Guaranty") is made this 10th day of August, 2012, in favor of DIGITAL TECHNOLOGY, LLC, a Nevis limited liability company (referred to herein as "DT") by GABRIEL C. MURPHY, individually (the "Guarantor").

## W I T N E S S E T H:

WHEREAS, Guarantor is the principal (indirectly) of Crowd Shout, Ltd., a company organized under the laws of the Isle of Man (the "Company"); and

WHEREAS, on or about the date hereof, Company is acquiring substantially all of the assets of DT as contemplated by that certain Asset Purchase Agreement entered into by Company and DT (the "APA"); and

WHEREAS, as contemplated by the APA, $200,000.00 of the purchase price payable by Company to DT is payable over time and evidenced by delivery of that certain promissory note of even date herewith (the "Additional Note"); and

WHEREAS, Guarantor will derive substantial benefit from DT's agreement to accept part of the payment due and payable from the Company under the APA over time via the Additional Note; and

WHEREAS, as a condition precedent to the transactions contemplated by the APA, Guarantor has agreed to enter into this Guaranty in order to secure performance of all of the Company's obligations pursuant to the Additional Note;

NOW, THEREFORE, in light of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor covenants and agrees as follows:

1.      Guarantor hereby unconditionally guarantees to DT the performance of all of Company's obligations pursuant to the Additional Note. This Guaranty shall include the guarantee of the payment of all damages, costs and expenses which become recoverable as a result of the nonperformance or breach of the obligations so guaranteed, or as a result of the nonperformance of this Guaranty. DT may, at its option and in its sole discretion, proceed against Guarantor for the performance of any of the Company's obligations pursuant to the Additional Note, or for damages for default in the performance thereof, without first proceeding against the Company or against any of its properties or against any other party.

2.      Guarantor further agrees that this Guaranty shall be an irrevocable guarantee and shall continue in effect notwithstanding any extension or modification of any of the Company's obligations pursuant to the Additional Note, any assumption of any of such obligations by any third party, or any other act or thing which might otherwise operate as a legal or equitable discharge of a guarantor, and Guarantor hereby expressly waives all special suretyship defenses and notice requirements.

3.      This Guaranty shall be governed and construed in accordance with the laws of

the State of Florida, without regard to its conflicts of laws principles.  In the event of any litigation arising out of or relating to this Guaranty, such litigation shall be brought exclusively in the courts of the State of Florida, County of Volusia, and Guarantor hereby consents and submits to the jurisdiction of such courts.  The prevailing party to any such litigation shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and costs incurred by the prevailing party as a result of such litigation, whether incurred at trial, on appeal, or in connection with a bankruptcy proceeding.

4.      Guarantor acknowledges and agrees that he has had the opportunity to  review the Additional Note, and that he is familiar with the covenants and obligations of the Company as set forth therein and consents to the same.

IN WITNESS WHEREOF, the undersigned has executed this Personal Guaranty as of the date first set forth above.

WITNESS:

Rogina Mueller

_____
Gabriel C. Murphy, individually

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("**Agreement**") is entered into as of August 10, 2012 by and among CROWD SHOUT LTD, a company incorporated in the Isle of Man with registration number 08432V ("**Buyer**"), DIGITAL TECHNOLOGY, a limited liability company organized pursuant to the laws of Nevis ("**Seller**"), Michael Connolly, an individual and resident of the State of Florida ("**Connolly**"), and Nathan Thomas ("**Thomas**", and together with Connolly, "**Owners**"). In this Agreement, each of Seller, Owners and Buyer is sometimes called a "**Party**," and together, the "**Parties**."

## INTRODUCTION

This Agreement contemplates a transaction in which Buyer will purchase substantially all of the Assets and the on-going Business (each, as defined below) of Seller.

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I–DEFINITIONS

For purposes of this Agreement, the following terms have the meanings specified or referred to in this Article I:

"**Accounts Receivable**"—as defined in Section 3.8.

"**Advertising Management Services Agreements**" – shall mean those certain agreements contemplated by Section 2.6(a)(vii) for advertising management services.

"**Agreement**"—as defined in first paragraph of this Agreement.

"**Assets**"—as defined in Section 2.1(a).

"**Assigned Contracts**"—as defined in Section 2.1(a)(iii).

"**Assignment and Assumption Agreement**"—as defined in Section 2.5(a)(ii).

"**Assignment of Intellectual Property Assets**" —as defined in Section 2.5(a)(iii).

"**Assumed Liabilities**"—as defined in Section 2.2(a).

"**Best Efforts**"—the efforts that a prudent Person desirous of achieving a result would use in similar circumstances to ensure that such result is achieved as expeditiously as possible.

"**Bill of Sale**"—as defined in Section 2.5(a)(i).

"**Breach**"—a "Breach" of a representation, warranty, covenant, obligation, or other provision of this Agreement or any instrument delivered pursuant to this Agreement will be deemed to have occurred if there is or has been (a) any material inaccuracy in or material breach of, or any material failure to perform or comply with, such representation, warranty, covenant, obligation, or other provision, or (b) any material claim (by any Party) or other occurrence or circumstance that is or was materially inconsistent with such representation, warranty, covenant, obligation, or other provision, and the term "Breach" means

any such inaccuracy, breach, failure, claim, occurrence, or circumstance.  For purposes of this definition, the term "material" or "materially" shall mean that the act, statement or omission has resulted in the loss or devaluation of the Assets by $10,000 or more.

"**Business**"—as defined in Section 2.1

"**Buyer**"—as defined in the first paragraph of this Agreement.

"**Buyer's Closing Documents**"—as defined in Section 4.2(a).

"**Closing**"—as defined in Section 2.4.

"**Closing Date**"—the date and time as of which the Closing actually takes place.

"**Closing Payment**"—as defined in Section 2.3.

"**Confidential Information**"—as defined in the NDA.

"**Consent**"—any approval, consent, ratification, waiver, or other authorization (including any Governmental Authorization).

"**Contemplated Transactions**"—all of the transactions contemplated by this Agreement, including: (a) the purchase by Buyer from Seller of the Business, and the Assets allowing Buyer to effectively operate the Business; and (b) the performance by Buyer and Seller of their respective covenants and obligations under this Agreement.

"**Contract**"—any agreement, contract, obligation, promise, or undertaking (whether written or oral and whether express or implied) that is legally binding.

"**Disclosing Party**"—as defined in Section 6.2(b).

"**Disclosure Schedule**"—the Disclosure Schedule delivered by Seller to Buyer concurrently with the execution and delivery of this Agreement.

"**Employee(s)**"—as defined in Section 3.11(i)(i).

"**Encumbrance**"—any charge, claim, community property interest, condition, equitable interest, lien, option, pledge, security interest, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership.

"**Estimated Adjustment Amount**"—as defined in Section 2.6(a).

"**Excluded Contracts**"—as defined in Section 2.1(b)(v).

"**Final Adjustment Amount**"—as defined in Section 2.6(c).

"**Governmental Authorization**"—any approval, consent, license, permit, waiver, or other authorization issued, granted, given, or otherwise made available by or under the authority of any Governmental Body or pursuant to any Legal Requirement.

"**Governmental Body**"—any:

|     |     |
| --- | --- |
| (a) | nation, state, county, city, town, village, district, or other jurisdiction of any nature; |
| (b) | federal, state, local, municipal, foreign, or other government; |
| (c) | governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); |
| (d) | multi-national organization or body; or |
| (e) | body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature. |

"**Holdback Amount**"—as defined in Section 2.3.

"**Intellectual Property Assets**"—as defined in Section 3.17(a)

"**Knowledge**"—an individual will be deemed to have "Knowledge" of a particular fact or other matter if: (a) such individual is actually aware of such fact or other matter; or (b) a prudent individual could be expected to discover or otherwise become aware of such fact or other matter in the course of conducting a reasonable investigation concerning the existence of such fact or other matter.  Seller will be deemed to have "Knowledge" of a particular fact or other matter if Michael Connolly or Nathan Thomas have Knowledge of such fact or other matter.  Buyer will be deemed to have "Knowledge" of a particular fact or matter if Gabriel Murphy has Knowledge of such fact or other matter.

"**Legal Requirement**"—any federal, state, local, municipal, foreign, international, multinational, or other administrative order, constitution, law, ordinance, principle of common law, regulation, statute, or treaty.

"**Membership Interests**"—as defined in the Section 3.3.

"**Noncompetition Agreements**"—as defined in Section 2.5(a)(v).

"**Marks**"—as defined in Section 3.17(a)(i).

"**NDA**"—as defined in Section 6.2.

"**Obligations**"—as defined in Section 2.2(b).

"**Order**"—any award, decision, injunction, judgment, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, administrative agency, or other Governmental Body or by any arbitrator.

"**Ordinary Course of Business**"—an action taken by a Person will be deemed to have been taken in the "Ordinary Course of Business" only if: (a) such action is consistent with the past practices of such Person and is taken in the ordinary course of the normal day-to-day operations of such Person; (b) such action is not required to be authorized by the board of directors of such Person (or by any Person or group of Persons exercising similar authority); and (c) such action is similar in nature and magnitude to actions customarily taken, without any authorization by the board of directors (or by any Person or group of Persons exercising similar authority), in the ordinary course of the normal day-to-day operations of other Persons that are in the same line of business as such Person.  For purposes of the defined term "Ordinary Course of Business", the following matters (by illustration and not limitation) shall not be deemed to be in the Ordinary Course of Business even if such acts or omissions have been contemplated, completed or started prior to the execution of this Agreement:  (i) changes or modifications to the Intellectual Property Assets occurring on or after January 1, 2012,  or (ii) the removal of Assets from the Business occurring on or after January 1, 2012.

"**Organizational Documents**"—(a) the articles or certificate of organization and the operating agreement of a limited liability company or equivalent thereof; and (b) any amendment to any of the foregoing.

"**Owners' Closing Documents**"—as defined in Section 3.2 (a).

"**Patents**"—as defined in Section 3.17(a)(ii).

"**Person**"—any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, or other entity or Governmental Body.

"**Proceeding**"—any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Body or arbitrator.

"**Purchase Price**"—as defined in Section 2.3.

"**Receiving Party**"—as defined in Section 6.2(b).

"**Related Person**"—with respect to a particular individual:

   (a)    each other member of such individual's Family;
   (b)    any Person that is directly or indirectly controlled by such individual or one or more members of such individual's Family;
   (c)    any Person in which such individual or members of such individual's Family hold (individually or in the aggregate) a Material Interest; and
   (d)    any Person with respect to which such individual or one or more members of such individual's Family serves as a director, officer, partner, executor, or trustee (or in a similar capacity).

With respect to a specified Person other than an individual:

   (a)    any Person that directly or indirectly controls, is directly or indirectly controlled by, or is directly or indirectly under common control with such specified Person;
   (b)    any Person that holds a Material Interest in such specified Person;
   (c)    each Person that serves as a director, officer, partner, executor, or trustee of such specified Person (or in a similar capacity);
   (d)    any Person in which such specified Person holds a Material Interest;
   (e)    any Person with respect to which such specified Person serves as a general partner or a trustee (or in a similar capacity); and
   (f)    any Related Person of any individual described in clause (b) or (c).

For purposes of this definition, (i) the "Family" of an individual includes (A) the individual, (B) the individual's spouse, (C) any other natural person who is related to the individual or the individual's spouse within the second degree, and (D) any other natural person who resides with such individual, and (ii) "Material Interest" means direct or indirect beneficial ownership (as defined in Rule 13d-3 under the Securities Exchange Act of 1934) of voting securities or other voting interests representing at least 5% of the outstanding voting power of a Person or equity securities or other equity interests representing at least 5% of the outstanding equity securities or equity interests in a Person.

- 4 -

"**Representative**"—with respect to a particular Person, any director, officer, employee, agent, consultant, adviser, or other representative of such Person, including legal counsel, accountants, and financial advisers.

"**Retained Liabilities**"—as defined in Section 2.2(b).

"**Securities Act**"—the Securities Act of 1933 or any successor law, and regulations and rules issued pursuant to that Act or any successor law.

"**Seller**"—as defined in the first paragraph of this Agreement.

"**Seller Benefit Plans**"—as defined in Section 3.11(i)(ii).

"**Seller Contract**"—any Contract (a) under which Seller has or may acquire any rights, (b) under which Seller has or may become subject to any obligation or liability, or (c) by which Seller or any of the assets owned or used by it is or may become bound.

"**Seller's Closing Documents**"——as defined in Section 3.2(a).

"**Tax**"—means any tax (including any income tax, capital gains tax, value added tax, sales tax, property tax, gift tax, or estate tax), levy, assessment, tariff, duty (including any customs duty), deficiency, or other fee, and any related charge or amount (including any fine, penalty, interest, or addition to tax), imposed, assessed, or collected by or under the authority of any Governmental Body or payable pursuant to any tax-sharing agreement or any other Contract relating to the sharing or payment or any such tax, levy, assessment, tariff, duty, deficiency, or fee.

"**Tax Return**"—any return (including any information return), report, statement, schedule, notice, form, or other document or information filed with or submitted to, or required to be filed with or submitted to, any Governmental Body in connection with the determination, assessment, collection, or payment of any Tax or in connection with the administration, implementation, or enforcement of or compliance with any Legal Requirement relating to any Tax.

"**Third Party**"—a Person that is not a party to this Agreement.

"**Third-Party Claim**"—any claim against any Indemnified Person by a Third Party, whether or not involving a Proceeding.

"**Threatened**"—a claim, Proceeding, dispute, action, or other matter will be deemed to have been "Threatened" if any demand or statement has been made (orally or in writing) or any notice has been given (orally or in writing), or if any other event has occurred or any other circumstances exist, that would lead a prudent Person to conclude that such a claim, Proceeding, dispute, action, or other matter is likely to be asserted, commenced, taken, or otherwise pursued in the future.

"**Trade Secrets**"—as defined in Section 3.17(a)(v).

"**Transition Services Agreement**"—as defined in Section 2.5(a)(vi).

"**Website**" shall mean www.video2mp3.net.

## ARTICLE II–PURCHASE AND SALE

2.1     Purchase and Sale of Assets.

(a)  Upon and subject to the terms and conditions of this Agreement, at the Closing, Buyer shall purchase from Seller, and Seller shall sell, transfer, convey, assign and deliver to Buyer, free and clear of any Encumbrances, all of Seller's rights, title and interest in and to Seller's video to audio conversion Website (collectively, the "**Business**") and all of Seller's other assets, tangible and intangible, of every kind and description related to the Business, wherever located, including, without limitation, the following (but excluding the Excluded Assets as defined below), (collectively, the "**Assets**"):

(i)     all of Seller's right, title and interest to the products, services and other assets listed in Schedule 2.1(a)(i);

(ii)    all of the intangible rights and property of Seller, including Intellectual Property Assets, going concern value, goodwill, marketing materials, websites and all related content, domain names, trade names, help manuals, e-mail addresses and any other information developed or acquired by Seller and used for the operation of the Business;

(iii)   all Seller Contracts, including those listed in Part 3.15(a) of the Disclosure Schedule, and all outstanding offers or solicitations made by or to Seller to enter into any Contract, excluding only the Excluded Contracts ("**Assigned Contracts**");

(iv)    all books, records, accounts, ledgers, files, documents, correspondence, advertising and promotional materials, studies, reports and other printed or written materials;

(v)     all social media outlets and accounts related thereto, including (without limitation) that certain Facebook fansite account, and all other social media accounts related to or that support the Business; and

(vi)    all payment vehicle accounts related to direct payment from customers or donations from customers or visitors to the Website, including (without limitation) that certain Paypal account related to the Business and/or Website.

Notwithstanding the foregoing, the transfer of the Assets pursuant to this Agreement shall not include the assumption of any liability existing prior to the Closing Date related to the Assets unless Buyer expressly assumes that liability pursuant to Section 2.2(a).

(b)  Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets of Seller (collectively, the "**Excluded Assets**") are not part of the Contemplated Transaction, are excluded from the Assets and shall remain the property of Seller after the Closing:

(i)     all cash and cash equivalents pertaining to transactions prior to the date of Closing;

(ii)    all minute books, stock records and corporate seals;

(iii)   the shares of capital stock or membership units of Seller;

(iv)    all insurance policies and rights there under;

- 6 -

(v)     all of the Seller Contracts listed in <u>Schedule 2.1(b)(v)</u> ("**Excluded Contracts**");

(vi)    all personnel records and other records that Seller is required by law to retain in its possession;

(vii)   all claims for refund of Taxes and other governmental charges of whatever nature;

(viii)  all rights in connection with and assets of the Seller Benefit Plans;

(ix)    all rights of Seller under this Agreement; and

(x)     the assets identified in <u>Schedule 2.1(b)(x)</u>.

2.2     <u>Assumption of Liabilities.</u>

(a) From and after the Closing, Buyer shall assume and become responsible for all obligations of Seller arising after the Closing under the Assigned Contracts  (collectively, the "**Assumed Liabilities**").

(b) The Buyer shall not assume or become responsible for, and Seller shall remain liable for, any and all liabilities or obligations of Seller which are not Assumed Liabilities (collectively, the "**Retained Liabilities**") as the same are listed on <u>Schedule 2.2(b)</u>.  Seller shall remain liable for, and satisfy any obligations arising under the Retained Liabilities on and after the Closing Date.

2.3 <u>Consideration.</u>  The total consideration for the Assets (the "**Purchase Price**") will be Two Million Two Hundred Ten Thousand Dollars ($2,210,000.00) which shall be paid as follows: (a) One Million Eight Hundred Thousand and 00/100 US Dollars ($1,810,000.00), less any unearned amounts, if any, pursuant to 2.3(A) below, (b) Six Thousand (6,000) shares of common stock in Crowd Shout Holdings Limited, a company incorporated under the laws of Malta with a registered office address at 45/13 Strait Street, Valletta VLT 1434 Malta ("**Crowd Shout Holdings Limited**") at a par value of $0.66, (c) Two Hundred Thousand and 00/100 US Dollars pursuant to 2.3(C) below, and (d) the assumption of the Assumed Liabilities.

The Purchase Price shall be paid to Seller as follows: (a) Nine Hundred Thousand Dollars ($900,000.00) USD (the "**Closing Payment**") shall be paid on the Closing Date by wire transfer of immediately available funds to the account designated by Seller in a written notice delivered to Buyer at least five days prior to the Closing Date; (b) 6,000 shares of common stock in Crowd Shout Holdings Limited (the "**Seller Equity**"), to be issued at Closing and delivered within ten (10) days of the Closing Date; (c) One Hundred Ten Thousand Dollars ($110,000.00) to be paid on the date which is the thirtieth (30th) day after the Closing Date via wire transfer of immediately available funds to an account designated by Seller in writing; (d) Four Hundred Thousand Dollars ($400,000.00) USD (the "**Holdback Amount**") to be retained by Buyer to provide a ready source of funds to secure the performance of Seller's and Owners' obligations under this Agreement, including but not limited to Seller's indemnification obligations as more fully set forth in this Agreement; (e) up to Four Hundred Thousand Dollars ($400,000.00) USD (the "**Earn-Out Amount**") which may or may not be earned by Seller as set forth in Section 2.3(A) below; and (f) Two Hundred Thousand Dollars ($200,000.00) USD by delivery of a promissory note as contemplated by Section 2.3(C) below.  On the Closing Date, Buyer and Seller shall both execute and deliver to each other the closing documents as more fully set forth in this Agreement, including without limitation, a promissory note evidencing Buyer's obligation to pay the Holdback Amount (the "**Note**") and the promissory note contemplated by Section 2.3(C).  Notwithstanding any claims by Buyer to secure the performance of Seller's and Owners' obligations under this Agreement,

- 7 -

including but not limited to Seller's indemnification obligations as more fully set forth in this Agreement, the Holdback Amount and/or the Earn-Out Amount will be paid to Buyer in accordance to the following:

(A)  Period One –Earn-Out Amount

Commencing on the Closing Date and continuing each month (on the same day of each respective month as the Closing Date) thereafter for 12 consecutive months (the "**Revenue Earn-Out Period**"), Seller shall be entitled to a base payment (the "**Earn-Out Base Payment**") equal to the total amount of gross revenue generated by the Website (whether by advertising, donation, subscription, or otherwise) (collectively, the "**Gross Revenue**") for each monthly period during the Revenue Earn-Out Period multiplied by 17.54386% up to the amount of Thirty Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($33,333.33) each month.  In the event the Gross Revenue for any given monthly period is less than One Hundred Thirty-Five Thousand Dollars ($135,000.00), then the Earn-Out Base Payment for that monthly period shall be Zero Dollars ($0.00).  In the event the Gross Revenue for any given month during the Revenue Earn-Out Period exceeds Two Hundred Twenty Five Thousand Dollars and No/100 Cents ($225,000.00), then Seller shall be entitled, in addition to the Earn-Out Base Payment, to a bonus payment (the "**Earn-Out Bonus Payment**") equal to two point two-zero percent (2.20%) of the Gross Revenue for that monthly period.

The total amount of the Earn-Out Base Payments over the Revenue Earn-Out Period shall not exceed, in the aggregate $400,000.00.  In the event that no Earn-Out Base Payment or Earn-Out Bonus Payment is due for any given month, then those funds may not be earned at a later date.  The intent of the Parties is that for a 12-month period commencing on the Closing Date, Seller shall have the right to earn up to $400,000.00 in Earn-Out Base Payments (together with any Earn-Out Bonus Payments), and should Seller fail to earn $400,000.00 during such Revenue Earn-Out Period, those funds are not payable by Buyer to Seller.

The Earn-Out Base Payment (if any) and the Earn-Out Bonus Payment (if any) shall be due within sixty (60) days following the last day of each monthly period via wire transfer of immediately available funds to an account designated by Seller in writing.  In the event of a sale of a controlling equity interest in Buyer (whether direct or indirect) or a sale of substantially all of the assets related to the Website by Buyer during the Revenue Earn-Out Period (each a "**Subsequent Sale Transaction**"), the parties agree that Seller shall be deemed to have earned the maximum Earn-Out Base Payment for the remaining Revenue Earn-Out Period, and such amounts shall be due and payable by Buyer to Seller in full at the closing of the Subsequent Sale Transaction.

(B)  Period Two – Regular Holdback Payments

The Note shall evidence Buyer's obligation to pay the Holdback Amount, and shall contain terms consistent with this Section 2.3(B).  Commencing on the date that is fifteen (15) months after the Closing Date and continuing until the Note is paid in full (the "**Regular Payment Period**"), subject to the further terms of this Section 2.3(B), so long as YouTube, LLC or its parent entity Google, Inc. have not initiated a cause of legal action against Crowd Shout, Ltd. or the Website or an owner of Crowd Shout, Ltd., or a "John Doe" claim relating to the Website (the "**Adverse YouTube Actions**"), then Buyer shall pay to Seller Thirty Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($33,333.33) (the "**Regular Payment**") on a monthly basis on the 1st day of each month.  However, if at any time from the Closing Date and continuing through the end of the Regular Payment Period, if Adverse YouTube Actions occur, then from the date of such Adverse YouTube Actions forward, the Regular Payments shall be suspended, subject to the further terms hereof.  The Regular Payment (if due to Buyer) shall be paid to Seller via wire transfer of immediately available funds to an account designated by Seller in writing.  The

- 8 -

intent of the Parties is that the Holdback Amount shall be paid beginning on the fifteenth (15th) month after Closing on a monthly basis in the amount of $33,333.33.

In the event that the Adverse YouTube Action is a lawsuit against Buyer, or a lawsuit which otherwise precludes the Website from engaging in business (a "**YouTube Lawsuit**"), then Buyer's obligation to make Regular Payments under the Note shall be suspended until such time as the YouTube Lawsuit is resolved in Buyer's favor or is settled on terms agreeable to Buyer, at which time Regular Payments under the Note shall be reinstated, subject to offset for Buyer's reasonable fees and expenses incurred (including any actual damages paid by Buyer, if any) in connection with the YouTube Lawsuit. In the event the YouTube Lawsuit results in either a judgment in excess of the Holdback Amount or an injunction against Buyer, the Website, an owner of Buyer, or a "John Doe" relating to the Website that precludes the Website from further operations, then all future Regular Holdback Payments shall be waived and not payable to Seller in the future.

The parties acknowledge and agree that the term "Adverse YouTube Action" expressly does not include YouTube or Google blocking or filtering the Internet Protocol (IP) addresses associated with the business. Notwithstanding the foregoing, in the event of some action by YouTube or Google other than (i) a YouTube Lawsuit; or (ii) YouTube or Google blocking or filtering the Internet Protocol (IP) addresses associated with the Business (each an "Other YouTube Action") that causes "material changes" to the gross revenue of the Company during the Regular Payment Period, then Regular Payments shall be suspended until such time as gross revenues exceed $150,000.00 on a monthly basis. For purposes of this paragraph "material changes" shall mean that gross monthly revenue generated by the Website (whether by advertising, donation, subscription, or otherwise) falls below $150,000.00. The Regular Payment Period shall automatically be extended by any period during which payments are suspended hereunder.

(C)     Additional Cash Payment

At Closing, Buyer shall deliver to Seller a promissory note in the principal amount of Two Hundred Thousand Dollars ($200,000.00) USD in a form mutually agreeable to the parties (the "Additional Note"). The parties agree that the Additional Note shall be payable in twelve (12) equal installments beginning on the 1st day of the thirteenth month after the Closing, with all amounts due under the Additional Note being due and payable in full on the 1st day of the twenty-fourth month after the Closing. The parties agree that the Additional Note shall represent an unconditional obligation of Buyer, free from any right of offset, or defense to non-payment based on any breach or alleged breach by Seller hereunder. The parties further agree that the Additional Note shall be guaranteed by Gabriel C. Murphy.

2.4     <u>Seller Equity.</u>  Seller may designate that the common stock be issued to the Owners or to one or more entities majority owned by the Owners. The Seller Equity shall be subject to a restrictive legend appearing on the reverse of the stock certificate denoting that the common stock is subject to the Shareholder's Agreement of Crowd Shout Holdings Limited. The Seller Equity shall represent thirty percent (30%) of the issued and outstanding shares of stock of Buyer as of the Closing Date.

2.5     <u>The Closing.</u>  The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of The Katz Law Firm, 7227 Metcalf Avenue, Overland Park, Kansas 66204, commencing at 10:00 a.m., local time on the date of this Agreement (the "**Closing Date**") or at such other place, by such other method or on such other date as may be mutually agreeable to the Parties.

2.6     <u>Closing Obligations.</u>  In addition to any other documents to be delivered under other provisions of this Agreement, at the Closing:

(a)  Seller and Owners, as the case may be, shall deliver or cause to be delivered to Buyer:

(i)       a bill of sale for all of the Assets in the form of <u>Exhibit 2.6(a)(i)</u> (the "**Bill of Sale**") executed by Seller;

(ii)       an assignment of all of the Assets in the form of <u>Exhibit 2.6(a)(ii)</u>, which assignment shall also contain Buyer's undertaking and assumption of the Assumed Liabilities (the "**Assignment and Assumption Agreement**"), executed by Seller;

(iii)       assignments of all Intellectual Property Assets, and separate assignments of all registered Marks, Patents and Copyrights in the form of <u>Exhibit 2.6(a)(iii)</u>, executed by Seller (the "**Assignment of Intellectual Property Assets**");

(iv)       such other bills of sale, assignments, certificates of title, documents and other instruments of transfer and conveyance as may reasonably be requested by Buyer, each in form and substance satisfactory to Buyer and Seller and their legal counsel and executed by Seller;

(v)       non-competition agreements in the form of <u>Exhibit 2.6(a)(v)</u>, executed by Seller and each Owner and the following employees of Seller: Michael Connolly and Nathan Thomas  (the "**Noncompetition Agreements**");

(vi)       transition services agreement in the form of <u>Exhibit 2.6(a)(vi)</u>, executed by Seller (the "**Transition Services Agreement**");

(vii)       such agreements with third parties as may be necessary to maintain and manage the Website's advertising and advertising relationships in substantially the same manner as on the Closing Date, including without limitation (collectively the "**Advertising Management Services Agreements**").

(viii)       all Consents and any approvals or other authorizations of any Governmental Authority relating to the transfer of any of Seller's Governmental Authorizations to Buyer necessary to complete the Contemplated Transactions, and all Consents necessary for the assignment of the Assigned Contracts;

(ix)       a certificate executed by Seller and each Owner certifying that to the best of Seller's Knowledge, each of the representations and warranties of Seller and Owners is true and accurate as of the date of this Agreement and as of the Closing and that each of the covenants and obligations of Seller to be performed on or before the Closing Date pursuant to the terms of this Agreement have been duly and fully performed on or prior to the Closing Date;

(x)       a certificate of the Secretary or other appropriate officer or manager of Seller (A) certifying, as complete and accurate as of the Closing, attached copies of the Organizational Documents of Seller, (B) certifying and attaching all requisite resolutions or actions of Seller's managers and members approving the execution and delivery of this Agreement, and the consummation of the Contemplated Transactions, and (C) certifying to the incumbency and signatures of an authorized manager or managing member of Seller executing this Agreement and any other document relating to the Contemplated Transactions;

(xi)       Customer list and customer data (including email address and billing information) relating to the Business in Excel format with respect to all customer contracts included in the Assumed Contracts;

(xii)       the Financial Statements;

- 10 -

(xiii)    the Shareholders Agreement in the form of <u>Exhibit 2.6(a)(xiii)</u> (the "**Shareholders Agreement**");

(xiv)    a CD-ROM containing (A) a complete copy of all HTML, graphic and all other electronic files used in the operation of the Business and Website and (B) a complete copy of all database files containing all subscription data, including (without limitation) personal client information, payment information and all transaction history along with donation data from the inception of the Website through the Closing Date;

(xv)    a copy of the initiation of transfer of ownership of the domain names from GoDaddy as listed in the Intellectual Property Assets, showing that Seller has transferred the ownership of the domain names to the GoDaddy account owned by Buyer.  Buyer shall provide Seller with the GoDaddy account information necessary to effectuate the transfer of ownership of the domain names;

(xvi)    The software developed by Seller which utilizes Java to (A) download content from YouTube using the end-user's Internet Protocol (IP) address as opposed to IP addresses associated with the Seller; (B) then uploads the YouTube content from the end-user's IP address to the servers controlled by Seller; and

(xvii)    a document providing the login and password credentials to (A) all of the computers used in the operation of the Website; (B) the PayPal account used to accept donations and subscriptions through the Website; (C) the FaceBook fan page; (D) the Twitter account associated with the Business (if applicable); and (E) the Google+ account used on the Website (the "Authentication Document").

(b)  Buyer shall deliver, or shall cause to be delivered, to Seller or Owners, as the case may be:

(i)    the Closing Payment in accordance with Section 2.3;

(ii)    the Assignment and Assumption Agreement executed by Buyer;

(iii)    the Noncompetition Agreements executed by Buyer;

(iv)    the Transition Services Agreement executed by Buyer;

(v)    the Seller Equity;

(vi)    the Shareholders Agreement;

(vii)    a certificate of the Secretary of Buyer certifying and attaching (A) all requisite resolutions or actions of Buyer's board of directors approving the execution and delivery of this Agreement and the consummation of the Contemplated Transactions; and (B) as complete and accurate as of the Closing, attached copies of the Organizational Documents of Buyer;

(viii)    the Note;

(ix)    the personal guaranty of Buyer's principal, Gabriel C. Murphy, guaranteeing Buyer's obligations pursuant to the Note;

(x)    that certain Agreement Regarding Rights in Connection with Future Acquisitions;

- 11 -

(xi)    the Additional Note; and

(xii)    the personal guaranty of Buyer's principal, Gabriel C. Murphy, guaranteeing Buyer's obligations pursuant to the Additional Note.

2.7    <u>Further Assurances</u>.  At any time and from time to time after the Closing and without further consideration:

(a) Seller shall, at the request of Buyer, promptly execute and deliver such instruments of sale, transfer, conveyance, assignment and confirmation, and take all such other action as Buyer may reasonably request, to more effectively transfer, convey and assign to Buyer, and to confirm Buyer's title to, all of the Assets, to put Buyer in actual possession and operating control of the Business and the Assets, and to carry out the purpose and intent of this Agreement; and

(b) Buyer shall, at the request of Seller, provide any records relating to activities of Seller included in the Assets to Seller for any financial, tax or other purpose relating to Seller's discontinuance of the Business.

2.8    <u>Allocation</u>.  The Parties (prior to Closing) shall agree on an allocation of the Purchase Price (the **"Purchase Price Allocation"**).  Each party shall file its Tax Return (including amended returns, claims for refunds, and IRS Form 8594) in a manner that is consistent with the Purchase Price Allocation, and neither party will take any position (whether in audits or similar proceedings, Tax Returns, refund claims, or otherwise) that is inconsistent with such allocation, except as required to do so by applicable Law. Each of Buyer and Seller (and Seller's Affiliates, as applicable) will use its commercially reasonable best efforts to sustain the Purchase Price Allocation in any subsequent audit, similar proceeding, appeal, or court proceeding.

**ARTICLE III–REPRESENTATIONS AND WARRANTIES OF THE SELLER AND OWNERS**

Seller and each Owner represent and warrant to Buyer as follows:

3.1    <u>Organization and Good Standing</u>.

(a) Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of Nevis, with full limited liability company power and authority to conduct its business as it is now being conducted, to own or use the assets that it purports to own or use, carry on its business as now conducted and to perform all its obligations under Seller Contracts.

(b) Seller has delivered to Buyer copies of the Organizational Documents of Seller, as currently in effect.

3.2    <u>Authority; No Conflict</u>.

(a) This Agreement constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.  Upon the execution and delivery by Seller of all other agreement to be executed or delivered by Seller at the Closing (collectively, the **"Seller's Closing Documents"**), each of Seller's Closing Documents will constitute the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.  Seller has the absolute and unrestricted right, power and authority to execute and deliver this Agreement and the Seller's Closing Documents to which it is a party, and to perform its obligations under this Agreement and the Seller's Closing

- 12 -

Documents, and such action has been duly authorized by all necessary action by Seller's members and managers.

(b) Except as set forth in Part 3.2 of the Disclosure Schedule, neither the execution and delivery of this Agreement nor the consummation or performance of any of the Contemplated Transactions will, directly or indirectly (with or without notice or lapse of time):

(i) contravene, conflict with, or result in a violation of (A) any provision of the Organizational Documents of Seller, or (B) any resolution adopted by the managers or the members of Seller;

(ii) contravene, conflict with, or result in a violation of, or give any Governmental Body or other Person the right to challenge any of the Contemplated Transactions or to exercise any remedy or obtain any relief under, any Legal Requirement or any Order to which Seller, or any of the assets owned or used by Seller, may be subject;

(iii) contravene, conflict with, or result in a violation of any of the terms or requirements of, or give any Governmental Body the right to revoke, withdraw, suspend, cancel, terminate, or modify, any Governmental Authorization that is held by Seller or that otherwise relates to the business of, or any of the assets owned or used by, Seller;

(iv) cause Buyer to become subject to, or to become liable for the payment of, any Tax;

(v) cause any of the assets owned by Seller to be reassessed or revalued by any taxing authority or other Governmental Body;

(vi) contravene, conflict with, or result in a violation or breach of any provision of, or give any Person the right to declare a default or exercise any remedy under, or to accelerate the maturity or performance of, or to cancel, terminate, or modify, any Seller Contract; or

(vii) result in the imposition or creation of any Encumbrance upon or with respect to any of the assets owned or used by Seller.

(c) Except as set forth in Part 3.2 of the Disclosure Schedule, Seller is not or will not be required to give any notice to or obtain any Consent from any Person in connection with the execution and delivery of this Agreement or the consummation or performance of any of the Contemplated Transactions.

3.3    Capitalization. Connolly Investment Group, LLC and Nathan Thomas are and will be on the Closing Date the record and the sole members of Seller and beneficial owners and holders of all of the membership or other ownership interests in Seller, free and clear of all Encumbrances (the "**Membership Interests**"). The Membership Interests represent the only equity of Seller. There are no Contracts relating to the issuance, sale, or transfer of any Membership Interests. None of the Membership Interests or other previous ownership interests or securities of Seller were issued in violation of the Securities Act or any other Legal Requirement. Seller does not own, or have any Contract to acquire, any equity interest or securities of any Person or any direct or indirect equity or ownership interest in any other business.

3.4    Revenues. Seller has delivered to Buyer, as set forth in Part 3.4(a) of the Disclosure Schedule, the daily revenue figures earned by the Business from January 1, 2011 through May 31, 2012. The daily revenue figures are detailed for each advertising network used by the Business (the "**Unaudited Revenue**

**Reports**"). The Unaudited Revenue Reports have been prepared by Seller and to the Knowledge of Seller fairly and accurately present the historical daily revenue earned and received by the Business; provided however, such figures are unaudited and subject to periodic reconciliation. Actual payment figures, as prepared by Seller, representing the revenues of Business are reflected in the ad network payment schedules set forth in Part 3.4(b) of the Disclosure Schedule (the "**Ad Revenue Reports**").

3.5     Financial Statements. Seller has delivered to Buyer, as set forth in Part 3.5 of the Disclosure Schedule, (a) an unaudited income statement as of December 31, 2011 (the "**2011 Income Statement**"), and (b) an unaudited income statement of Seller as of April 30, 2012 (the "**Interim Income Statement**"). Except as set forth in Part 3.5 of the Disclosure Schedule, the 2011 Income Statement and the Interim Income Statement (a) have been prepared from and are in accordance with the accounting records of Seller; (b) have been prepared on a cash-basis consistent with Seller's past accounting practices, but are not prepared in accordance with GAAP; and (c) fairly present the financial condition and the results of operations and cash flows of Seller for the periods referred to in such financial statements.

3.6     Books and Records. The books of account, minute books, stock record books, and other records of Seller, all of which have been delivered to Buyer, are complete and correct and have been maintained in accordance with sound business practices. At the Closing, all of those books and records will be in the possession of Seller.

3.7     Sufficiency of Assets. Except as set forth in Part 3.7 of the Disclosure Schedule, the Assets constitute all of the assets, tangible and intangible, of any nature whatsoever, necessary to operate the Business in the manner presently operated by Seller.

3.8     Title to Assets; Encumbrances.

        (a) Except as identified on Part 3.8(a) of the Disclosure Schedule, Seller owns good and transferable title to assets (whether tangible or intangible), including without limitation the Assets, that it purports to own reflected as owned in the books and records of Seller free and clear of any Encumbrances. At the time of Closing, all Assets shall be free and clear of Encumbrances. Seller does not own any real property.

        (b) All of the assets purchased or otherwise acquired by Seller since December 31, 2012 are listed in Part 3.8(b) of the Disclosure Schedule.

3.9     No Undisclosed Liabilities. Except as set forth in Part 3.9 of the Disclosure Schedule, to the Knowledge of Seller, Seller has no liabilities or obligations of any nature (whether known and whether absolute, accrued, contingent, or otherwise), and current liabilities incurred in the Ordinary Course of Business (including server lease payments to OVH) since the respective dates thereof.

3.10    Taxes.

        (a) Seller has filed or caused to be filed (on a timely basis since its incorporation) all Tax Returns that are or were required to be filed by or with respect to Seller, pursuant to applicable Legal Requirements. Seller has delivered to Buyer copies of, and Part 3.10 of the Disclosure Schedule contains a complete and accurate list of, all such Tax Returns filed since incorporation of Seller. Seller has paid, or made provision for the payment of, all Taxes that have or may have become due pursuant to those Tax Returns or otherwise, or pursuant to any assessment received by Seller.

(b) All Taxes that Seller is or was required by Legal Requirements to withhold or collect have been duly withheld or collected and, to the extent required, have been paid to the proper Governmental Body or other Person.

(c) All Tax Returns filed by Seller are true, correct, and complete. There is no tax sharing agreement that will require any payment by Seller after the date of this Agreement.

3.11    Employee Matters.   Seller has no employees and no Seller Benefit Plans.

(a) As used in this Section 3.11, the following terms shall be defined as indicated:

(i)    The term "**employees**" shall mean all current employees (including those on lay-off, disability or leave of absence, whether paid or unpaid), of Seller and the term "**employee**" shall mean any of the employees.

(ii)    The term "**Seller Benefit Plans**" shall mean "employee pension benefit plans," as defined in Section 3(2) of ERISA, maintained or contributed to by Seller or in which Seller participates or participated and which provides benefits to employees or retired employees of Seller, including any 401(k) plan.

3.12    Compliance with Legal Requirements; Governmental Authorizations.    Except as set forth in Part 3.12 of the Disclosure Schedule, Seller since its incorporation, has received no notice that it is or was in violation of any Legal Requirement that is or was applicable to it or to the conduct or operation of the Business or the ownership or use of any of its assets.

3.13    Legal Proceedings; Orders.

(a) Except as set forth in Part 3.13(a) of the Disclosure Schedule, there is no pending Proceeding: (i) that has been commenced by or against Seller or Owners or that otherwise relates to or may affect the Business, or any of the assets owned or used by, Seller; or (ii) that challenges, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the Contemplated Transactions or with the passage of time, to Seller's Knowledge, will not be a default in the future based on Knowledge of such acts today.

(b) Except as set forth in Part 3.13(b) of the Disclosure Schedule, to the Knowledge of Seller or Owners, (i) no such Proceeding has been Threatened, and (ii) no event has occurred or circumstance exists that may give rise to or serve as a basis for the commencement of any such Proceeding.

(c) Seller nor Owners are not subject to any Order.

(d) Seller has a registered Digital Millennium Copyright Act ("DMCA") agent and since inception, Seller has received only those DMCA complaints or notifications as set forth in Part 3.13 of the Disclosure Schedule.

(e) At all times Seller has met its legal obligations regarding take-down notifications and compliance procedures as a DMCA agent.

3.14    Absence of Certain Changes and Events.    Except as set forth in Part 3.14 of the Disclosure Schedule, since January 1, 2012, Seller has conducted business only in the Ordinary Course of Business, and there has not been any:

- 15 -

(a) change in Seller's ownership; grant of any membership or other equity interests in Seller; issuance of any security convertible into such membership or other equity interests in Seller; grant of any registration rights; purchase, redemption, retirement, or other acquisition by Seller of any membership or other equity interests in Seller; or declaration or payment of any distribution or payment in respect of membership or other equity interests in Seller;

(b) amendment to the Organizational Documents of Seller;

(c) payment or increase by Seller of any bonuses, salaries, or other compensation to any stockholder, director, officer, or employee or entry into any employment, severance, or similar Contract with any director, officer, employee, consultant or contractor;

(d) damage to or destruction or loss of any of the Assets, whether or not covered by insurance; or

(e) sale (other than sales of inventory in the Ordinary Course of Business), lease, or other disposition of any asset or property of Seller or mortgage, pledge, or imposition of any lien or other encumbrance on any material asset or property of Seller, including the sale, lease, or other disposition of any of the Intellectual Property Assets.

3.15    Contracts; No Defaults.

(a) Part 3.15(a) of the Disclosure Schedule contains a complete and accurate list, and Seller has delivered to Buyer true and complete copies, of:

(i)    each Seller Contract that involves performance of services or delivery of goods by Seller;

(ii)    each Seller Contract that involves performance of services for or delivery of goods or materials to Seller (including, but not limited to, any agreements between Seller and consultants and contractors);

(iii)    each Seller Contract that involves any Encumbrance on Seller, any of the Owners, the Business or any of the Assets.

(iv)    each licensing, purchase, work for hire or any other agreement or other Seller Contract with respect to patents, trademarks, copyrights, know-how or other intellectual property, including agreements with current or former employees, consultants, or contractors regarding the appropriation or the non-disclosure of any of the Intellectual Property Assets;

(v)    each Seller Contract containing covenants that in any way purport to restrict the business activity of Seller or any affiliate of Seller or limit the freedom of Seller or any affiliate of Seller to engage in any line of business or to compete with any Person;

(vi)    each Seller Contract providing for payments to or by any Person based on sales, purchases, or profits, other than direct payments for goods;

(vii)    each power of attorney that is currently effective and outstanding; and

(viii)    each written warranty, guaranty, and or other similar undertaking with respect to contractual performance extended by Seller other than in the Ordinary Course of Business.

(b) Except as set forth in Part 3.15 of the Disclosure Schedule:

(i)    neither of the Owners nor any Related Person of either of the Owners has or may acquire any rights under any Contract that relates to the Business, or any of Assets; and

(ii)    no officer, director, agent, employee, consultant, or contractor of Seller is bound by any Contract that purports to limit the ability of such officer, director, agent, employee, consultant, or contractor to (A) engage in or continue any conduct, activity, or practice relating to the business of Seller, or (B) assign to Seller or to any other Person any rights to any invention, improvement, or discovery.

(c) Except as set forth in Part 3.15(c) of the Disclosure Schedule, each Seller Contract identified or required to be identified in Part 3.15(a) of the Disclosure Schedule is in full force and effect and is valid and enforceable in accordance with its terms.

(d) Except as set forth in Part 3.15(d) of the Disclosure Schedule:

(i)    Seller is, and at all times has been, in full compliance with all applicable terms and requirements of each Seller Contract;

(ii)    Neither Seller nor any Owner has given to or received from any other Person, at any time, any notice or other communication (whether oral or written) regarding any actual, alleged, possible, or potential violation or breach of, or default under, any Seller Contract.

(e) The Seller Contracts relating to the sale, design, manufacture, or provision of products or services by Seller have been entered into in the Ordinary Course of Business and have been entered into without the commission of any act alone or in concert with any other Person, or any consideration having been paid or promised, that is or would be in violation of any Legal Requirement.

3.16    <u>Insurance</u>. Set forth in Part 3.16 of the Disclosure Schedule are: (a) true and complete copies of all policies of insurance to which Seller is a party or under which Seller, or any manager of Seller (in his or her capacity as a manager of Seller), is or has been covered at any time; and (b) a statement describing the loss experience for all claims made under any insurance policies, including the number and aggregate cost of such claims.

3.17    <u>Intellectual Property</u>.

(a) The term **"Intellectual Property Assets"** includes:

(i)    All business names, domain names, trading names, registered and unregistered trademarks, service marks, and applications (collectively, **"Marks"**), owned, licensed or otherwise used by Seller or used in the operation of the Website;

(ii)    all patents, patent applications, and inventions and discoveries that may be patentable (collectively, **"Patents"**), in each case owned, licensed or otherwise used by Seller;

(iii)    all copyrights in both published works and unpublished works (collectively, **"Copyrights"**), owned, licensed or otherwise used by Seller;

(iv)    all rights in mask works owned, licensed or otherwise used by Seller; and

(v)    all know-how, trade secrets, confidential information, customer lists, software, source code, technical information, data, process technology, plans, drawings and blue prints (collectively, "**Trade Secrets**"), in each case which is owned, used, or licensed by Seller as licensee or licensor.

(b) Part 3.17(b) of the Disclosure Schedule contains a complete and accurate list and summary description, including any royalties paid or received by Seller, of all Contracts relating to the Intellectual Property Assets to which Seller is a party or by which Seller is bound, except for any license implied by the sale of a product and perpetual, paid-up licenses for commonly available software programs with a value of less than $1,000 under which Seller is the licensee. There are no outstanding and, to Seller's or Owners' Knowledge, no Threatened disputes or disagreements with respect to any such agreement.

(c) Except as set forth in Part 3.17(c) of the Disclosure Schedule:

(i)    The Intellectual Property Assets are all those necessary for the professional, orderly operation of the Business as they are currently conducted.

(ii)    Seller is the owner of all rights, title, and interest in and to each of the Intellectual Property Assets, free and clear of all liens, security interests, charges, Encumbrances, equities, and other adverse claims, and has the right to use without payment to a third party all of the Intellectual Property Assets.

(d) Part 3.17(d) of the Disclosure Schedule contains a complete and accurate list and summary description of all Patents.

(i)    All of the issued Patents are currently in compliance with formal legal requirements (including payment of filing, examination and maintenance fees and proofs of working or use), are valid and enforceable, and are not subject to any maintenance fees or taxes or actions falling due within ninety (90) days after the Closing Date.

(ii)    No Patent has been or is now involved in any interference, reissue, reexamination, or opposition Proceeding. To Seller's and Owners' Knowledge, there is no potentially interfering patent or patent application of any third party.

(iii)    Except as set forth in Part 3.17(d) of the Disclosure Schedule, (A) no Patent is infringed or, to Seller's or Owners' Knowledge, has been challenged or threatened in any way and (B) none of the products manufactured or sold, nor any process or know-how used, by Seller infringes or is alleged to infringe any patent or other proprietary right of any other Person.

(iv)    All products made, used or sold under the Patents have been marked with the proper patent notice. Except as set forth in Part 3.17(d), Seller is not the owner of any Patents.

(e) Part 3.17(e) of Disclosure Schedule contains a complete and accurate list and summary description of all Marks. Except as set forth in Part 3.17(e) of the Disclosure Schedule:

(i)    Seller is the owner of all right, title, and interest in and to each of the Marks, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse claims.

(ii)    All Marks that have been registered with any Governmental Body are currently in compliance with all formal legal requirements (including the timely post-registration filing of affidavits

- 18 -

of use and incontestability and renewal applications), are valid and enforceable, and are not subject to any maintenance fees or taxes or actions falling due within 90 days after the Closing Date.

        (iii)    No Mark has been or is now opposed to or challenged by any Third Party and, to Seller's or Owners' Knowledge, no such action is Threatened with the respect to any of the Marks.

        (iv)    To Seller's or Owners' Knowledge, there is no potentially interfering trademark or trademark application of any third party domestically or internationally.

        (v)    No Mark is infringed or, to Seller's or Owners' Knowledge, has been challenged or threatened in any way. None of the Marks used by Seller infringes or is alleged to infringe any trade name, trademark, or service mark of any third party domestically or internationally.

    (f)  Part 3.17(f) of the Disclosure Schedule contains a complete and accurate list and summary description of all Copyrights. Except as set forth in Part 3.17(f) of the Disclosure Schedule:

        (i)    Seller is the owner of all right, title, and interest in and to each of the Copyrights, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse claims.

        (ii)    No Copyrights have been registered.

        (iii)    No Copyright is infringed or, to Seller's or Owners' Knowledge, has been challenged or threatened in any way. None of the subject matter of any of the Copyrights infringes or is alleged to infringe any copyright of any third party or is a derivative work based on the work of a third party.

    (g)  Except as set forth in Part 3.17(g) of the Disclosure Schedule:

        (i)    Seller has taken all reasonable precautions to protect the secrecy, confidentiality, and value of their Trade Secrets.

        (ii)    Seller has good title and an absolute (but not necessarily exclusive) right to use the Trade Secrets. The Trade Secrets are not part of the public knowledge or literature, and, to Seller's or Owners' Knowledge, have not been used, divulged, or appropriated either for the benefit of any Person (other than Seller) or to the detriment of Seller. No Trade Secret is subject to any adverse claim or has been challenged or threatened in any way.

3.18    <u>Certain Payments</u>.  None of Seller, any director, officer, agent, or employee of Seller, or any other Person associated with or acting for or on behalf of Seller, has directly or indirectly (a) made any contribution, gift, bribe, rebate, payoff, influence payment, kickback, or other payment to any Person, private or public, regardless of form, whether in money, property, or services (i) to obtain favorable treatment in securing business, (ii) to pay for favorable treatment for business secured, (iii) to obtain special concessions or for special concessions already obtained, for or in respect of Seller or any affiliate of Seller, or (iv) in violation of any Legal Requirement, or (b) established or maintained any fund or asset that has not been recorded in the books and records of Seller.

3.19    <u>Solvency</u>.

    (a) Seller is not now insolvent and will not be rendered insolvent by any of the Contemplated Transactions.  As used in this section, "insolvent" means that the sum of the debts and other probable liabilities of Seller exceeds the present fair saleable value of Seller's assets.

(b) Immediately after giving effect to the consummation of the Contemplated Transactions: (i) Seller will be able to pay its liabilities as they become due in the usual course of its business; (ii) Seller will not have unreasonably small capital with which to conduct its present or proposed business; (iii) Seller will have assets (calculated at fair market value) that exceed its liabilities; and (iv) taking into account all pending and threatened litigation, final judgments against Seller in actions for money damages are not reasonably anticipated to be rendered at a time when, or in amounts such that, Seller will be unable to satisfy any such judgments promptly in accordance with their terms (taking into account the maximum probable amount of such judgments in any such actions and the earliest reasonable time at which such judgments might be rendered) as well as all other obligations of Seller. The cash available to Seller, after taking into account all other anticipated uses of the cash, will be sufficient to pay all such debts and judgments promptly in accordance with their terms.

3.20    Disclosure.

(a) No representation or warranty of Seller or Owners in this Agreement and no statement in the Disclosure Schedule omits to state a material fact necessary to make the statements herein or therein, in light of the circumstances in which they were made, not misleading.

(b) There is no fact known to Seller or Owners that has specific application to Seller that materially adversely affects the Assets, Business, prospects, financial condition, or results of operations of Seller that has not been set forth in this Agreement or the Disclosure Schedule.

3.21    Brokers or Finders. Seller has no obligation or liability, contingent or otherwise, for brokerage or finders' fees, agents' commissions, or any other similar payment in connection with this Agreement except that Seller shall owe a commission of 5% to iMerge Advisors which shall be paid by Seller at the Closing.

## ARTICLE IV–REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller and Owners as follows:

4.1    Organization and Good Standing. Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the Isle of Man.

4.2    Authority; No Conflict.

(a) This Agreement constitutes the legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms. Upon the execution and delivery by Buyer of each other agreement to be executed or delivered by Buyer at the Closing (collectively, the "**Buyer's Closing Documents**"), each of Buyer's Closing Documents will constitute the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms. Buyer has the absolute and unrestricted right, power and authority to execute and deliver this Agreement and the Buyer's Closing Documents to which it is a party and to perform its obligations under this Agreement and the Buyer's Closing Documents, and such action has been duly authorized by all necessary action by Buyer's shareholders and board of directors.

(b) Neither the execution and delivery of this Agreement by Buyer nor the consummation or performance of any of the Contemplated Transactions by Buyer will give any Person the right to prevent, delay, or otherwise interfere with any of the Contemplated Transactions by Buyer will give any Person the right to prevent, delay, or otherwise interfere with any of the Contemplated Transactions pursuant to: (i) any provision of Buyer's Organizational Documents; (ii) any resolution adopted by the board of

directors or the stockholders of Buyer; (iii) any Contract to which Buyer is a party or by which Buyer may be bound.

Buyer is not and will not be required to obtain any Consent from any Person in connection with the execution and delivery of this Agreement or the consummation or performance of any of the Contemplated Transactions.

4.3    Certain Proceedings. There is no pending Proceeding that has been commenced against Buyer and that challenges, or may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the Contemplated Transactions. To Buyer's Knowledge, no such Proceeding has been Threatened.

4.4    Seller Equity. Buyer has good, marketable title to the Seller Equity, and full right and authority to issue the Seller Equity to Connolly and Thomas (or an entity controlled by Connolly and Thomas) as contemplated herein. Upon issuance, the Seller Equity will be fully paid and non-assessable and free and clear of all liens and encumbrances. When issued, the Seller Equity shall represent thirty (30%) of the issued and outstanding stock of Crowd Shout Holdings Limited. The Seller Equity is subject to preemptive rights as set forth in Buyer's Organizational Documents. The Buyer Organizational Documents delivered to Seller (or to Connolly and Thomas, as the case may be) are true and correct and complete copies of all Buyer Organizational Documents in effect as of the Closing Date, and evidence all rights and restrictions pertaining to or affecting the Seller Equity.

## ARTICLE V–INDEMNIFICATION; REMEDIES

5.1    Survival. All representations, warranties, covenants and obligations in this Agreement, the Disclosure Schedule, the supplements to the Disclosure Schedule, and any certificate or document delivered pursuant to this Agreement shall survive the Closing and the consummation of the Contemplated Transactions, subject to Section 5.3. The waiver of any condition based upon the accuracy of any representation or warranty, or on the performance of or compliance with any covenant or obligation, will not affect the right to indemnification, reimbursement or other remedy based upon such representations, warranties, covenants and obligations.

5.2    Indemnification and Reimbursement by Seller and Owners. Seller will indemnify and hold harmless Buyer and its Representatives, shareholders, subsidiaries and Related Persons (collectively, the "**Indemnified Persons**"), and will reimburse the Indemnified Persons for any loss, liability, claim, damage, expense (including costs of investigation and defense and reasonable attorneys' fees and expenses and other incidental or consequential damages) or diminution of value, whether or not involving a Third-Party Claim (collectively, "**Damages**"), arising from or in connection with:

(a)    any Breach of any representation or warranty made by Seller or either Owner in (i) this Agreement (giving effect to any supplement to the Disclosure Schedule prior to Closing), (ii) the Disclosure Schedule, (iii) the certificates delivered pursuant to Section 2.5, (iv) any transfer instrument, or (v) any other certificate, document, writing or instrument delivered by Seller or either Owner pursuant to this Agreement;

(b)    any Breach of any covenant or obligation of Seller or either Owner in this Agreement or in any other certificate, document, writing or instrument delivered by Seller or either Owner pursuant to this Agreement;

(c)    any liability arising out of the ownership or operation of the Assets prior to the Closing Date;

- 21 -

(d) any product sold or any services provided by, Seller, in whole or in part, prior to the Closing Date;

(e) any Seller Benefit Plan established or maintained by Seller; or

(f) any Retained Liabilities.

Notwithstanding the foregoing, or anything contained herein, Seller will have no liability for claims arising out of or related to matters disclosed by Seller in the Disclosure Schedule.

5.3    <u>Time Limitations, Threshold, and Cap</u>.  Seller will have liability for indemnification with respect to claims under Section 5.2(a) through (d) only if on or before the date that is twenty seven (27) months following the Closing Date, Buyer notifies Seller of a claim specifying the factual basis of the claim in reasonable detail to the extent then known by Buyer.  However, the foregoing limitation will not apply to claims under 5.2(e) through (f), or to matters arising in respect of Sections 3.2, 3.8, 3.10 and 3.11. Notwithstanding the foregoing, or anything contained herein, Seller shall have no obligation to indemnify Buyer for any claim until such time as the aggregate damages associated with any such claims exceeds $10,000 USD.  Further, Seller's obligations to indemnify Buyer pursuant to this Agreement shall not under any circumstances exceed $400,000 USD in the aggregate.  The parties acknowledge and agree that Seller's obligations under Section 5.2 shall be satisfied by offset against the Note and the Holdback Amount, and that Seller shall not have, under any circumstances, liability to Buyer under Section 5.2 from any source other than the Holdback Amount.

5.4    <u>Indemnification in Case of Strict Liability or Indemnitee Negligence</u>.    THE INDEMNIFICATION PROVISIONS IN THIS ARTICLE 5 SHALL BE ENFORCEABLE REGARDLESS OF WHETHER THE LIABILITY IS BASED UPON PAST, PRESENT OR FUTURE ACTS, CLAIMS OR LEGAL REQUIREMENTS (INCLUDING ANY PAST, PRESENT OR FUTURE BULK SALES LAW, ENVIRONMENTAL LAW, FRAUDULENT TRANSFER ACT, OCCUPATIONAL SAFETY AND HEALTH LAW OR PRODUCTS LIABILITY, SECURITIES OR OTHER LEGAL REQUIREMENT) AND REGARDLESS OF WHETHER ANY PERSON (INCLUDING THE PERSON FROM WHOM INDEMNIFICATION IS SOUGHT) ALLEGES OR PROVES THE SOLE, CONCURRENT, CONTRIBUTORY OR COMPARATIVE NEGLIGENCE OF THE PERSON SEEKING INDEMNIFICATION OR THE SOLE OR CONCURRENT STRICT LIABILITY IMPOSED UPON THE PERSON SEEKING INDEMNIFICATION.

5.5    <u>Use of Holdback</u>.  Any obligation of Seller under Section 5.2 shall be satisfied from the Holdback Amount.

5.6    <u>Buyer's Indemnification</u>.  Buyer hereby agrees to indemnify and hold harmless Seller and its Representatives, shareholders, subsidiaries and Related Persons (collectively, the "**Seller Indemnified Persons**"), and will reimburse the Seller Indemnified Persons for any loss, liability, claim, damage, expense (including costs of investigation and defense and reasonable attorneys' fees and expenses and other incidental or consequential damages) or diminution of value, whether or not involving a Third-Party Claim (collectively, "**Damages**"), arising from or in connection with:

(a) any Breach of any representation or warranty made by Buyer in (i) this Agreement, (ii) the certificates delivered pursuant to Section 2.5, or (iii) any other certificate, document, writing or instrument delivered by Buyer pursuant to this Agreement;

(b) any Breach of any covenant or obligation of Buyer in this Agreement or in any other certificate, document, writing or instrument delivered by Buyer pursuant to this Agreement;

- 22 -

(c) any product sold or any services provided by, Buyer, in whole or in part, after the Closing Date; or

(d) any Assumed Liabilities.

## ARTICLE VI–GENERAL PROVISIONS.

6.1     <u>Expenses</u>.   Except as otherwise expressly provided in this Agreement, each Party to this Agreement will bear its respective expenses incurred in connection with the preparation, execution, and performance of this Agreement and the Contemplated Transactions, including all fees and expenses of agents, representatives, counsel, and accountants.

6.2     <u>Confidentiality; Public Announcements</u>

(a)     This Agreement, its negotiation, and any information disclosed relating to the underlying transaction is strictly confidential and subject to the Nondisclosure Agreement between the Parties dated as of February 16, 2012 (the "**NDA**").   Notwithstanding the aforementioned, upon execution of this Agreement or the Closing, Buyer may issue a press release announcing, or otherwise publicly announce such execution or Closing subject to Seller being provided a meaningful opportunity to review and comment upon such press release or other public announcement.  Seller and Buyer will consult with each other concerning the means by which Seller's employees, customers, and suppliers and others having dealings with Seller will be informed of the Contemplated Transactions, and Buyer will have the right to be present for any such communication.

(b)     A Party disclosing Confidential Information ("**Disclosing Party**") is not waiving, and will not be deemed to have waived or diminished, any of its attorney work product protections, attorney-client privileges or similar protections and privileges as a result of disclosing its Confidential Information (including Confidential Information related to pending or threatened litigation) to the other Party ("**Receiving Party**"), regardless of whether the Disclosing Party has asserted, or is or may be entitled to assert, such privileges and protections. The Parties (i) share a common legal and commercial interest in all of the Disclosing Party's Confidential Information that is subject to such privileges and protections; (ii) are or may become joint defendants in Proceedings to which the Disclosing Party's Confidential Information covered by such protections and privileges relates; (iii) intend that such privileges and protections remain intact should either Party become subject to any actual or threatened Proceeding to which the Disclosing Party's Confidential Information covered by such protections and privileges relates; and (d) intend that after the Closing the Receiving Party shall have the right to assert such protections and privileges. No Receiving Party shall admit, claim or contend, in Proceedings involving either party or otherwise, that any Disclosing Party waived any of its attorney work-product protections, attorney-client privileges or similar protections and privileges with respect to any information, documents or other material not disclosed to a Receiving Party due to the Disclosing Party disclosing its Confidential Information (including Confidential Information related to pending or threatened litigation) to the Receiving Party.

6.3     <u>Notices</u>. All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when: (a) delivered by hand (with written confirmation of receipt); (b) sent by fax (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested; or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and fax numbers set forth below (or to such other addresses and fax numbers as a party may designate by notice to the other parties):

| | |
|---|---|
| Seller, Owners: | Digital Technology, LLC<br>Attention: Michael Connolly<br>125 E. Indiana Ave., Suite B<br>DeLand, Florida 32724 |
| with a mandatory copy to: | Cobb Cole<br>Attention: Andrea M. Kurak, Esq.<br>150 Magnolia Ave.<br>Daytona Beach, FL 32114<br>Fax Number:  386-944-7953 |
| Buyer: | Crowd Shout, Ltd.<br>Attention: Kevin John Perks<br>P. O. Box 665<br>Bridge Chambers<br>West Quay, Ramsay<br>Isle of Man  IM994PD<br>Fax Number: + 44 1624 665 400 |
| with a mandatory copy to: | The Katz Law Firm<br>Attention: James Neeld, Esq.<br>7227 Metcalf Avenue<br>Overland Park, Kansas 66204<br>Fax Number:  (913) 754-2012 |
| Crowd Shout Holdings Limited: | Crowd Shout Holdings Limited<br>Attn: Sharon Diane Collier<br>45/13 Strait Street<br>Valletta  VLT  1434 Malta<br>Fax Number:  +356 212 26615 |
| with a mandatory copy to: | The Katz Law Firm<br>Attention: James Neeld, Esq.<br>7227 Metcalf Avenue<br>Overland Park, Kansas 66204<br>Fax Number:  (913) 754-2012 |

6.4    <u>Jurisdiction; Service of Process</u>. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the Isle of Man and each of the parties consents to the jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

6.5    <u>Mandatory Mediation</u>. The parties agree that as a condition precedent to the institution of any lawsuit or other legal proceeding between the parties arising out of or relating to this Agreement, or any agreement or instrument delivered in connection herewith, the parties shall participate in a confidential mediation in Isle of Man, facilitated by an independent, third-party mediator reasonably acceptable to the parties. The parties shall share equally in the costs of such mediator. If the parties cannot agree on a

single mediator, then each party shall appoint a mediator of its choosing, and those mediators so appointed shall select a third mediator who will conduct the mediation.

6.6     Further Assurances. The Parties agree: (a) to furnish upon request to each other such further information; (b) to execute and deliver to each other such other documents; and (c) to do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement and the documents referred to in this Agreement.

6.7     Waiver. The rights and remedies of the Parties to this Agreement are cumulative and not alternative. Neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege. To the maximum extent permitted by applicable law: (a) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (b) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

6.8     Entire Agreement and Modification. This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter except for the NDA, which shall remain in full force and effect with respect to the "Confidential Information" described therein and shall co-exist with this Agreement. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

6.9     Disclosure Schedule. In the event of any inconsistency between the statements in the body of this Agreement and those in the Disclosure Schedule (other than an exception expressly set forth as such in the Disclosure Schedule with respect to a specifically identified representation or warranty), the statements in the body of this Agreement will control.

6.10    Assignments; Successors; No Third-Party Rights. No Party may assign any of its rights under this Agreement without the prior consent of the other Parties, except that Buyer may assign any of its rights under this Agreement to any entity directly or indirectly wholly owned by Buyer.  Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties. Nothing expressed or referred to in this Agreement will be construed to give any Person other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement.  This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their successors and assigns.

6.11    Severability. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

6.12    Section Headings; Construction. The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement. All words used in this

- 25 -

Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

6.13    Time of Essence. With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

6.14    Governing Law. This Agreement will be governed by the laws of the Isle of Mann without regard to conflicts of laws principles.

6.15    Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

[THIS SPACE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

BUYER:

**CROWD SHOUT LTD,**
a company incorporated in the Isle of Man with
registration number 008432V

By: _____

Name:  Kevin John Perks

Title:  Director

By: _____

Name:  Robert Arthur Cannell

Title:  Director

SELLER:

**DIGITAL TECHNOLOGY, LLC,**
a limited liability company organized pursuant to
the laws of Nevis

By: _____

Name:  Mike Connolly

Title:  Managing Member

November 19, 2014

Crowd Shout, Ltd.

P.O. Box 665

Bridge Chambers

West Quay, Ramsay

Isle of Man IM994PD


Digital Technology, LLC

Attention:  Michael Connolly

125 E. Indiana Ave., Suite B

DeLand, Florida 32742


Digital Technology, LLC

Attention:  Michael Connolly

444 New England Ave., Suite 215

Winter Park, Florida 32789


Cobb Cole

Attention:  Andrea M. Kurak, Esq.

150 Magnolia Ave.

Daytona Beach, Florida 32114


RE:    NOTICE OF INDEMNIFICATION CLAIM
        CEASE & DESIST DEMAND
        ACCOUNTING & DEMAND FOR PAYMENT
        REQUEST FOR MEDIATION


Attention Michael Connolly:

Reference is made to that certain Asset Purchase Agreement ("APA"), the Advertising Management Services Agreement ("AMSA") and the Noncompetition, Nondisclosure and Nonsolicitation Agreement ("NNNA") executed between Seller and the Company on or around August 10, 2012.  As you know, this transaction was to consummate the acquisition of a certain audio-to-video conversion website, video2mp3.net (the "Website").

This letter shall serve as formal notice under Section 5.3 of the APA of a number of claims for indemnification against Buyer and Owners.  We continue to calculate damages from the Seller's and/or Owners' repeated violations of the APA, AMSA and the NNNA.  Our damages will exceed the indemnification cap of $400,000.  Per Section 5.2 of the APA, you are hereby put on notice of various

breaches of these Agreements, the damages of which exceeds $400,000.  Pursuant to Sections 5.3 and 5.5 of the APA, the Company has offset this liability against the full Holdback Amount.

Factual Basis of Indemnification Claims

Seller has breached various representations made in the APA, ANSA and NNNA, giving rise to the claims pursuant to Section 5.2(a) of the APA.

## Violations of the NNNA

As you are no doubt aware, the NNNA was an inducement for my client to enter into the APA.  Simply put, absent Owners agreeing to the terms set forth in the NNA, my client would not have paid the $3,000,000 purchase price for the Website.   Additionally, the NNNA was executed by ConTech, LLC d/b/a Sonobi ("Sonobi") as well as both you and your business partner, Nathan Thomas ("Thomas"), in your individual capacities.

Providing Services to Competing Businesses

In the second paragraph of Section 2 sub (d) and (e) of the NNNA you individually, along with business partner Nathan Thomas, and the Buyer, all acknowledge that:

> *"Buyer has required that [Connolly / Thomas / Seller] make the covenants set forth in Sections 3 and 4 of this Agreement (NNNA) as a condition to Buyer's purchase of the Assets" – Section 2(b) of NNNA*

> *"the provisions of Section 3 and 4 of this Agreement (NNNA) are reasonable and necessary to protect and preserve Buyer's interests in and right to the use and operation of the Assets from and after Closing" – Section 2(e) of NNNA*

Section 4(a)(i) of the NNA states:

> *"**[Connolly / Thomas / Seller] will not, directly or indirectly**, engages or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, **be associated with or in any manner connected with, or render services or advice or other aid to**, or guarantee any obligation of, **any Person** engaged in or planning to become **engaged in a business that offers or is affiliated with a business that offers free or fee-based audio conversion, anywhere within the world**" – emphasis added*

There can be no dispute that the Buyer and Owners, through Contech, LLC ("Contect") have been providing advertisement management services to business(es) that offer the identical service (free or fee-based audio conversion) through the Website in clear violation of Section 4(a)(i) above.  Mr. Connolly admitted to providing services to competing websites in writing to Murphy on October 29, 2014 via Google Hangouts.

As admitted to in Exhibit A, Sellers have been profiting from providing services to completing websites "listentoyoutube.com" and "vid2mp3.com", the "Competing Websites".

Travis Dennis has confirmed via email today that Sonobi handles his "display". More helpful, the owner of the Competing Websites confirms that his revenues are "not dissimilar" to that of video2mp3.net. Using a standard 20% revenue share for Sonobi earned off of the Competing Websites, we arrive at the following simple damage calculation:

| | |
|---|---|
| Vido2mp3.Net Total Revenue (Closing – Present): | ~ $2,300,000 |
| % of Revenue of Competing Websites from Sonobi: | 50% |
| Revenue from Competing Websites Attributable to Sonobi: | ~$1,150,000 |
| **Sonobi Share of Revenue (20%):** | **$230,000** |

Accordingly, we have offset this $230,000 (which is subject to further modification based on actual information) against the Holdback Amount.

Solicitation Breach
Continuing along in the NNNA, the next paragraph, Section 4(a)(ii) states:

> "*[Connolly / Thomas / Seller] agrees not to, directly or indirectly, (A) in any way interfere with the relationship between Buyer and any employee of Buyer; (B) employ or otherwise engage as an employee, independent contractor or otherwise any employee of Buyer.*" – *emphasis added*

As you know, you have solicited and directly hired Nicholas Gaugler to work on various projects of Sonobi– none of which are related in any way to the business affairs of the Company and all of which are a direct breach of the aforementioned provision of the NNNA.

Remedies under the NNNA
Section 5(a) of the NNNA calls for damages owed to Buyer as a remedy for the aforementioned breaches. Additionally, 5(b) calls for the right to obtain injunctive or other equitable relief to restrain any breach or otherwise to specifically enforce the provisions of Section 3 and 4.

DEMAND IS HEREBY MADE THAT YOU AND OTHER OWNERS AND YOUR COMPANIES CEASE AND DESIST PROVIDING SERVICES FOR THE COMPETING WEBSITES AND SOLICITING PERSONS INVOLVED WITH THE OPERATION OF THE WEBSITE. YOU HAVE UNTIL FRIDAY, NOVEMBER 28, 2014 TO DISCONTINUE PROVIDING ANY SERVICES TO COMPETING WEBSITES OR FACE THE POSSIBILITY OF INJUNCTIVE RELIEF.

<u>Violations of the AMSA</u>

Like the NNNA, the AMSA was a material inducement for the Company and its shareholders to enter into the APA.  As stated in Section 2.2 of the AMSA, "Sonobi shall use its **<u>best efforts</u>** in performing its obligation under this Agreement consistent with the efforts historically used by Sonobi with the Business, and the quality and attention to the Services provided hereunder by Sonibi shall be the same quality and attention to the Services historically undertaken by Sonobi in relation to the Business prior to the date hereof.

As we will demonstrate in mediation, Sonobi has engaged in "revenue manipulation" practices whereby, viewed in the most favorable light, Sonobi repeatedly engaged in intentional misrepresentation as to the actual revenue earned by the Website.

We draw your attention to one of these "revenue manipulation" events, which occurred on February 28, 20-13.  According to information provided through the Sonobi dashboard, Sonobi reports that the Website generated revenue of $11,626.92 on February 28, 2013.   That same day, Sonobi also reports the total impressions run through Sonobi from the Website of 3,000,360 with a reported CPM of $0.36797.

This day is special because the number of impressions served through Sonobi roughly tripled when looking at a 14 day prior and post period.  Yet revenue increased by a factor of 17 fold even though the reported CPM was lower on February 28 than the day preceding and following.  The analysis of our subject matter expert shows that the revenue to CPM ratio increased by over 1,900% on February 28- an event that is not caused without manipulation of the base figures (impressions, clicks, revenue).

Ruoyi Jiang continues to crunch the figures to show a number of other revenue manipulation patterns, including "skimming" or "shaving" revenue.  Statistical comparisons against other publishers with similar profiles – such as the Competing Websites – are underway, as a confirmatory measure.


<u>Accounting</u>

Given you do not have a spreadsheet on all of the payments, we took the liberty to prepare one.  When accounting for all payments made between the parties since the $900,000 payment on the Closing, the accounting shows when considering the Holdback Amount is fully set-off, you and Sonobi now owe the Company over $120,000.  This number will move a bit based on a recent payment ConTech made a few weeks back, plus recent credit the Company is due for revenue earned through Sonobi.

We will follow-up this communication with our legal counsel in the Isle of Man with an exact figure along with an invoice for payment so we may settle this matter.   Should you dispute any of the facts contained herein, I would welcome resolution via mediation as mandated within the APA in the Isle of Man.

Yours Truly,

Gabriel C. Murphy

CC:      Kevin John Perks
         Cory Lagerstrom
         Robert Hepting

# Exhibit D

Form HC1                    CLAIM FORM (general)                    Page 1

| For court use only |
| --- |
| Claim No. ORD 15/0024 |
| Issue date  2 2 MAY 2015 |

# IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

## CIVIL DIVISION

| ORDINARY | **PROCEDURE** |
| --- | --- |

**Parties**

(1) Crowd Shout Ltd
PO Box 665
Bridge Chambers
West Quay
Ramsey
Isle of Man
IM99 4PD

(2) Crowd Shout Holdings Ltd
45/13 Strait Street
Valletta
VLT 1434
Malta

**Claimant(s)**
(Full name(s) &
address(es))

(1) Nova Scotia Ltd
Bridge Chambers
West Quay
Ramsey
Isle of Man
IM8 1DL

(2) GCM Holdings Ltd
45/13 Strait Street
Valletta
VLT 1434
Malta

(3) Digital Technology LLC
Main Street
PO Box 556
Charlestown
Nevis

**Defendant(s)**
(Full name(s) &
address(es))

07-09

Form HC1 CLAIM FORM (general) Page 2

(4) Herne Holdings Ltd
45/13 Strait Street
Valletta
VLT 1434
Malta

(5) Gabriel Craig Murphy
16231 Larsen Street
Overland Park
Kansas 66062
United States of America

(6) Rogina Murphy
16231 Larsen Street
Overland Park
Kansas 66062
United States of America

(7) Integrated-Capabilities (Malta) Ltd
45/13 Strait Street
Valletta
VLT 1434
Malta

Brief details of claim
(use numbered paragraphs)

The Claimants claim:

1. A declaration as to the identity of the current directors of the claimants and an injunction restraining the second, fifth and sixth defendants from holding the fifth and sixth defendants out as directors or officers of the claimants or purporting to act with the authority of the claimants.

2. Declarations as to the current shareholders of the claimants and an injunction restraining the second and fifth defendants from purporting to appoint or remove the directors of the claimants.

3. Declarations as to the validity or registerability of a transfer of shares purportedly made pursuant to an agreement in writing made on 10 November 2014 between the second and fourth defendants and/or the validity  or effect of resolutions made at a meeting purporting to be a meeting of the board of the second claimant held on 18 November 2014 and/or determination of the rights and obligations of the parties arising out of that agreement and a shareholders agreement made between the second claimant and the second to fourth defendants on 8 August 2012.

07-09

Mandat ta' Inibizzjoni

Fil-Prim Awla tal-Qorti Civili

Integrated Capabilites (Malta) Ltd (C-50348) u
Digital Technology LLC, soċjeta inkorporata
taht il-liġijiet ta' St.Kitts and Nevis, bl-indirizz
registrat ġewwa Main Street, P.O. Box 556,
Charlestown, Nevis, hawn rappreżentata mill-
mandatarja speċjali taghha, Catherine Baxter
(id. no. 115388A)

*Kontra*

(1) Crowd Shout Holdings Ltd (C-56979);
(2) GCM Holdings Ltd (C-56968);
(3) Herne Holdings Ltd (C-56970); u
(4) Ir-Reġistratur tal-Kumpanniji

Rikors ta' Integrated Capabilites (Malta) Ltd u Digital Technology LLC kif hawn rappreżentata mill-mandatarja speċjali taghha, Catherine Baxter (id. no. 115388A)

Jinghad bil-qima u bil-gurament ta' Catherine Baxter (id. no. 115388A) ta' Chanuc, Triq Josef Kalleya Swieqi, bhala direttriċi ta' Integrated Capabilites (Malta) Ltd u mandatarja speċjali ta' Digital Technology LLC, jiġi kkonfermat:-

Illi l-esponenti ghandhom interess li jitharsu l-jeddijiet taghhom;

Illi r-rikorrenti, sabiex jikkawtelaw d-drittijiet taghhom jixtiequ jżommu lill-intimati Crowd Shout Holdings Ltd(C-56979), GCM Holdings Ltd(C-56968, Herne Holdings Ltd(C-56970), u r-Reġistratur tal-Kumpanniji, jew min minnhom, milli:

1. direttament jew indirettament ibieghu, jassenjaw, jittrasferixxu, jew b'xi mod iehor iċedu jew jghaddu kemm b'titolu oneruż kif ukoll b'titolu gratuwitu, kemm in parti jew in toto, jew b'xi mod iehor jingumbraw jew jidhlu f'arranġamenti dwar l-ishma taghhom fis-soċjeta' Crowd Shout Holdings Ltd(C-56979), jekk mhux tramite id-diretturi u/jew segretarju tas-soċjeta Crowd Shout Holdings Ltd kif preżentement imniżżla fir-Reġistru tal-Kumpanniji kif jirriżulta mid-Dokument A anness jew tramite diretturi u/jew segretarji tal-kumpannija li jistghu jiġu reġistrati tramite l-istess diretturi u/jew segretarju tas-soċjeta Crowd Shout Holdings Ltd kif preżentement imniżżla fir-Reġistru tal-Kumpanniji kif jirriżulta mid-Dokument A anness;

2. jaghtu effett ghall-bdil fl-ishma tas-soċjeta Crowd Shout Holdings Ltd(C-56979) kif qed t ippretendu s-soċjeta intimata GCM Holdings Ltd in forza ta' kuntratt invalidu ta' bejgh tal-ishma ta' Herne Holdings Ltd fis-soċjeta Crowd Shout Holdings Ltd lil GCM Holdings Ltd;

#

# Exhibit E



**COBB COLE**
Attorneys at Law
Since 1925

William M. Cobb
(1881-1939)
Thomas T. Cobb
(1916-2004)
W. Warren Cole, Jr.
(1926-2008)
C. Allen Watts
(1946-2015)

Harold C. Hubka
Scott W. Cichon
Robert A. Merrell III
John P. Ferguson
Thomas J. Leek
Mark A. Watts
Heather Bond Vargas
Kelly Parsons Kwiatek
Kathleen L. Crotty
Andrea M. Kurak

Matthew S. Welch
Michael J. Woods
Michael O. Sznapstajler
Melissa B. Murphy
Pamela R. Masters
Robert E. Doan
Rachel I. Pringle
Kelsie W. Willett
Erica C. Johnson

OF COUNSEL
Thomas S. Hart
Larry D. Marsh
Maja Sander Bowler
William A. Parsons

RETIRED
Jay D. Bond, Jr.
Rhoda Bess Goodson

Daytona Beach • DeLand

149 South Ridgewood Avenue, Suite 700
Daytona Beach, Florida 32114
(386) 255-8171
CobbCole.com

February 24, 2017

gabriel@gabrielmurphy.com
Gabriel Murphy
421 La Perouse Street
Lehigh Acres, FL  33974

bencreedy@mtselaw.com
Benjamin S. Creedy, Esq.
Murphy, Taylor, Siemens and Elliott P.C.
3007 Frederick Avenue
St. Joseph, MO 64506

andy@protzmanlaw.com
Andrew B. Protzman, Esq.
Protzman Law Firm, LLC
1100 Main Street, Suite 2550
Kansas City, MS 64105

Re:    Litigation involving Gabriel Murphy

Dear Sirs:

We are privileged to serve as counsel to Michael Connolly and his related entities, including Digital Technology, LLC and Investment Theory, LLC. The purpose of this letter is to inform you of several additional legal issues related to the various pending actions, and to make proper demand under Florida law for amounts payable by Mr. Murphy.  The demands made herein are made on behalf of Digital Technology, LLC and Investment Theory, LLC, however, given Mr. Murphy's representation by multiple counsel, we felt it prudent to provide these demands via a singular communication directed jointly to all addressees.  Ultimately, Mr. Murphy, individually, is responsible for all debts and judgments to be described hereafter.

On August 10, 2012, Crowd Shout, Ltd. executed a promissory note evidencing a principal amount of $200,000.00 due and payable to Digital Technology.  This note was personally guaranteed by Mr. Murphy.  It was delivered in connection with that certain Asset Purchase Agreement between Digital Technology and Crowd Shout, and per the terms of such

{042564-004 : KPARS/CORR : 02109918.DOCX; 4}



**COBB COLE**
Attorneys at Law
Since 1925

agreement, is "an unconditional obligation … free from any right of offset, or defense to non-payment …." This note was payable in equal monthly installments of principal and interest, and payments were to have commenced on September 1, 2013. While it should have been fully paid and satisfied by August 1, 2014, neither Crowd Shout, nor Mr. Murphy ever made any payments. In light of the foregoing, demand is hereby made for payment in full of $326,882.00 - together with additional accruing interest at the highest lawful rate through the date of payment, expenses and costs of collection.

Further, there is a civil judgment that has been entered against Mr. Murphy in the amount of $1,555,592.36, together with interest of $167,597.50 as of September 1, 2012, interest that has continued accruing at a rate of $213.50 per diem, and reasonable attorneys' fees and expenses in the amount of $27,000.00. The owner and holder of this judgment, Investment Theory, LLC, is controlled by Mr. Connolly. An Assignment of Judgment is being filed in the United States District Court for the Western District of Missouri, Western Division, and collection efforts will be commenced against Mr. Murphy immediately to recover amounts due thereunder. Please be reminded that you are now on notice of these claims, and no actions to transfer or dispose of any assets that may be attached, including without limitation, Mr. Murphy's interest in GCM Holdings, Ltd, owner of both Techbiz Advisors, LLC and Westmark Capital, LLC, should be taken.

Although we had hoped that there would be an amicable resolution of the contested share transfer regarding Crowd Shout Holdings, Ltd., Mr. Murphy has not been open to reasonable settlement negotiations, and we now have no choice but to pursue these additional claims by filing of appropriate actions, commencing collections, and proceedings supplementary. In light of his recent actions in Malta leading to his arrest, we see new urgency in bringing these matters to conclusion. *See* http://www.timesofmalta.com/articles/view/20170126/local/man-found-carrying-gun-and-ammunition-at-the-airport.637642.

To the extent that we will need to serve Mr. Murphy with pleadings related to any of these actions, please advise if you will accept service on his behalf.

**Enclosed Please See Notices Pursuant to Fair Debt Collection Practices Act.**

Sincerely,

*Kelly Parsons Kwiatek*

**Kelly Parsons Kwiatek**
Direct Dial (386) 323-9269
Email Kelly.Parsons@CobbCole.com
Fax (386) 944-7958

KPK:mcs
Enclosures
cc:     Adam J. Gasper, Esq.
        David Marcus, Esq.

**NOTICE PURSUANT TO THE**
**FAIR DEBT COLLECTION PRACTICES ACT, "THE ACT"**
**15 U.S.C. § 1692G, AS AMENDED**

1.      The amount of the debt is: **$200,000 plus interest.**

2.      Digital Technology, LLC is the creditor to whom the debt is owed.

3.      The debtor may dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this notice. If the debtor fails to dispute the debt within thirty (30) days, the debt will be assumed to be valid by the creditor.

4.      If the debtor notifies the creditor's law firm in writing within thirty (30) days from receipt of this notice that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain verification of the debt or a copy of a judgment, and a copy of the verification or judgment will be mailed to the debtor by the creditor's law firm.

5.      If the creditor named herein is not the original creditor, and if the debtor makes a written request to the creditor's law firm within thirty (30) days of receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6.      Written requests pursuant to this notice should be addressed to:

Kelly Parsons Kwiatek, Esq.
Cobb Cole
PO Box 2491
Daytona Beach, Florida 32114

7.      This communication is for the purpose of collecting a debt, and any information obtained from the debtor will be used for that purpose.

**THE LAW DOES NOT REQUIRE THE DEBT COLLECTOR TO WAIT UNTIL THE END OF THE THIRTY-DAY PERIOD TO INITIATE LEGAL ACTION TO COLLECT THIS DEBT. IF, HOWEVER, YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY-DAY PERIOD WHICH BEGINS WITH YOUR RECEIPT OF THIS NOTIFICATION, THE LAW REQUIRES THE DEBTOR COLLECTOR TO SUSPEND EFFORTS (THROUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL THE DEBT COLLECTOR MAILS THE REQUESTED INFORMATION TO YOU.**

**YOUR RIGHTS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT ARE FOR THE ENTIRE TIME PERIOD STATED ABOVE AND ARE NOT SHORTENED BY THE DEADLINE CONTAINED IN ANY SUMMONS YOU MAY RECEIVE.**

**NOTICE PURSUANT TO THE**
**FAIR DEBT COLLECTION PRACTICES ACT, "THE ACT"**
**15 U.S.C. § 1692G, AS AMENDED**

1.      The amount of the debt is: $1,555,592.36, together with interest of $167,597.50 as of September 1, 2012, interest that has continued accruing at a rate of $213.50 per diem, and reasonable attorneys' fees and expenses in the amount of $27,000.00.

2.      Investment Theory, LLC is the creditor to whom the debt is owed.

3.      The debtor may dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this notice. If the debtor fails to dispute the debt within thirty (30) days, the debt will be assumed to be valid by the creditor.

4.      If the debtor notifies the creditor's law firm in writing within thirty (30) days from receipt of this notice that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain verification of the debt or a copy of a judgment, and a copy of the verification or judgment will be mailed to the debtor by the creditor's law firm.

5.      If the creditor named herein is not the original creditor, and if the debtor makes a written request to the creditor's law firm within thirty (30) days of receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6.      Written requests pursuant to this notice should be addressed to:

Kelly Parsons Kwiatek, Esq.
Cobb Cole
PO Box 2491
Daytona Beach, Florida 32114

7.      This communication is for the purpose of collecting a debt, and any information obtained from the debtor will be used for that purpose.

**THE LAW DOES NOT REQUIRE THE DEBT COLLECTOR TO WAIT UNTIL THE END OF THE THIRTY-DAY PERIOD TO INITIATE LEGAL ACTION TO COLLECT THIS DEBT. IF, HOWEVER, YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY-DAY PERIOD WHICH BEGINS WITH YOUR RECEIPT OF THIS NOTIFICATION, THE LAW REQUIRES THE DEBTOR COLLECTOR TO SUSPEND EFFORTS (THROUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL THE DEBT COLLECTOR MAILS THE REQUESTED INFORMATION TO YOU.**

**YOUR RIGHTS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT ARE FOR THE ENTIRE TIME PERIOD STATED ABOVE AND ARE NOT SHORTENED BY THE DEADLINE CONTAINED IN ANY SUMMONS YOU MAY RECEIVE.**

# Exhibit F

# Johnson County Kansas District Court

**CASE NO   15CV00453   CROWD SHOUT LTD ET AL vs. WESTMARK CAPITAL LLC ET AL**
**Div/Judge   11/PAUL C GURNEY**
**Chapter   60**
**Nature   OTHER CONTRACT (60)**
**Status   PENDING**

01/23/2015 NEW CASE E-FILED; CROWD SHOUT LTD VS WESTMARK CAPITAL LLC;
       FILING FEE $196.50; PAID BY KRAFT, ERIC G, RECEIPTED AMOUNT $196.50,
       E-PAYMENT NO: 59591135

01/23/2015 JUDGE PAUL C GURNEY ASSIGNED TO CASE

01/23/2015 FILE STAMP 01/23/15, VERIFIED PETITION FOR RESTRAINING ORDER,
       TEMPORARY AND PERMANENT INJUNCTION AND OTHER RELIEF

01/23/2015 FILE STAMP 01/23/15, EMERGENCY APPLICATION FOR EX PARTE
       APPOINTMENT OF RECEIVER AND MEMORANDUM IN SUPPORT THEREOF

01/23/2015 SCHED. TEMPORARY RESTRAINING ORDER on 02/03/15,04:00pm,Div 14

01/26/2015 FILE STAMP 01/26/15, ORDER APPOINTING RECEIVER

01/26/2015 FILE STAMP 01/26/15 08:09am, REQUEST AND SERVICE INSTRUCTION FORM

01/26/2015 FILE STAMP 01/26/15 08:09am, REQUEST AND SERVICE INSTRUCTION FORM

01/26/2015 PETITION, SUMMONS, APPLICATION AND ORDER ISSUED TO ATTORNEY
       FOR PROCESS SERVER "WESTMARK CAPITAL LLC" E/S

01/26/2015 PETITION, SUMMONS, APPLICATION AND ORDER ISSUED TO ATTORNEY
       FOR PROCESS SERVER "GABRIEL MURPHY" E/S

01/26/2015 CANCELLED TEMPORARY RESTRAINING ORDER on 02/03/15,04:00pm,Div 14

01/26/2015 SCHED. TEMPORARY RESTRAINING ORDER on 02/05/15,04:00pm,Div 14

01/26/2015 ELECTRONIC ENTRY OF APPEARANCE BY JOSEPH R COLANTUONO AS A
       DEFENSE ATTORNEY FOR WESTMARK CAPITAL LLC; GABRIEL MURPHY

01/26/2015 ELECTRONIC ENTRY OF APPEARANCE BY KATHERINE I TRACY AS A
       DEFENSE ATTORNEY FOR WESTMARK CAPITAL LLC; GABRIEL MURPHY

01/28/2015 FILE STAMP 01/28/15, TEMPORARY RESTRAINING ORDER

01/29/2015 ELECTRONIC ENTRY OF APPEARANCE BY ISAAC DAVID KEPPLER AS A
       DEFENSE ATTORNEY FOR WESTMARK CAPITAL LLC; GABRIEL MURPHY

02/02/2015 FILE STAMP 1/29/2015, TEMPORARY RESTRAININGORDER

02/02/2015 ELECTRONIC ENTRY OF APPEARANCE BY JEAN BERNARD MENAGER AS A
       DEFENSE ATTORNEY FOR WESTMARK CAPITAL LLC; GABRIEL MURPHY

02/04/2015 FILE STAMP 02/03/15, DEFENDANTS' MEMORANDUM IN OPPOSITION TO
       PLAINTIFF'S EMERGENCY APPLICATION FOR EX PARTE APPOINTMENT OF
       RECEIVER

02/04/2015 FILE STAMP 02/03/15, DEFENDANTS' MOTION TO DISSOLVE THE
       TEMPORARY RESTRAINING ORDER ENTERED ON JANUARY 29, 2015

02/04/2015 FILE STAMP 02/03/15, MEMORANDUM IN SUPPORT OF DEFENDANTS'
       MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER ENTERED
       ON JANUARY 29, 2015

02/05/2015 FILE STAMP 02/05/15, DEFENDANTS' MOTION TO JOIN INDISPENSABLE
       PARTIES

02/05/2015 FILE STAMP 02/05/15, MEMORANDUM IN SUPPORT OF DEFENDANTS'

MOTION TO JOIN INDISPENSABLE PARTIES

02/05/2015 FILE STAMP 02/05/15, DEFENDANTS' MOTION FOR APPOINTMENT OF INDEPENDENT COUNSEL FOR CROWD SHOUT, LTD.

02/05/2015 FILE STAMP 02/05/15, MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR APPOINTMENT OF INDEPENDENT COUNSEL FOR CROWD SHOUT, LTD.

02/05/2015 FILE STAMP 02/05/15, MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR EMERGENCY APPOINTMENT OF RECEIVER

02/06/2015 <******* Bench Notes *********>
PLF APPEARS BY KRAFT, DEF APPEARS BY COLANTUONO. COURT DOESN'T FIND IRREPARABLE HARM BECAUSE ADEQUATE REMEDIES ARE AVAILABLE. NEITHER RECEIVER OR TRO ISSUED. EACH ORDER TO PROVIDE COMPLETE FINANCIAL REPORTS FROM 1/1/15 FORWARD - DUE BY THE 10TH OF THE FOLLOWING MONTH.(RPTR: HEARN)(JUDGE: MORIARTY)

02/12/2015 FILE STAMP 02/12/15, NOTICE OF SERVICE

02/13/2015 FILE STAMP 02/13/15, NOTICE OF SERVICE

02/18/2015 FILE STAMP 02/17/15, APPLICATION AND ORDER FOR CLERK'S EXTENSION OF TIME

03/02/2015 FILE STAMP 02/27/15, PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO JOIN NECESSARY PARTIES

03/05/2015 FILE STAMP 03/04/15, DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS III, VI AND VII

03/05/2015 FILE STAMP 03/04/15, MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS COUTS III, VI AND VII

03/05/2015 FILE STAMP 03/04/15, DEFENDANT GABRIEL MURPHY'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

03/05/2015 FILE STAMP 03/04/15, DEFENDANT WESTMARK CAPITAL, LLC'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

03/18/2015 FILE STAMP 03/18/15, DEFENDANTS' MOTION TO JOIN PARTIES PURSUANT TO KSA 60-1712

03/18/2015 FILE STAMP 03/18/15, MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO JOIN PARTIES PURSUANT TO KSA 60-1712

04/02/2015 FILE STAMP 04/01/15, CERTIFICATE OF SERVICE

04/03/2015 SCHED. MOTION on 05/26/15,01:30pm,Div 11

04/06/2015 FILE STAMP 04/03/15, MOTION TO DISMISS DEFENDANT WESTMARK CAPITAL, LLC'S COUNTERCLAIMS

04/06/2015 FILE STAMP 04/03/15, MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT WESTMARK CAPITAL, LLC'S COUNTERCLAIMS

04/06/2015 FILE STAMP 04/03/15, MOTION TO DISMISS DEFENDANT GABRIEL MURPHY'S COUNTERCLAIMS

04/06/2015 FILE STAMP 04/03/15, MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT GABRIEL MURPHY'S COUNTERCLAIMS

04/06/2015 FILE STAMP 04/06/15, PLAINTIFF'S ANSWER TO DEFENDANT GABRIEL MURPHY'S COUNTERCLAIMS

04/06/2015 FILE STAMP 04/06/15, PLAINTIFF'S ANSWER TO DEFENDANT WESTMARK CAPITAL, LLC'S COUNTERCLAIMS

04/07/2015 FILE STAMP 04/07/15, PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTER III, VI, & VII

04/07/2015 FILE STAMP 04/07/15, PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO APPOINT INDEPENDENT COUNSEL FOR CROWD SHOUT, LTD

04/08/2015 FILE STAMP 04/07/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENA DUCES TECUM

04/08/2015 FILE STAMP 04/07/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENA DUCES TECUM

04/13/2015 FILE STAMP 04/13/15, PLAINTIFF'S SECOND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER

04/13/2015 FILE STAMP 04/13/15, MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER

04/13/2015 SCHED. MOTION on 04/21/15,02:15pm,Div 11

04/14/2015 FILE STAMP 04/14/15, NOTICE OF INTENT TO REQUEST OF SUBPOENA DUCES TECUM

04/16/2015 FILE STAMP 04/16/15, DEFENDANTS' OBJECTIONS AND MOTION TO QUASH OR MODIFY SUBPOENA DUCES TECUM FOR SCOTT BEHRMAN CPA

04/16/2015 FILE STAMP 04/16/15, DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S SECOND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER

04/21/2015 FILE STAMP 04/20/15, REPLY IN SUPPORT OF PLAINTIFF'S SECOND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER

04/21/2015 FILE STAMP 04/21/15, MOTION FOR LEAVE TO WITHDRAW

04/21/2015 RESCHED. MOTION on 04/30/15,04:00pm,Div 11, COLUNTUANO WITHDRAWING AND REQUEST CONTINUANCE OF HEARING-PLAINTIFF DOES NOT OBJECT

04/21/2015 <******* Bench Notes *********>
MOTION TO WTIHDRAW: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANT WESTMARK AND GABRIEL MURPHY APPEAR IN PERSON AND WITH JOSEPH COLANTUANO. MOTION TO WITHDRAW BY DEFENDANTS ATTORNEY GRANTED. DEFENDANTS' COUNSEL TO SUBMIT THROUGH E-QUE AN ORDER FOR COURTS APPROVAL.(TAPE: NONE)(JUDGE: GURNEY)

04/22/2015 FILE STAMP 04/22/15, SUBPOENA DUCES TECUM (TECHBIZ ADVISORS, LLC)

04/22/2015 FILE STAMP 04/22/15 11:58am, REQUEST AND SERVICE INSTRUCTION FORM

04/22/2015 SUBPOENA ISSUED TO ATTORNEY FOR PROCESS SERVER "TECHBIZ ADVISORS, LLC" E/S

04/23/2015 FILE STAMP 04/23/15, ORDER PERMITTING WITHDRAWAL AND NOTICE OF HEARING

04/23/2015 Removed: Defense Attorney KEPPLER, ISAAC DAVID Removed: Defense Attorney TRACY, KATHERINE I Removed: Defense Attorney COLANTUONO, JOSEPH R

04/23/2015 Removed: Defense Attorney MENAGER, JEAN BERNARD

04/27/2015 FILE STAMP 04/25/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENA DUCES TECUM

04/27/2015 FILE STAMP 04/25/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENA DUCES TECUM

04/28/2015 FILE STAMP 04/27/15, MOTION TO COMPEL DISCOVERY FROM DEFENDANTS AND MEMORANDUM IN SUPPORT THEREOF

04/28/2015 FILE STAMP 04/28/15, MOTION TO OVERRULE OBJECTIONS AND DEEM REQUESTS FOR ADMISSION ADMITTED AND MEMORANDUM IN SUPPORT THEREOF

04/29/2015 FILE STAMP 04/28/15, NOTICE OF SERVICE

04/29/2015 FILE STAMP 04/29/15, MOTION TO INTERVENE BY GCM HOLDINGS LTD.

04/30/2015 FILE STAMP 4/28/2015, DEFENDANTS' OBJECTION AND MOTION TO QUASH OR MODIFY SUBPOENA DUCES TECUM FOR WELLS FARGO BANK. N.A.

04/30/2015 FILE STAMP 4/28/2015, DECLARATION OF GABRIEL MURPHY PURSUANT TO K.S.A. 53-601

04/30/2015 <******* Bench Notes *********>
MOTIONS: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANT MURPHY APPEARS IN PERSON PRO SE. CHRIS PICKERING APPEARS FOR ATTORNEY FOR GCM HOLDINGS. HEARING ON MOTION TO INTERVENE - GRANTED REGARDING RECEIVERSHIP HEARING. HEARING ON SECOND REQUEST TO APPOINT RECEIVER: MOTION DENIED. PARTIES MAY REVISIT ISSUE IF NECESSARY AND ALTERNATIVE REMEDIES ARE NOT SUCCESSFUL.(RPTR: GARDNER)(JUDGE: GURNEY)

04/30/2015 FILE STAMP 04/30/15, PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' OBJECTIONS AND MOTION TO QUASH OR MODIFY SUBPOENA DUCES TECUM FOR WELLS FARGO BANK, N.A.

05/01/2015 SCHED. MOTION on 05/26/15,09:00am,Div 11

05/01/2015 <******* Bench Notes *********>
HEARING SET FOR 052615 AT 9:00 A.M. WILL BE HEARING ON DOCUMENTS 40, 49, 50 AND 53.(TAPE: NONE)

05/01/2015 FILE STAMP 05/01/15, RETURN OF SERVICE (SERVED TECHBIZ ADVISORS LLC ON 4/30/15)

05/06/2015 FILE STAMP 5/4/2015, NOTICE OF VIDEO - TAPED DEPOSITION PER K.S.A.. 60-230(B) (6)

05/06/2015 FILE STAMP 05/06/15, PLAINTIFF'S MOTION TO QUASH DEFENDANT'S NOTICE OF VIDEO-TAPED DEPOSITION PER K.S.A. 60-230(B)(6) AND MEMORANDUM IN SUPPORT THEREOF

05/07/2015 CANCELLED MOTION on 05/26/15,01:30pm,Div 11

05/07/2015 RESCHED. MOTION on 05/26/15,09:00am,Div 11, LENGTH OF HEARING HAS CHANGED

05/07/2015 SCHED. CONFERENCE CALL on 05/07/15,03:30pm,Div 11

05/07/2015 <******* Bench Notes *********>
CONFERENCE CALL: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANT MURPHY APPEARS PRO SE. GCM HOLDING APPEARS BY CHRIS PICKERING (IN PERSON). HEARING ON MOTION FOR PROTECTIVE ORDER PRECLUDING CORPORATE REP DEPO SCHEDULED FOR NEXT WEEK. DEPO NOTICED UP WITHOUT CONFERRING WITH COUNSEL, WHO ARE UNAVAILABLE. ADDITIONALLY, 80 TOPICS HAVE BEEN DESIGNATED AND REASONABLE TIME NEEDS TO BE AFFORDED TO ALLOW FOR PREPARATION OF DEPOSITION. PARTIES TO CONFER REGARDING FUTURE DATE TO ACCOMPLISH. VIDEO CONFERENCING FORMAT TO BE CONSIDERED FOR MALTA DEPONENTS. COURT GRANTS PROTECTIVE ORDER.(TAPE: NONE)(JUDGE: GURNEY)

05/08/2015 FILE STAMP 05/07/15, SECOND MOTION TO INTERVENE BY GCM HOLDINGS LTD

05/08/2015 FILE STAMP 05/08/15, NOTICE OF RETURNED MAIL

05/12/2015 FILE STAMP 05/12/15, SUBPOENA DUCES TECUM (RYAN ELLEDGE)

05/12/2015 FILE STAMP 05/12/15 09:56am, REQUEST AND SERVICE INSTRUCTION FORM

05/12/2015 SUBPOENA ISSUED TO ATTORNEY FOR PROCESS SERVER "RYAN ELLEDGE"

E/S

05/12/2015 FILE STAMP 05/12/15, SUBPOENA DUCES TECUM (KURT BREUCKMANN)

05/12/2015 FILE STAMP 05/12/15 09:58am, REQUEST AND SERVICE INSTRUCTION FORM

05/12/2015 SUBPOENA ISSUED TO ATTORNEY FOR PROCESS SERVER "KURT BREUCKMANN" E/S

05/15/2015 FILE STAMP 05/15/15, PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' MOTION TO JOIN PARTIES PURSUANT TO KSA 60-1712

05/15/2015 FILE STAMP 05/15/15, NOTICE OF HEARING

05/18/2015 FILE STAMP 05/15/15, AMENDED NOTICE OF HEARING

05/19/2015 FILE STAMP 05/19/15, PLAINTIFF'S MOTION FOR AN ORDER TO HAVE GABRIEL MURPHY APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND MEMORANDUM IN SUPPORT THEREOF

05/22/2015 ELECTRONIC ENTRY OF APPEARANCE BY WILLIAM M MODRCIN AS A DEFENSE ATTORNEY FOR WESTMARK CAPITAL LLC; GABRIEL MURPHY

05/22/2015 FILE STAMP 05/22/15, PLAINTIFF'S RESPONSE OPPOSING SECOND MOTION TO INTERVENE BY GCM HOLDING LTD.

05/26/2015 <******* Bench Notes *********>
HEARING ON PENDING MOTIONS TO JOIN PARTIES AND TO DISMISS: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANTS WESTMARK AND MURPHY APPEAR WITH BILL MODRCIN. INTERVENOR GCM APPEARS BY CHRIS PICKERING. COURT WILL REVIEW MATTER AND PROVIDE RULINGS ON NEXT HEARING DATE OF 060815 AT 1:30 PM. PARTIES WILL CONFER REGARDING CURRENT DISCOVERY DISPUTES. BRIEFS ON JURISDICTION ISSUES DUE BY 060515. WESTMARK COUNSEL ADVISES OF INTENT TO REINSTATE WESTMARK CAPITAL LLC. COURT ORDERS THAT TO BE ACCOMPLISHED BY 062615 OTHERWISE COURT WILL CONSIDER MOTION TO DISMISS ON GROUNDS THAT BUSINESS NO LONGER A VIABLE ENTITY TO BRING COUNTERCLAIMS.(RPTR: GARDNER)(JUDGE: GURNEY)

05/26/2015 SCHED. RULING on 06/08/15,01:30pm,Div 11

06/05/2015 FILE STAMP 06/05/15, INTERVENORS BRIEF RE: JURISDICTION/CHOICE OF LAW AND STANDING

06/05/2015 FILE STAMP 06/05/15, MEMORANDUM ON JURISDICTION/JOINDER

06/08/2015 FILE STAMP 06/05/15, PLAINTIFF'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL QUESTIONS RELATING TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT MURPHY'S COUNTERCLAIMS DEFENDANT'S MOTIONS TO JOIN PARTIES, AND GCM HOLDINGS, LTD'S SECOND MOTION TO INTERVENE

06/08/2015 <******* Bench Notes *********>
HEARING ON PENDING MOTIONS: PLAINTIFF APPEARS BY ERICK KRAFT. DEFENDANTS GABRIEL MURPHY AND WESTMARK APPEAR BY BILL MODRCIN. INTERVENOR GCM APPEARS BY CHRIS PICKERING. COURT ORDERS PLAINTIFF TO PRODUCE 30(B)(6) CORPORATE REP FOR DEPOSITION IN KC METRO AREA. PROTECTIVE ORDER GRANTED SO THAT CORPORATE REP WILL NOT BE SUBJECTED TO SERVICE TO ESTABLISH JURISDICTION; BANK ACCOUNT INFORMATION ORDERED PRODUCED BY DEFENDANTS; LOG INS AND PASSWORDS TO BE EXCHANGED AS PER JUDGE MORIARTY'S PRIOR TRO. NO ONE SHALL CHANGE PASSWORDS OR LOG IN INFORMATION WITHOUT CONSULTATION AND AGREEMENT BETWEEN BOTH PARTIES. CHANGING OF PASSWORDS/LOG INS

UNILATERALLY, WITHOUT CONSULTATION WILL SUBJECT A PARTY TO A FINDING OF CONTEMPT.(RPTR: GARDNER)(JUDGE: GURNEY)

06/09/2015 FILE STAMP 06/08/15, NOTICE

06/12/2015 FILE STAMP 06/11/15, SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THE CLAIMS OF DEFENDANT WESTMARK CAPITAL, LLC

06/15/2015 FILE STAMP 06/12/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENAS DUCES TECUM

06/15/2015 FILE STAMP 06/15/15, NOTICE OF SERVICE

06/17/2015 SCHED. OTHER HEARING on 07/01/15,09:00am,Div 11

06/17/2015 <******* Bench Notes *********>
HEARING ON 070115 IS TO SETTLE JOURNAL ENTRY.(TAPE: NONE)

06/18/2015 FILE STAMP 06/17/15, PARTIAL TRANSCRIPT OF PROCEEDINGS, ON 6/8/15 , BY DENISE M. GARDNER, CSR, RPR

06/29/2015 FILE STAMP 06/26/15, OBJECTIONS TO ISSUANCE OF SUBPOENA DUCES TECUM

07/01/2015 <******* Bench Notes *********>
HEARING TO FINALIZE JOURNAL ENTRY: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANTS WESTMARK AND MURPHY APPEAR BY BILL MODRCIN. REQUESTED PARTY INTERVENOR APPEARS BY CHRIS PICKERING. COURT APPROVES DEFENDANT'S SUBMISSION WITH TWO MODIFICATIONS - DIRECTS COUNSEL TO SUBMIT TO E-QUEUE. PROTECTIVE ORDER MUST BE ENTERED BEFORE RECORDS PRODUCED. COURT DIRECTS THAT RECORDS IN ATTORNEYS' POSSESSION WILL NEED TO BE DESTROYED FOLLOWING CONCLUSION OF CASE. IF ANY OBJECTIONS REMAIN TO REVISED SUBPOENAES, DEFENDANT MUST ASSERT SUCH OBJECTIONS AND IF THE PARTIES ARE UNABLE TO RESOLVE THE DISPUTE, A MOTION AND HEARING SHOULD BE SCHEDULED WITH THE COURT.(RPTR: GARDNER)(JUDGE: GURNEY)

07/02/2015 FILE STAMP 07/02/15, JOURNAL ENTRY

07/13/2015 FILE STAMP 07/13/15, STIPULATED PROTECTIVE ORDER

07/15/2015 FILE STAMP 07/14/15, NOTICE OF SERVICE

07/15/2015 FILE STAMP 07/14/15, NOTICE OF VIDEO-TAPED DEPOSITION PER KSA 60-230(B)(6)

07/15/2015 FILE STAMP 07/15/15, MOTION FOR ORDER TO SHOW CAUSE

07/15/2015 FILE STAMP 07/15/15, AMENDED NOTICE OF SERVICE

07/15/2015 FILE STAMP 07/15/15, AMENDED NOTICE OF VIDEO-TAPED DEPOSITION PER KSA 60-230(B)(6)

07/16/2015 FILE STAMP 07/15/15, THIRD MOTION TO INTERVENE IN THE DEPOSITIONS SCHEDULED IN THIS MATTER BY GCM HOLDINGS LTD.

07/17/2015 FILE STAMP 07/16/15, PLAINTIFF'S RESPONSE OPPOSING SECOND MOTION TO INTERVENE BY GCM HOLDING LTD

07/17/2015 FILE STAMP 07/17/15, JOINDER IN THE MOTION OF GCM HOLDINGS, INC. TO HOLD PLAINTIFF IN CONTEMPT

07/17/2015 SHERIFF FEE $15.00; PAID BY ERIC G KRAFT, RECEIPTED AMOUNT $15.00, E-PAYMENT NO: 62383062

07/17/2015 FILE STAMP 07/17/15, SUBPOENA DUCES TECUM

07/17/2015 FILE STAMP 07/17/15 11:07am, REQUEST AND SERVICE INSTRUCTION FORM

07/17/2015 SUBPOENA ISSUED TO THE SHERIFF OF JO CO KS "WELLS FARGO BANK,

N.A."

07/17/2015 SHERIFF FEE $15.00; PAID BY ERIC G KRAFT, RECEIPTED AMOUNT $15.00, E-PAYMENT NO: 62383541

07/17/2015 FILE STAMP 07/17/15, SUBPOENA DUCES TECUM (SCOTT BEHRMAN)

07/17/2015 FILE STAMP 07/17/15 11:12am, REQUEST AND SERVICE INSTRUCTION FORM

07/17/2015 SUBPOENA ISSUED TO THE SHERIFF OF JO CO KS "SCOTT BEHRMAN"

07/20/2015 FILE STAMP 07/20/2015, SHERIFF RETURN JO CO KS, SUBPOENA AND EXHIBITS SERVED WELLS FARGO BANK, N.A. 07/20/2015 E/S

07/20/2015 FILE STAMP 07/20/2015, SHERIFF RETURN JO CO KS, SUBPOENA NO SERVICE SCOTT BEHRMAN 07/20/2015 E/S

07/21/2015 FILE STAMP 07/20/15, NOTICE TO TAKE DEPOSITION

07/23/2015 FILE STAMP 07/23/15, NOTICE OF INTENT TO REQUEST ISSUANCE OF SUBPOENA DUCES TECUM

07/24/2015 FILE STAMP 07/23/15, PLAINTIFF'S RESPONSE OPPOSING PROPOSED INTERVENOR'S MOTION TO SHOW CAUSE

07/24/2015 FILE STAMP 07/24/15, SUBPOENA DUCES TECUM

07/24/2015 FILE STAMP 07/24/15 03:56pm, REQUEST AND SERVICE INSTRUCTION FORM

07/24/2015 SUBPOENA ISSUED TO ATTORNEY FOR CERTIFIED MAIL "VOXA, LLC C/O JAMES NEELD, REGISTERED AGENT" E/S

07/28/2015 FILE STAMP 07/28/15, NOTICE OF SERVICE

07/30/2015 FILE STAMP 07/30/15, AFIDAVIT IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

08/04/2015 FILE STAMP 08/03/15, ADDITIONAL SUGGESTIONS IN SUPPORT OF INTERVENOR'S SECOND MOTION TO INTERVENE

08/06/2015 FILE STAMP 08/05/15, PLAINTIFF'S RESPONSE TO PROPOSED INTERVENOR'S ADDITIONAL SUGGESTIONS IN SUPPORT OF ITS SECOND MOTION TO INTERVENE

08/07/2015 FILE STAMP 08/06/15, FURTHER SUGGESTIONS IN SUPPORT OF INTERVENOR'S SECOND MOTION TO INTERVENE

08/07/2015 SHERIFF FEE $15.00; PAID BY ERIC G KRAFT, RECEIPTED AMOUNT $15.00, E-PAYMENT NO: 62737780

08/07/2015 FILE STAMP 08/06/15, SUBPOENA DUCES TECUM

08/07/2015 FILE STAMP 08/06/15 02:59pm, REQUEST AND SERVICE INSTRUCTION FORM

08/07/2015 SUBPOENA ISSUED TO THE SHERIFF OF JO CO KS "SCOTT BEHRMAN"

08/11/2015 FILE STAMP 08/11/15, PLAINTIFF'S OBJECTIONS TO TOPICS LISTED IN DEFENDANTS AMENDED NOTICE OF VIDEO-TAPED DEPOSITION PER K.S.A. 60-230 (B) (6)

08/18/2015 FILE STAMP 08/17/15, AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

08/19/2015 FILE STAMP 08/18/15, PLAINTIFF'S SUPPLEMENTAL RESPONSE OPPOSING SECOND MOTION TO INTERVENE BY GCM HOLDING LTD.

08/19/2015 FILE STAMP 08/18/15, AMENDED NOTICE TO TAKE DEPOSITION

08/19/2015 FILE STAMP 08/19/15, AMENDED SUBPOENA DUCES TECUM (VOXA LLC)

08/25/2015 SCHED. CONFERENCE CALL on 08/25/15,03:30pm,Div 11

08/25/2015 <******* Bench Notes *********>
CONFERENCE CALL: PLAINTIFF APPEARS BY ERIC KRAFT. DEFENDANTS WESTMARK AND MURPHY APPEAR BY BILL MODRICIN. INTERVENOR GCM APPEARS BY CHRIS PICKERING. TELEPHONE CONFERENCE RE: MR. PICKERING'S REQUEST TO ATTEND DEPOSITION OF CORPORATE

REPRESENTATIVE OF VOXA AND INQUIRE OF REPRESENTATIVE. MR. KRAFT OPPOSES THIS REQUEST. COURT WILL ALLOW ATTENDANCE AND PARTICIPATION BY MR. PICKERING.(TAPE: NONE)(JUDGE: GURNEY)

08/27/2015 FILE STAMP 08/27/15, CERTIFICATE OF MAILING/SERVICE

08/27/2015 FILE STAMP 08/27/15, PLAINTIFF'S MOTION FOR ADDTIONAL TIME TO RESPOND AND OBJECT TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION AND MEMOMANDUM IN SUPPORT THEREOF

09/03/2015 FILE STAMP 09/02/15, PLAINTIFF'S MOTION FOR PROTECTIVE ORDER PERTAINING TO DEPOSITION OF CROWD SHOUT LTD.'S CORPORATE REPRESENTATIVE AND MEMORANDUM IN SUPPORT THEREOF

09/03/2015 FILE STAMP 09/03/15, DECISION ON MOTIONS TO DISMISS COUNTERCLAIMS AND TO JOIN ADDITIONAL PARTIES

09/04/2015 Plaintiff GCM HOLDINGS LTD added on 09/04/15

09/04/2015 FILE STAMP 09/04/2015, SHERIFF RETURN JO CO KS, SUBPOENA AND EXHIBITS SERVED SCOTT BEHRMAN 08/12/2015 E/S

09/08/2015 Plaintiff TECHBIZ added on 09/08/15

09/08/2015 Plaintiff MR PERKS added on 09/08/15

09/08/2015 Plaintiff I-CAP added on 09/08/15

09/08/2015 Defendant CROWD SHOUT HOLDINGS LTD added on 09/08/15

09/08/2015 ELECTRONIC ENTRY OF APPEARANCE BY MICHELLE M SUTER AS A DEFENSE ATTORNEY FOR CROWD SHOUT HOLDINGS LTD

09/09/2015 FILE STAMP 09/08/15, ENTRY OF APPEARANCE

09/18/2015 FILE STAMP 09/16/15, JOINT MOTION FOR EXTENSION OF TIME

09/28/2015 ELECTRONIC ENTRY OF APPEARANCE BY ADAM J GASPER AS A PLAINTIFF ATTORNEY FOR CROWD SHOUT LTD

09/28/2015 FILE STAMP 09/28/15, MEMORANDUM IN SUPPORT OF VERIFIED MOTION TO ENFORCE THE COURT'S ORDER, RESTORE DOMAIN NAME AND FOR TEMPORARY INJUNCTION

09/28/2015 FILE STAMP 09/28/15, VERIFIED MOTION TO ENFORCE THE COURT'S ORDER, RESTORE DOMAIN NAME AND FOR TEMPORARY INJUNCTION

10/01/2015 FILE STAMP 09/30/15, MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

10/08/2015 FILE STAMP 10/07/15, NOTICE OF HEARING

10/08/2015 SCHED. CONFERENCE CALL on 10/13/15,08:30am,Div 11

10/13/2015 <******** Bench Notes *********>
CONFERENCE CALL: PLAINTIFF APPEARS BY ADAM GASPER AND GREG SPIES. DEFENDANTS WESTMARK AND MURPHY APPEAR BY BILL MODRICIN. DEFENDANT CROWD SHOUT HOLDINGS APPEAR BY MICHELLE SUTER. INTERVENOR GCM APPEARS BY CHRIS PICKERING. TELEPHONE CONFERENCE REGARDING DISPUTE ON CHANGES TO WEBSITE. HEARING SET FOR 102315. PARTIES MUST CONFER BEFORE HEARING TO ATTEMPT RESOLUTION OF PRESENT DISPUTE.(TAPE: NONE)(JUDGE: GURNEY)

10/13/2015 SCHED. OTHER HEARING on 10/23/15,01:30pm,Div 11

10/15/2015 FILE STAMP 10/13/15, AMENDED NOTICE OF HEARING SET FOR OCTOBER 23, 2015 @ 1:30PM IN DIVISION 11

10/21/2015 FILE STAMP 10/20/15, CROSS NOTICE OF HEARING

10/22/2015 FILE STAMP 10/22/15, GCM HOLDINGS LTD RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE OR FOR INJUNCTIVE RELIEF

10/23/2015 <******** Bench Notes *********>

    HEARING ON MOTION TO ENFORCE AND FOR INJUNCTION: PLAINTIFF APPEARS BY GREG SPIES AND ADAM GASPER. DEFENDANT CROWD SHOUT APPEARS BY MICHELLE SUTER. DEFENDANTS WESTMARK CAPITAL AND GABRIEL MURPHY APPEAR WITH BILL MODRCIN. INTERVENOR GMC HOLDINGS APPEARS BY CHRISTOPHER PICKERING. AFTER CONFERRING WITH COUNSEL, PARTIES AGREED UPON PROPOSAL TO ADDRESS ONGOING TECHNICAL ISSUES WITH WEBSITE. MR. MURPHY AND MR. GAUGLER WILL WORK ON ADDRESSING ANY ONGOING NEEDS ASSOCIATED WITH WEBSITE AND IF UNABLE TO BOTH AGREE ON RESOLUTION, A THIRD PARTY SCO INDIVIDUAL AS AGREED UPON BY THE PARTIES WILL DECIDE HOW ANY DISPUTE WILL BE HANDLED. WITH RESPECT TO ITEMS RAISED BY PLAINTIFF IN ITS MOTION, INCLUDING REVERTING BACK TO PRIOR NAME SERVERS, BOTH MR. MURPHY AND MR. GAUGLER TO WORK TOWARD RESOLVING. IF UNABLE TO RESOLVE, THIRD PARTY SCO WILL DECIDE. PARTIES TO SELECT AND AGREE UPON THIRD PARTY SCO AND PREPARE AN ORDER DESIGNATING TASKS AND COMPENSATION. WEBSITE PROCEEDS TO REMAIN IN PLACE AND SHALL NOT BE DISTRIBUTED ABSENT FURTHER COURT ORDER OR AGREEMENT BY PARTIES. MR. SPIES TO PREPARE A JOURNAL ENTRY.(RPTR: HEARN)(JUDGE: GURNEY)

10/23/2015 FILE STAMP 10/22/15, MOTION TO SEAL COURT RECORDS AND FOR PROTECTIVE ORDER

10/23/2015 FILE STAMP 10/22/15, RESPONSE BY CROWD SHOUT HOLDINGS, LTD, TO CROWD SHOUT LTD'S MOTION TO ENFORCE OR FOR INJUNCTIVE RELIEF

10/26/2015 FILE STAMP 10/23/15, DEFENDANTS' WESTMARK CAPITAL LLC AND GABRIEL MURPHY, MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

10/29/2015 FILE STAMP 10/28/15, NOTICE TO TAKE DEPOSITION

10/29/2015 FILE STAMP 10/28/15, SUBPOENA (CORY LAGERSTROM)

11/04/2015 FILE STAMP 11/04/15, WITHDRAWAL OF COUNSEL AND ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL

11/04/2015 Removed: Plaintiff Attorney KRAFT, ERIC G

11/06/2015 FILE STAMP 11/05/15, CERTIFICATE OF COMPLIANCE

11/06/2015 FILE STAMP 11/05/15, DEFENDANT GABRIEL MURPHY'S MOTION TO COMPEL DISCOVERY WITH MEMORANDUM IN SUPPORT

11/24/2015 FILE STAMP 11/23/15, PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOITON TO COMPEL DISCOVERY

12/09/2015 FILE STAMP 12/09/15, GCM HOLDINGS LTD. MOTION TO ENFORCE

12/09/2015 Plaintiff CROWD SHOUT HOLDINGS LTD. added on 12/09/15

12/09/2015 Plaintiff Attorney SUTER, MICHELLE M assigned on 12/09/15

12/09/2015 FILE STAMP 12/09/15, CROSS CLAIM PETITION

12/10/2015 FILE STAMP 12/10/15, GCM HOLDINGS LTD. SECOND MOTION TO ENFORCE

12/10/2015 FILE STAMP 12/10/15, THIRD DECLARATION OF GABRIEL CRAIG MURPHY PURSUANT TO K.S.A. 53-601

12/16/2015 FILE STAMP 12/16/15, PLAINTIFF'S OPPOSITION TO DEFENDANT GCM HOLDINGS LTD'S MOTION TO ENFORCE

12/16/2015 FILE STAMP 12/16/15, AFFIDAVIT OF NICHOLAS GAUGLER

12/17/2015 FILE STAMP 12/16/15, PLAINTIFF'S OPPOSITION TO DEFENDANT GCM HOLDINGS LTD'S SECOND MOTION TO ENFORCE

12/21/2015 FILE STAMP 12/21/15, PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF BANKING AND FINANCIAL INFORMATION AND RESPONSES TO SECOND REQUESTS FOR PRODUCTION.

12/21/2015 FILE STAMP 12/21/15, NOTICE OF INTENT TO ISSUE NON PARTY BUSINESS RECORDS SUBPOENAS

12/22/2015 FILE STAMP 12/21/15, CERTIFICATE OF SERVICE

12/31/2015 FILE STAMP 12/30/15, CLERK'S 14- DAY EXTENSION

01/05/2016 FILE STAMP 01/05/16, NOTICE OF HEARING, 1-12-16 AT 4:00PM, DIV 11

01/05/2016 SCHED. MOTION on 01/12/16,04:00pm,Div 11

01/06/2016 FILE STAMP 01/06/16, DEFENDANT GABRIEL MURPHY'S OBJECTION TO PROPOSED SUBPOENAS

01/08/2016 ELECTRONIC ENTRY OF APPEARANCE BY CHRISTOPHER F PICKERING AS A PLAINTIFF ATTORNEY FOR GCM HOLDINGS LTD

01/08/2016 RESCHED. MOTION on 01/15/16,02:00pm,Div 11, ATTY FOR CROWD SHOUT NOT AVAILABLE ON 011216-NEW DATE AGREED BY ALL

01/14/2016 FILE STAMP 01/13/16, MOTION FOR EXTENSION OF TIME TO RESPOND TO CROWD SHOUT HOLDINGS, LTD.'S CROSSCLAIM PETITION

01/14/2016 FILE STAMP 01/13/16, MOTION FOR ISSUANCE OF SUBPOENAS

01/15/2016 <******* Bench Notes *********>
HEARING ON MOTIONS TO ENFORCE: PLAINTIFF APPEARS BY ADAM GASPER. INTERVENOR GCM HOLDING APPEARS BY CHRIS PICKERING. DEFENDANTS MURPHY AND WESTMARK APPEAR BY BILL MODRICIN. MOTION GRANTED REGARDING REQUEST TO UNDO LOCK ON GO DADDY HOST SITE. PARTIES DIRECTED TO AGREE ON THIRD PARTY NEUTRAL FOR WEBSITE TECHNICAL DISPUTES. PARTIES TO EXCHANGE FINANCIAL AND LOG IN AND PASSWORD ACCESS INFORMATION. MR. PICKERING TO DRAFT JOURNAL ENTRY.(RPTR: SETTER)(JUDGE: GURNEY)

01/22/2016 FILE STAMP 01/20/16, CROWD SHOUT HOLDINGS, LTD'S MOTION FOR ADDITIONAL TIME TO ANSWER DISCOVERY

01/22/2016 FILE STAMP 01/20/16, RESPONSE BY CROWD SHOUT HOLDINGS, LTD. TO CROWD SHOUT LTD'S MOTION FOR EXTENSION OF TIME TO ANSWER CROSSCLAIM PETITION

01/25/2016 FILE STAMP 01/22/16, NOTICE OF SERVICE; FOR MAILING

01/26/2016 FILE STAMP 01/25/16, MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT GABRIEL MURPHY SHOULD NOT BE HELD IN CONTEMPT OF COURT

01/26/2016 SCHED. MOTION on 02/16/16,09:30am,Div 11

02/01/2016 FILE STAMP 01/29/16, CROWD SHOUT HOLDINGS, LTD'S OBJECTION TO PROPOSED SUBPOENAS

02/04/2016 FILE STAMP 02/03/16, RESPONSE TO CROWD SHOUT HOLDINGS, LTD.'S MOTION FOR ADDITIONAL TIME TO ANSWER DISCOVERY

02/05/2016 FILE STAMP 02/05/16, JOURNAL ENTRY- MOTIONS TO ENFORCE

02/16/2016 FILE STAMP 02/12/16, DEFENDANT GABRIEL MURPHY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SHOW CAUSE ORDER

02/16/2016 FILE STAMP 02/12/16, NOTICE OF SERVICE

02/16/2016 FILE STAMP 02/12/16, NOTICE OF SERVICE

02/16/2016 <******* Bench Notes *********>
HEARING ON MOTION FOR COURT APPROVAL FOR ISSUANCE OF SUBPOENAS BY PLAINTIFF: PLAINTIFF APPEARS BY ADAM GASPER.

DEFENDANT WESTMARK APPEARS BY WILLIAM MODRCIN. DEFENDANT MURPHY APPEARS IN PERSON AND WITH WILLIAM MODRICIN. GCM HOLDING APPEARS BY CHRIS PICKERING. DEFENDANT CROWD SHOUT HOLDINGS LTD. APPEARS BY MICHELLE SUTER. SUBPOENAS AUTHORIZED. WILL BE SUBJECT TO PROTECTIVE ORDER AND CAN BE DELIVERED TO MR. MODRCIN'S OFFICE. MOTION FOR MORE TIME TO EXTEND RESPONSIVE PLEADING DATE FOR PLAINTIFF TO RESPOND TO CROSS-CLAIM UNTIL AFTER CROWD SHOUT HOLDINGS LTD RESPONDS TO OUTSTANDING DISCOVERY IS DENIED. RESPONSIVE PLEADING DUE BY 022316. CROWD SHOUT HOLDINGS LTD DISCOVERY RESPONSES DUE BY 030416. HEARING SET FOR ANY MOTIONS ON 032116 AT 1:30 P.M. PARTIES TO CONFER REGARDING USE OF MASTER FOR DISCOVERY ISSUES.(RPTR: VANTUYL)(JUDGE: GURNEY)

02/16/2016 SCHED. MOTION on 03/21/16,01:30pm,Div 11

02/16/2016 FILE STAMP 02/12/16, NOTICE OF HEARING

02/17/2016 FILE STAMP 02/16/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

02/17/2016 FILE STAMP 02/15/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

02/17/2016 FILE STAMP 02/15/16, SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR ISSUANCE OF SUBPOENAS

02/17/2016 FILE STAMP 02/15/16, NOTICE OF HEARING

02/17/2016 Defendant PERKS, KEVIN JOHN added on 02/17/16

02/17/2016 Defendant INTEGRATED CAPABILITIES (MALTA) LTD added on 02/17/16

02/17/2016 FILE STAMP 02/12/16, REQUEST AND SERVICE INSTRUCTION FORM

02/17/2016 FILE STAMP 02/12/16, REQUEST AND SERVICE INSTRUCTION FORM

02/17/2016 PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "INTEGRATED CAPABILITIES (MALTA) LTD" E/S

02/17/2016 PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "KEVIN JOHN PERKS" E/S

02/24/2016 FILE STAMP 02/23/16, MOTION TO DISMISS COUNTS 1 AND 11 OF CSHL'S PURPORTED CROSS CLAIM PETITION

02/24/2016 FILE STAMP 02/23/16, CROWD SHOUT LTD'S ANSWER TO CSHL'S PURPORTED CROSS CLAIM PETITION

02/26/2016 FILE STAMP 02/25/16, NOTICE TO RESUME VIDEO-TAPED DEPOSITION OF CROWD SHOUT, LTD, PER K.S.A. 60-230(B)(6)

03/14/2016 FILE STAMP 03/13/16, MOTION TO QUASH UNILATERAL NOTICE OF 30(B)(6) DEPOSITION AND FOR PROTECTIVE ORDER

03/15/2016 FILE STAMP 03/14/16, DEFENDANT'S GABRIEL MURPHY'S MOTION FOR DISMISSAL GIVEN PLAINTIFF'S FAILURE TO ATTEND DEPOSITION WITH MEMORADUM IN SUPPORT

03/15/2016 FILE STAMP 03/14/16, CERTIFICATE OF COMPLAINCE TO DEFENDANT'S MOTION FOR DISMISSAL

03/15/2016 FILE STAMP 03/14/16, DEFENDANT GABRIEL MURPHY'S MEMRANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTION ORDER

03/17/2016 FILE STAMP 03/16/16, DEFENDANT GABRIEL MURPHY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH UNILATERAL NOTICE OF 30(B)(6) DEPOSITION AND FOR PROTECTIVE ORDER

03/17/2016 FILE STAMP 03/16/16, NOTICE OF HEARING

03/17/2016 FILE STAMP 03/17/16, NOTICE OF HEARING

03/21/2016 FILE STAMP 03/18/16, RETURN OF SERVICE, SERVED INTERGRATED CAPABILIES LTD, ON 3/14/16

03/21/2016 FILE STAMP 03/18/16, RETURN OF SERVICE, SERVED KEVIN JOHN PERKS, ON 3/14/16

03/21/2016 FILE STAMP 03/18/16, RETURN OF SERVICE, SERVED INTEGRATED CAPABILITIES LTD. 3/11/16

03/21/2016 FILE STAMP 03/18/16, RETURN OF SERVICE, SERVED INTERNATIONAL FEDERAL EXPRESS 3/11/16

03/21/2016 FILE STAMP 03/21/16, MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

03/22/2016 <******* Bench Notes *********>
HEARING ON DEFENDANT MURPHY'S MOTION TO DISMISS FOR FAILURE TO ATTEND DEPOSITION (DOC. 171), PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DOC. 114) AND MOTION TO QUASH DEPOSITION AND PROTECTIVE ORDER (DOC. 170). PLAINTIFF APPEARS BY ADAM GASPER. DEFENDANT MURPHY APPEARS IN PERSON AND WITH BILL MODRCIN. GMC HOLDING APPEARS BY CHRIS PICKERING. DEFENDANT CROWD SHOUT HOLDINGS APPEAR BY MICHELLE SUTER. DEFENDANT'S MOTION TO DISMISS IS DENIED. THE CORPORATE REPRESENTATIVE DEPOSITION IS TO BE SCHEDULED WITHIN THE NEXT 30 DAYS IF POSSIBLE WITHIN ATTORNEYS AND DEPONENT'S AVAILABILITY. THE DEPOSITION IS TO BE TAKEN IN JOHNSON COUNTY WITH DEPONENT APPEARING IN PERSON. THE PERSON APPEARING MAY NOT BE SERVED WITH LEGAL PROCESS AT THE TIME OF THEIR APPEARANCE IN THIS JURISDICTION. PLAINTIFF'S MOTION TO COMPEL (DOC. 142) IS GRANTED WITH RESPECT TO PAYPAL ACCOUNTS AND HSBC RECORDS WHICH ARE TO BE PRODUCED WITHOUT ANY REDACTIONS. PRODUCTION MAY BE MADE UNDER A PROTECTIVE ORDER. MOTION FOR ORDER TO SHOW CAUSE IS DEFERRED FOR NOW. PLAINTIFF MAY FILE A RENEWED MOTION SPECIFYING VIOLATIONS THAT HAVE OCCURRED AND REMAIN IN DISPUTE. MR. PICKERING ADVISES THE COURT THAT HE AND MR. GASPER WILL SECURE THE SERVICES OF A THIRD PARTY INDIVIDUAL TO HANDLE TECH/WEBSITE DISPUTES, AS PREVIOUSLY ORDERED BY THE COURT. THIS WILL BE ACCOMPLISHED WITHIN 2 WEEKS. PLAINTIFF'S MOTION TO DISMISS CROSS CLAIM (DOC. 167) IS NOT ADDRESSED, AS FILING FEE IS REQUIRED BEFORE ANY SUCH MOTION CAN BE HEARD. THE COURT SETS A MOTION TO COMPEL BY MR. MODRICIN FOR HEARING ON 040716 AT 2:00 P.M. MR. GASPER TO PREPARE JOURNAL ENTRY.(RPTR: PFANNENSTIEL)(JUDGE: GURNEY)

03/22/2016 SCHED. MOTION TO COMPEL on 04/07/16,02:00pm,Div 11

04/01/2016 ELECTRONIC ENTRY OF APPEARANCE BY MICHAEL T CRABB AS A DEFENSE ATTORNEY FOR KEVIN JOHN PERKS; INTEGRATED CAPABILITIES LTD

04/01/2016 FILE STAMP 04/01/16, INTEGRATED CAPABILITIES, LTD. AND KEVIN PERKS'S LIMITED APPEARANCE AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

04/04/2016 FILE STAMP 04/04/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

04/05/2016 FILE STAMP 04/05/16, GCM HOLDINGS, LTD.'S (GCM) MOTION FOR APPOINTMENT OF NEUTRAL AND PARAMETERS

04/06/2016 FILE STAMP 04/06/16, PLAINTIFF'S RESPONSE TO GCM HOLDINGS MOTION

FOR APPOINTMENT OF NEUTRAL AND PARAMETERS

04/07/2016 FILE STAMP 04/06/16, PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT GABRIEL MURPHY'S MOTION TO COMPEL

04/07/2016 FEE OF MOTION 195.00;, Receipted Amount: $195.00 , Check No: 3778, Receipt NO: 16011291

04/07/2016 <******* Bench Notes *********>
MOTION TO COMPEL: PLAINTIFF APPEARS BY ADAM GASPER. DEFENDANT MURPHY APPEARS IN PERSON AND WITH BILL MODRICIN. DEFENDANT WESTMARK APPEARS BY BILL MODRICIN. CROWD SHOUT HOLDINGS APPEARS BY MICHELLE SUTER. CHRIS PICKERING APPEARS FOR GCM HOLDINGS. STATUS CONFERENCE SET. PARTIES TO RESOLVE DISPUTES REGARDING THIRD PARTY NEUTRAL. MOTION TO COMPEL IS DEFERRED AT REQUEST OF PARTIES.(RPTR: RANDOLPH)(JUDGE: GURNEY)

04/07/2016 SCHED. STATUS CONFERENCE on 05/09/16,01:30pm,Div 11

04/15/2016 FILE STAMP 04/15/16, CROWD SHOUT HOLDINGS, LTD. MOTION FOR EXTENSION OF TIME TO RESSPOND TO MOTION TO DISMISS

04/19/2016 FILE STAMP 04/19/16, OPPOSITION TO CROWD SHOUT HOLDING'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PERK'S AND I-CAP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

04/22/2016 FILE STAMP 04/21/16, CERTIFICATE OF SERVICE

04/25/2016 FILE STAMP 04/25/16, NOTICE OF HEARING

05/06/2016 FILE STAMP 05/05/16, PLAINTIFF'S MOTION TO DETERMINE THE SUFFICIENCY OF CROWD SHOUT HOLDINGS, LTD.'S RESPONSES AND DENIALS TO REQUESTS FOR ADMISSIONS

05/06/2016 FILE STAMP 05/05/16, PLAINTIFF'S MOTION TO DETERMINE THE SUFFICIENCY OF GCM HOLDINGS' RESPONSES AND DENIALS TO REQUESTS FOR ADMISSIONS

05/06/2016 FILE STAMP 05/06/16, CROWD SHOUT LTD'S MOTION FOR PRELIMINARY INJUNCTION AND FOR ORDER TO SHOW CAUSE WHY DEFENDANT GABRIEL MURPHY SHOULD NOT BE HELD IN CONTEMPT OF COURT

05/09/2016 <******* Bench Notes *********>
HEARING ON APPOINTMENT OF NEUTRAL: PLAINTIFF APPEARS BY ADAM GASPER. DEFENDANT GABRIEL MURPY APPEARS IN PERSON AND WITH BILL MODRICIN. DEFENDANT WESTMARK APPEARS BY BILL MODRICIN. GCM HOLDINGS APPEAR BY CHRIS PICKERING. CROWD SHOUT HOLDINGS APPEARS BY MICHELLE SUTER. MICHAEL CRABB APPEARS FOR MR. PERKS AND INTEGRATED CAPABILITIES. PARTIES STILL WORKING OUT AGREEMENT. CROWD SHOUT HOLDINGS LTD'S MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION TO DISMISS-GRANTED. RESPONSE DUE BY 051816. REPLY DUE BY 052716. NEXT HEARING ON PENDING MOTIONS SET FOR 061716. PARTIES TO CONTINUE TO DISCUSS MOTION TO COMPEL ISSUES, MAY BRING UP AT NEXT HEARING.(RPTR: HEARN)(JUDGE: GURNEY)

05/10/2016 SCHED. MOTION on 06/17/16,02:45pm,Div 11

05/20/2016 FILE STAMP 05/18/16, RESPONSE TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

05/20/2016 FILE STAMP 05/20/16, NOTICE OF SERVICE

05/20/2016 FILE STAMP 05/20/16, NOTICE OF SERVICE

05/26/2016 ELECTRONIC ENTRY OF APPEARANCE BY BENJAMIN S CREEDY AS A PLAINTIFF ATTORNEY FOR CROWD SHOUT HOLDINGS LTD.

05/27/2016 FILE STAMP 05/26/16, ENTRY OF APPEARANCE AND NOTICE OF WITHDRAWAL

05/27/2016 Removed: Plaintiff Attorney SUTER, MICHELLE M

05/27/2016 FILE STAMP 05/27/16, MOTION FOR LEAVE TO WITHDRAW

05/27/2016 FILE STAMP 05/27/16, REPLY IN SUPPORT OF INTEGRATED CAPABILITIES, LTD. AND KEVIN PERK'S MOTION TO DIMISS FOR LACK OF PERSONAL JURISDICTION

06/01/2016 FILE STAMP 06/01/16, NOTICE OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL

06/01/2016 Removed: Defense Attorney MODRCIN, WILLIAM M

06/01/2016 Defense Attorney CREEDY, BENJAMIN S assigned on 06/01/16

06/01/2016 FILE STAMP 06/01/16, NOTICE OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL

06/01/2016 Removed: Plaintiff Attorney PICKERING, CHRISTOPHER F

06/01/2016 Removed: Defense Attorney SUTER, MICHELLE M

06/03/2016 FILE STAMP 06/03/16, MOTION OF WESTMARK CAPITAL, LLC, CROWD SHOUT HOLDINGS, LTD., GCMHOLDINGS, LTD. AND GABRIEL MURPHY TO CONTINUE TO MOTION HEARING SCHEDULED FOR JUNE 17, 2016

06/07/2016 RESCHED. MOTION on 07/05/16,01:30pm,Div 11, NEW ATTORNEY CREEDY ON CASE WHO HAS SCHEDULED VACATION PRIOR TO BEING RETAINED

06/20/2016 FILE STAMP 06/20/16, MOTION OF GCM HOLDINGS, LTD. FOR ANTI-SUIT INJUNCTION AGAINST CROWD SHOUT HOLDINGS, LTD. AND CROWD SHOUT, LTD.

06/28/2016 FILE STAMP 06/28/16, NOTICE OF HEARING

06/28/2016 FILE STAMP 06/28/16, NOTICE OF HEARING, SET FOR 7/5/16 AT 1:30AM

06/30/2016 FILE STAMP 06/30/16, CROWD SHOUT HOLDINGS, LTD,'S SURREPLY AND SUPPLEMENTAL SUGGESTIONS IN OPPOSITION TO CROSS-CLAIM DEFENDANTS INTEGRATED-CAPABILITIES, LTD. AND KEVIN JOHN PERKS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

06/30/2016 FILE STAMP 06/30/16, REQUEST FOR HEARING AND NOTICE THEROF FOR GCM HOLDINGS, LTD.'S MOTION FOR ANTI-SUIT INJUNCTION AGAINST CROWD SHOUT HOLDINGS, LTD. AND CROWD SHOUT, LTD

07/05/2016 FILE STAMP 07/01/16, MOTION TO QUASH HEARING NOTICE AND FOR EXTENSION OF TIME TO RESPOND TO GCM HOLDINGS' MOTION FOR ANTI-SUIT INJUNCTION

07/05/2016 PRO HAC VICE FEE $100.00; PAID BY BENJAMIN S CREEDY, RECEIPTED AMOUNT $100.00, E-PAYMENT NO: 68269351

07/05/2016 FILE STAMP 07/05/16, VERIFIED APPLICATION OF AN OUT-OF-STATE ATTORNEY FOR ADMISSION PRO HAC VICE TO PRACTICE IN THE CAPTIONED CASE

07/05/2016 FILE STAMP 07/05/16, MOTION TO ADMIT OUT-OF-STATE ATTORNEY PROC HAC VICE FOR THIS CASE

07/05/2016 FILE STAMP 07/05/16, OUT-OF-STATE ATTORNEY'S OATH

07/05/2016 FILE STAMP 07/05/16, ORDER ADMITTING OUT-OF-STATE ATTORNEY

07/05/2016 <******* Bench Notes *********>
MOTIONS: PLAINTIFF APPEARS BY ADAM GASPER AND GREG SPIES. MICHAEL CRABB APPEARS FOR KEVIN PERKS AND I-CAP. BEN CREEDY AND ED MURPHY APPEAR FOR DEFENDANTS MURPHY (APPEARS IN PERSON) AND WESTMARK AND FOR CROWD SHOUT HOLDINGS. HEARING

ON PERKS AND I-CAP'S MOTION TO DISMISS: COURT WILL ALLOW DISCOVERY ON JURISDICTION. BY 071916, PARTIES TO AGREE ON RELEVANT DISCOVERY COVERING JURISDICTION, WHICH WILL NEED TO BE RESPONDED TO BY 080916. SUPPLEMENTAL BRIEFING DUE IN OPPOSITION TO MOTION TO DISMISS BY 082316 WITH RESPONSES DUE BY 090616. RESPONSE TO MOTION FOR ANTI-INJUNCTION DUE BY 071516. HEARING ON ANTI-INJUNCTION MOTION ON 072016. COURT GRANTS PLAINTIFF'S MOTION FOR ALL PROCEEDS FROM WEBSITE TO BE DEPOSITED IN LOCK BOX. NO DISTRIBUTIONS ABSENT AGREEMENT BY PARTIES. PARTIES TO FINALIZE THIRD PARTY ENTITY TO RUN WEBSITE BY AGREED ORDER. IF NOT OBTAINABLE, ALTERNATIVE ARRANGEMENTS MAY BE PRESENTED AT NEXT HEARING DATE. HEARING ON MOTION TO DISMISS SET FOR 091316.(RPTR: RANDOLPH)(JUDGE: GURNEY)

07/05/2016 SCHED. MOTION on 07/20/16,04:00pm,Div 11

07/05/2016 SCHED. MOTION TO DISMISS on 09/13/16,02:30pm,Div 11

07/07/2016 FILE STAMP 07/07/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

07/18/2016 FILE STAMP 07/15/16, OPPOSITION TO GCM HOLDINGS' MOTION FOR ANTI-SUIT INJUNCTION

07/20/2016 <******* Bench Notes *********>
HEARING ON MOTION FOR ANTI-SUIT INJUNCTION: PLAINTIFF APPEARS BY ADAM GASPER. DEFENDANTS INTEGRATED CAPABILITIES AND PERKS APPEARS BY MICHAEL CRABB. DEFENDANTS WESTMARK, GCM AND MURPHY APPEAR BY BEN CREEDY. MOTION DENIED FOR REASONS STATED ON THE RECORD. PLAINTIFF'S ATTORNEY TO PREPARE JOURNAL ENTRY.(RPTR: MURRAY)(JUDGE: GURNEY)

07/21/2016 FILE STAMP 07/21/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

07/22/2016 DISPOSITIVE MOTION FEE $195.00; PAID BY ADAM J GASPER, RECEIPTED AMOUNT $195.00, E-PAYMENT NO: 68511260

07/22/2016 FILE STAMP 07/22/16, MOTION TO DISMISS TECHBIZ ADVISORS, LLC'S CLAIMS WITH PREJUDICE FOR FAILURE TO PROSECUTE

08/01/2016 FILE STAMP 08/01/16, GCM HOLDINGS, LTD.'S OBJECTION TO PROPOSED JOURNAL ENTRY FILED BY PLAINTIFF CROWD SHOUT. LTD. ON JULY 21, 2016

08/05/2016 FILE STAMP 8/4/2016, DECLARATION OF ROGINA MURPHY

08/09/2016 ELECTRONIC ENTRY OF APPEARANCE BY BENJAMIN S CREEDY AS A PLAINTIFF ATTORNEY FOR TECHBIZ

08/09/2016 FILE STAMP 08/09/16, TECHBIZ ADVISORS, LLC'S OPPOSITION TO MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE RESPONSE OUT OF TIME

08/09/2016 FILE STAMP 08/09/16, INTERGRATED CAPABILITIES, LTD. AND KEVIN PERK'S MOTION FOR PROTECTIVE ORDER

08/10/2016 FILE STAMP 08/10/16, JOURNAL ENTRY (FROM HEARING ON JULY 5TH, 2016)

08/23/2016 FILE STAMP 08/23/16, CROSS CLAIM PETITION

08/24/2016 FILE STAMP 08/23/16, RESPONSE TO MOTION FOR PROTECTIVE ORDER FILED BY KEVIN JOHN PERKS AND INTEGRATED-CAPABILITIES, LTD., MOTION TO COMPEL DISCOVERY AND MOTION TO EXTEND TIME TO FILE BRIEFING ON JURISDICTIONAL ISSUES

08/25/2016 FILE STAMP 08/24/16, CERTIFICATE OF SERVICE

09/09/2016 FILE STAMP 09/09/16, CERTIFICATE OF SERVICE

09/09/2016 FILE STAMP 09/09/16, MOTION FOR EXTENSION OF TIME TO RESPOND TO GCM HOLDINGS' CROSSCLAIM PETITION

09/13/2016 <******* Bench Notes *********>
MOTION TO DISMISS: PLAINTIFF APPEARS BY GREG SPIES. DEFENDANT PERKS AND INTEGRATED CAPABILITIES APPEAR BY MICHAEL CRABB. DEFENDANT MURPHY APPEARS IN PERSON WITH BEN CREEDY AND ED MURPHY. DEFENDANT WESTMARK CAPITAL APPEARS BY BEN CREEDY AND ED MURPHY. GCM, TECH BIZ, CROWD SHOUT HOLDINGS APPEAR BY BEN CREEDY AND ED MURPHY. COURT ENTERS STAY AND HOLDS PENDING MOTION TO DISMISS IN ABEYANCE. THE STAY IS LIMITED ONLY TO PENDING MOTION TO DISMISS BY DEFENDANTS PERKS AND AND I-CAP ON CROWD SHOUT HOLDINGS' CROSS-CLAIM AGAINST THESE DEFENDANTS.(RPTR: OMALLEY)(JUDGE: GURNEY)

09/19/2016 FILE STAMP 09/19/16, NOTICE OF INTENT TO REQUEST ISSUANCE OF NONPARTY SUBPOENAS OF BUSINESS RECORDS PURSUANT TO KSA 60-245A

09/19/2016 FILE STAMP 09/19/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY PURSUANT TO SUPREME COURT RULE 170

09/20/2016 FILE STAMP 09/20/16, REQUEST AND SERVICE INSTRUCTION FORM; INTEGRATED-CAPABILITIES, LTD.

09/20/2016 FILE STAMP 09/20/16, REQUEST AND SERVICE INSTRUCTION FORM, KEVIN JOHN PERKS

09/20/2016 PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "INTEGRATED CAPABILITIES LTD" E/S

09/20/2016 PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "KEVIN JOHN PERKS" E/S

09/26/2016 FILE STAMP 09/26/16, JOURNAL ENTRY (FROM HEARING HELD ON 9/13/16)

09/27/2016 FILE STAMP 09/27/16, CROWD SHOUT, LTD.'S ANSWER TO GCM HOLDINGS' CROSSCLAIM PETITION

09/28/2016 FILE STAMP 09/28/16, CERTIFICATE OF SERVICE

09/30/2016 FILE STAMP 09/30/16, OBJECTION TO INTENDED NON-PARTY SUBPOENA TO US BANK

09/30/2016 FILE STAMP 09/30/16, OBJECTION TO INTENDED NON-PARTY SUBPOENA TO THE KATZ LAW FIRM L C

10/07/2016 FILE STAMP 10/06/16, RETURN OF SERVICE

10/14/2016 FILE STAMP 10/13/16, MOTION FOR RECONSIDERATION FOR ANTI-SUIT INJUNCTION AGAINST CROWD SHOUT HOLDINGS LTD AND CROWD SHOUT LTD

10/14/2016 FILE STAMP 10/14/16, MOTION FOR ORDER TO ISSUE BUSINESS RECORDS SUBPOENAS

10/14/2016 FILE STAMP 10/14/16, AMENDED MOTION FOR RECONSIDERATION FOR ANTI-SUIT INJUNCTION AGAINST CROWD SHOUT HOLDINGS LTD AND CROWD SHOUT LTD

10/19/2016 SCHED. MOTION on 11/02/16,01:30pm,Div 11

10/19/2016 <******* Bench Notes *********>
HEARING ON 110216 IS HEARING ON DOCUMENTS 238 AND 239.(TAPE: NONE)

10/20/2016 FILE STAMP 10/20/16, NOTICE OF HEARING

10/21/2016 FILE STAMP 10/21/16, CLERK'S ORDER FOR 14 DAY EXTENSION OF TIME TO

ANSWER OR OTHERWISE PLEAD

10/28/2016 FILE STAMP 10/28/16, RESPONSE IN OPPOSITION TO GCM HOLDINGS'
MOTION FOR ORDER TO ISSUE BUSINESS RECORDS' SUBPOENAS

10/28/2016 FILE STAMP 10/28/16, RESPONSE IN OPPOSITION TO GCM HOLDINGS'
MOTION FOR RECONSIDERATION OF ANTI-SUIT INJUNCTION

11/02/2016 FILE STAMP 11/01/16, VOXA, LLC'S MOTION TO QUASH DEFENDANTS'
BUISNESS RECORDS SUBPOENA TO US BANK AND MEMORANDUM IN
SUPPORT THEREOF

11/02/2016 <******* Bench Notes *********>
HEARING ON MOTIONS (DOC. 238 AND 239): PLAINTIFF APPEARS BY ADAM
GASPER. DEFENDANT PERKS AND I-CAP APPEAR BY MICHAEL CRABB.
DEFENDANT MURPHY AND GCM APPEAR BY BEN CREEDY. HEARING ON
MOTION TO RECONSIDER ANTI-SUIT INJUNCTION - MOTION DENIED.
COURT SUSTAINS OBJECTION TO SUBPOENA OF CROWD SHOUT CLIENT
FILE TO KATZ LAW FIRM. DEFENDANT NEEDS TO REVISE AND LIMIT
ATTORNEY-CLIENT INFORMATION FROM REQUEST. SUBPOENA FOR VOXA
RECORDS WILL BE ADDRESSED AFTER PARTIES HAVE MET IN ATTEMPT TO
RESOLVE DISPUTE.(RPTR: RYAN)(JUDGE: GURNEY)

11/04/2016 FILE STAMP 11/03/16, NOTICE OF SERVICE OF PROPOSED JOURNAL ENTRY
PURSUANT TO SUPREME COURT RULE 170

11/08/2016 FILE STAMP 11/08/16, PERK'S AND I-CAP'S CONSENT MOTION FOR 14-DAY
EXTENSION OF TIME TO FILE REPONSIVE PLEADING

11/23/2016 FILE STAMP 11/23/16, NOTICE OF SERVICE OF DISCOVERY RESPONSES

11/23/2016 DISPOSITIVE MOTION FEE $195.00; PAID BY MICHAEL T CRABB, RECEIPTED
AMOUNT $195.00, E-PAYMENT NO: 70690573

11/23/2016 FILE STAMP 11/23/16, INTEGRATED CAPABILITIES, LTD. AND KEVIN JOHN
PERKS'S LIMITED APPEARANCE AND MOTION TO DISMISS GCM
HOLDINGS, LTD'S CROSS-CLAIM FOR LACK OF PERSONAL JURISDICTION

12/06/2016 FILE STAMP 12/05/16, APPLICATION TO ISSUE A COMMISSION PURSUANT
TO KSA 60-228

12/06/2016 FILE STAMP 12/05/16, NOTICE TO TAKE VIDEO-TAPED DEPOSITION OF NON-
PARTY MICHAEL CONNOLLY SUBPOENA DUCES TECUM

12/06/2016 FILE STAMP 12/06/16, SUBPOENA DUCES TECUM FOR DEPOSITION,
MICHAEL CONNOLLY

12/06/2016 FILE STAMP 12/06/16 03:29pm, REQUEST AND SERVICE INSTRUCTION FORM

12/06/2016 SUBPOENA ISSUED TO PROCESS SERVER, ENVELOPE PROVIDED "MICHAEL
CONNOLLY"

12/22/2016 FILE STAMP 12/22/16, AFFIDAVIT OF SERVICE, SERVED MICHAEL
CONNOLLY 12/8/16

01/05/2017 FILE STAMP 01/04/17, GCM HOLDINGS, LTD.'S MOTION TO COMPEL
DISCOVERY

01/05/2017 FILE STAMP 01/04/17, GCM HOLDINGS, LTD.'S PRELIMINARY RESPONSE TO
INTEGRATED-CAPABILITIES, LTD. AND KEVIN JOHN PERKS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

02/07/2017 FILE STAMP 02/06/17, INTEGRATED-CAPABILITIES, LTD. AND KEVIN JOHN
PERKS'S RESPONSE IN OPPOSITION TO GCM HOLDINGS' MOTION TO
COMPEL

04/18/2017 FILE STAMP 04/18/17, NOTICE OF VIDEOTAPED DEPOSITION OF MICHAEL
CONNOLLY

04/19/2017 SCHED. CONFERENCE CALL on 04/20/17,11:30am,Div 11

04/20/2017 <******* Bench Notes *********>
CONFERENCE CALL: PLAINTIFF APPEARS BY ADAM GASPER. DEFENDANTS PERKS AND INTEGRATED APPEAR BY MICHAEL CRABB. DEFENDANTS MURPHY, GCM HOLDINGS, TECHBIZ, WESTMARK AND CROWD SHOUT HOLDINGS APPEAR BY BEN CREEDY AND ED MURPHY. COURT TAKES UP DISPUTE REGARDING DEPOSITION OF MICHAEL CONNELLY SCHEDULED FOR 042417 IN ORLANDO, FLORIDA. COURT DIRECTS THAT DEPOSITION SHALL NOT PROCEED ON THIS DATE DUE TO UNAVAILABILITY OF COUNSEL. COUNSEL SHALL ARRANGE FOR THE DEPOSITION TO BE TAKEN WITHIN NEXT 21 DAYS ON A MUTUALLY CONVENIENT DATE FOR ALL COUNSEL AND DEPONENT.(TAPE: NONE) (JUDGE: GURNEY)

04/21/2017 ELECTRONIC ENTRY OF APPEARANCE BY R EDWARD MURPHY AS A DEFENSE ATTORNEY FOR ` WESTMARK CAPITAL LLC; GABRIEL MURPHY

04/21/2017 ELECTRONIC ENTRY OF APPEARANCE BY R EDWARD MURPHY AS A PLAINTIFF ATTORNEY FOR GCM HOLDINGS LTD; TECHBIZ; CROWD SHOUT HOLDINGS LTD.

04/21/2017 FILE STAMP 04/21/17, AMENDED NOTICE OF VIDEOTAPED DEPOSITION OF MICHAEL CONNOLLY

04/21/2017 FILE STAMP 04/21/17, ENTRY OF APPEARANCE

05/26/2017 FILE STAMP 05/26/17, APPLICATION TO ISSUE COMMISSION PURSUANT TO KSA 60-228

05/26/2017 FILE STAMP 05/26/17, DEFENDANT GABRIEL MURPHYS ADDITIONAL SUGGESTIONS IN SUPPORT OF MOTION TO COMPEL DISCOVERY WITH MEMORANDUM IN SUPPORT

06/05/2017 FILE STAMP 06/05/17, NOTICE OF RELEVANT ORDER IN A SIMILAR CASE

06/09/2017 FILE STAMP 06/09/17, MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT MURPHY'S MOTION TO COMPEL

06/12/2017 FILE STAMP 06/09/17, NOTICE TO TAKE VIDEO-TAPED DEPOSITION OF NON-PARTY ANDREA M. KURAK SUBPOENA DUCES TECUM

06/12/2017 FILE STAMP 06/09/17, APPLICATION TO ISUE A COMMISSION

06/23/2017 FILE STAMP 06/22/17, RESPONSE IN OPPOSITION TO DEFENDANT MURPHY'S MOTION TO COMPEL

07/25/2017 FILE STAMP 07/24/17, APPLICATION TO ISSUE A COMMISSION PURSUANT TO KSA 60-228

08/02/2017 FILE STAMP 08/01/17, SUBPOENA DUCES TECUM FOR DEPOSITION, COBB & COLE PA

08/30/2017 FILE STAMP 08/29/17, CERTIFICATE OF SERVICE

09/01/2017 NOTICE AND ORDER OF PENDING DISMISSAL PER LOCAL RULE 6 MAILED TO PARTIES

09/01/2017 FILE STAMP 9/1/2017, NOTICE AND ORDER OF PENDING DISMISSAL

**Exhibit G**

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

MICHAEL CONNOLLY,

        Plaintiff,                              Case No.:
                                              Division:

v.

GABRIEL MURPHY AND
GCM HOLDINGS LTD.,

        Defendants.

_____/

## **COMPLAINT**

        Plaintiff, MICHAEL CONNOLLY, by and through his undersigned counsel, hereby files this Complaint against Defendants, GCM HOLDINGS, LTD. and GABRIEL MURPHY, and states as follows:

        1.      This is an action by Plaintiff, MICHAEL CONNOLLY, against Defendants, GCM HOLDINGS, LTD. and GABRIEL MURPHY, seeking temporary and permanent injunctive relief from a Subpoena Duces Tecum for Deposition ("the Subpoena") and deposition related to litigation pending in a foreign state.

        2.      Plaintiff, MICHAEL CONNOLLY, is a Florida resident.

        3.      Defendant, GCM HOLDINGS, LTD ("GCM"), is a company formed under the laws of the Republic of Malta. The principal shareholder of GCM is Defendant, GABRIEL MURPHY ("MURPHY").

        4.      Defendant, GABRIEL MURPHY, is a resident of Lee County, Florida.

        5.      Defendants subjected themselves to the jurisdiction of the courts of Florida under Chapter 48, Florida Statutes, by (a) operating, conducting, engaging in, or carrying on a business

or business venture in Florida, (b) causing injury to persons within Florida arising out of an act or omission occurring outside of Florida, and (c) engaging in substantial and not isolated activity within Florida.

6.      Venue in Orange County, Florida, is proper under Chapter 47, Florida Statutes, as the cause of action accrued in Orange County, Florida, since the subpoena was issued by the Clerk of the Circuit Court of Orange County, Florida, and the production of documents and deposition was scheduled to take place in Orange County, Florida.

### COUNT I:  TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AGAINST GCM AND MURPHY

7.      CONNOLLY realleges and incorporates herein paragraphs 1-6 of the Complaint.

8.      On December 5, 2016 and December 6, 2016, Defendant GCM filed a Notice to Take Video Taped Deposition of a Non-Party and a Subpoena Duces Tecum (the "Subpoena"), respectively, in the matter known as *Crowd Shout, Ltd., v. Gabriel Murphy, et al,* which is currently pending in Johnson County District Court in the Tenth Judicial District of Kansas (the "foreign litigation").   GCM then domesticated the Subpoena in Orange County, Florida.  A copy of the Subpoena is attached hereto as Exhibit 1.

9.      The deposition is currently set for January 6, 2017 in Orlando, Orange County, Florida.

10.      CONNOLLY is not a party to the foreign litigation and the Subpoena was issued solely to harass and embarrass him.

11.      The Subpoena seeks to question CONNOLLY regarding forty (40) different categories of documents, many of which request all communications over a period of nearly four (4) years.  The responsive documents and testimony contain private and confidential information

that is not likely to lead to admissible evidence in the case at issue and the request is solely intended to harass and embarrass CONNOLLY.

12.   The Subpoena violates CONNOLLY'S constitutional right to privacy as outlined in Art. I, §23 of the Florida Constitution.

13.   CONNOLLY is entitled to temporary and permanent injunctive relief with respect to the Subpoena in the foreign litigation insofar that it constitutes a violation of his constitutional right to privacy.

WHEREFORE, Plaintiff, MICHAEL CONNOLLY, respectfully requests that this Court enter temporary and permanent injunctive relief for MICHAEL CONNOLLY against GMC HOLDINGS, LTD. and GABRIEL MURPHY, and such other and further relief as the Court may deem necessary and proper.

Dated:  January 5, 2107.



By:  /s/ Kelly Parsons Kwiatek
    KELLY PARSON KWIATEK
    FLA. BAR NO. 860611
    Primary e-mail address:
    Kelly.Parsons@cobbcole.com
    Secondary e-mail address:
    Michele.Staples@cobbcole.com
    Post Office Box 2491
    Daytona Beach, FL 32115-2491
    Telephone:  (386) 323-9269
    Facsimile:  (386) 944-7958
    ATTORNEY FOR PLAINTIFF

## IN THE TENTH JUDICIAL DISTRICT
### DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL DEPARTMENT

CROWD SHOUT, LTD.,                    )
                                       )
          **Plaintiff,**              )
                                       )         **Case No.: 15CV00453**
v.                                     )         **Division: 11**
                                       )
GABRIEL MURPHY, et al.,                )
                                       )
          **Defendants.**            )
                                       )

### SUBPOENA DUCES TECUM FOR DEPOSITION
(Order to appear with the items listed and give deposition)

     **TO:**   **Michael Connolly**
           **444 New England Boulevard**
           **Winter Park, Florida 32789**

     You are hereby commanded to appear before a person authorized by law to take depositions for your deposition on January 6, 2017 at the location specified on the notice as detailed on page 2 of this **Subpoena Duces Tecum** and you are further commanded to produce at the date and time of the deposition for inspection and/or copying any and all documents and materials described in **Exhibit A**.

     **IF YOU FAIL TO APPEAR, YOU MAY BE IN CONTEMPT OF COURT.** You are subpoenaed to appear by the following attorneys for Defendants: Benjamin Creedy and Edward Murphy and unless executed from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed.

                             **TIFFANY MOORE RUSSELL**

Dated: **DEC 0 8 2016**

                            Clerk of the Court
                            Orange County, Florida

**EXHIBIT**

1

*Clerk of the District Court, Johnson County Kansas*
*12/06/16  03:29pm HS*

15CV00453
Div11

# IN THE TENTH JUDICIAL DISTRICT
## DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL DEPARTMENT

CROWD SHOUT, LTD.,                    )
                                      )
          Plaintiff,                  )
                                      )          Case No.: 15CV00453
v.                                    )          Division: 11
                                      )
GABRIEL MURPHY, et al.,               )
                                      )
          Defendants.                 )
                                      )

## SUBPOENA DUCES TECUM FOR DEPOSITION
(Order to appear with the items listed and give deposition)

**TO:    Michael Connolly**
       **444 New England Boulevard**
       **Winter Park, Florida 32789**

      You are hereby commanded to appear before a person authorized by law to take depositions for your deposition on January 6, 2017 at the location specified on the notice as detailed on page 2 of this **Subpoena Duces Tecum** and you are further commanded to produce at the date and time of the deposition for inspection and/or copying any and all documents and materials described in **Exhibit A**.

      **IF YOU FAIL TO APPEAR, YOU MAY BE IN CONTEMPT OF COURT.**  You are subpoenaed to appear by the following attorneys for Defendants: Benjamin Creedy and Edward Murphy and unless executed from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed.

TIFFANY MOORE RUSSELL

FABIOLA ALVARADO
CIVIL COURT SEAL

Dated: DEC 0 8 2016

Clerk of the Court
Orange County, Florida

*Clerk of the District Court, Johnson County Kansas*
*12/06/16  03:29pm HS*

### IN THE TENTH JUDICIAL DISTRICT
### DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL DEPARTMENT

CROWD SHOUT, LTD.,  )
                    )
Plaintiff,          )
                    )        Case No.: 15CV00453
v.                  )        Division: 11
                    )
GABRIEL MURPHY, et al.,  )
                    )
Defendants.         )
                    )

### NOTICE TO TAKE VIDEO-TAPED DEPOSITION OF NON-PARTY
### MICHAEL CONNOLLY SUBPOENA DUCES TECUM

PLEASE TAKE NOTICE that Intervenor GCM Holdings Ltd will take the video-taped deposition of Michael Connolly on January 6, 2017 at 9:00 a.m., at the office of U.S. Legal Support, 20 North Orange Avenue, Suite 1209, Orlando, Florida 32801. Said deposition will be held before a person authorized to administer oaths under the laws of the State of Florida, to be used as discovery and as evidence in the above-captioned matter. This deposition will be recorded in both video tape means as well as by stenograph means by US Legal Support. The deposition will take place pursuant to the Florida Rules of Civil Procedures. The deponent is commanded to produce the documents identified in Exhibit A, which is attached hereto and incorporated herein by reference.

Respectfully submitted,

**MURPHY, TAYLOR, SIEMENS & ELLIOTT, P.C.**

By: _/s/ Benjamin S. Creedy_
    Benjamin S. Creedy – #24776
    bencreedy@mtselaw.com
    3007 Frederick Avenue
    St. Joseph, Missouri 64506
    Telephone: (816) 364-6677
    Facsimile: (816) 364-9677

**ATTORNEYS FOR DEFENDANT GCM HOLDINGS, LTD.**

*Clerk of the District Court, Johnson County Kansas*
*12/05/16  03:20pm JC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was sent to all attorneys of record through the Court's electronic filing system on this 6th day of December, 2016.

*/s/ Benjamin S. Creedy*

*Clerk of the District Court, Johnson County Kansas*
*12/06/16  03:29pm HS*

## EXHIBIT A

(Documents to be produced by deponent)

1.      A complete copy of the affidavit you will have submitted to the civil court in Malta in claim numbers 892/2015 JZM and 894/2015 JZM by the date of your deposition in the instant action, as ordered by the Honorable Justice Joseph McKeon on November 28, 2016.

2.      Complete copies of all documents which are referenced in your affidavit as described in request number one above.

3.      A complete copy of the Advertising Management Services Agreement between Plaintiff and Contech, LLC, including all attachments thereto.

4.      A complete copy of any documents in your possession evidencing your ultimate beneficial ownership in Contech, LLC and/or its successors or assigns.

5.      A complete copy of any documents in your possession reflecting the current ownership or capitalization structure of Contech, LLC and/or its successors or assigns.

6.      A complete copy of any documents in your possession evidencing your ultimate beneficial ownership in Connolly Investment Group, LLC and/or its successors or assigns.

7.      A complete copy of any documents in your possession evidencing your ultimate beneficial ownership in Digital Technology, LLC and/or its successors or assigns.

8.      A complete copy of the Sonobi Web Publisher agreement as agreed to by Plaintiff, including all attachments thereto.

9.      A fully-executed, complete copy of your Noncompete, Nondisclosure and Nonsolicitation Agreement with Plaintiff.

10.      A complete copy of any and all letters your legal representatives have sent to Kevin John Perks and/or Plaintiff on your behalf, from November 19, 2014 to the present.

11.      A complete copy of all emails which include any attachments of any draft version of the Shareholders' Agreement for Crowd Shout Holdings Ltd in which you or your attorneys sent and/or received to or from third parties from June 1, 2012 through August 20, 2012.

12.      Copies of all emails sent by you to and/or received by you from Cory Lagerstrom, from March 1, 2013 through January 5, 2017.

13.      Copies of all emails sent by you to and/or received by you from James McClymont, from March 1, 2013 through January 5, 2017.

3

14.    Copies of all emails sent by you to and/or received by you from Nicholas Gaugler, from March 1, 2013 through January 5, 2017.

15.    Copies of all emails sent by you to and/or received by you from Robert Hepting, from March 1, 2013 through January 5, 2017.

16.    Copies of all emails sent by you to and/or received by you from James Neeld, from March 1, 2013 through January 5, 2017.

17.    Copies of all emails sent by you to and/or received by you from Kevin John Perks, from March 1, 2013 through January 5, 2017.

18.    Copies of all emails sent by you to and/or received by you from Robert Arthur Cannell, from March 1, 2013 through January 5, 2017.

19.    Copies of all emails sent by to you to and/or received by you from Catherine Baxter, from March 1, 2013 through January 5, 2017.

20.    Copies of all emails sent by to you to and/or received by you from Eric Kraft, from October 8, 2014 through January 5, 2017.

21.    Copies of all emails sent by you to and/or received by you from Crowd Shout Limited, from March 1, 2013 through January 5, 2017.

22.    Copies of all emails sent by you to and/or received by you from Crowd Shout Holdings Limited, from March 1, 2013 through January 5, 2017.

23.    Copies of all emails sent by you to and/or received by you from Voxa, LLC, from March 1, 2013 through January 5, 2017.

24.    Copies of all emails sent by you to and/or received by you from Integrated-Capabilities Ltd, from March 1, 2013 through January 5, 2017.

25.    Copies of all emails sent by you to and/or received by you from Integrated-Capabilities (Malta) Ltd, from March 1, 2013 through January 5, 2017.

26.    Copies of invoices in your possession which you have received from Integrated-Capabilities (Malta) Ltd from July 1, 2012 to the present.

27.    Copies of all documents in your possession which reflect on the relationship between Digital Technology LLC and Integrated-Capabilities (Malta) Ltd.

28.    Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to Nonsuch Financial Ltd.

4

29.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to Desert Fox Ltd.

30.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to invoice #1738, as received by you and other employees of Contech, LLC (d/b/a Sonobi Media) from Gabriel Murphy on November 6, 2015.

31.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to NG Holdings Ltd.

32.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to a meeting between you and Nicholas Gaugler and Robert Hepting from the summer of 2014.

33.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to the instant action.

34.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to claim number ORD15/0024, as filed by the Plaintiff in the Isle of Man on May 22, 2015.

35.     Copies of any electronic communications you have sent or received which reflects upon, refers, relates to or is in reference to debt purportedly owed by Plaintiff to Digital Technology LLC.

36.     Copies of any electronic communications or documents you have sent or received which reflects upon, refers, relates to or is in reference to the account receivable presently owed to Plaintiff by Contech, LLC (d/b/a Sonobi Media).

37.     A complete print out of your Google Hangouts message history from January 1, 2014 through January 5, 2017 between you and Gabriel Murphy.

38.     A complete print out of your Google Hangouts message history from January 1, 2014 through January 5, 2017 between you and Nicholas Gaugler.

39.     Copies of all documents you have sent or received which reflects upon, refers, relates to or is in reference to the Intellectual Property Assets, as defined in the Asset Purchase Agreement which you signed, from August 20, 2012, for the dates from January 1, 2012 through January 5, 2017.

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

MICHAEL CONNOLLY,                    Case No.: 2017-CA-000168-O
          Plaintiff,

and

GABRIEL MURPHY, and
GCM HOLDINGS LTD,
          Defendants.
                                        /

## ORDER COMPELLING DEPOSITION OF PLAINTIFF

THIS CAUSE came before the Court on March 7, 2017 on Defendant Gabriel Murphy's

Reply in Opposition to Plaintiff Michael Connolly's Motion For Protective Order & Motion For

Emergency Hearing to Compel Deposition & Order to Appear To Show Cause & For Sanctions

("Motion to Compel") and the Plaintiff, Michael Connolly's Motion for Protective Order

("Motion for Protective Order"), and the Court having heard the argument of counsel, and being

fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1.      Defendants' Motion to Compel is hereby GRANTED.

2.      Plaintiff's Motion for Protective Order is hereby GRANTED in part and DENIED

in part.

3.      Plaintiff shall personally appear (not as a corporate representative) for a

videotaped deposition *without duces tecum* on or before April 24, 2017. Plaintiff's time in

deposition shall not exceed eight (8) hours.

4.      Defendants' withdrawal of the *duces tecum* is without prejudice.

5.      Plaintiff's deposition testimony is ordered in the Johnson County, Kansas

litigation, case number 15-CV-00453, which may be used for any legal, valid purpose in

litigation, including collateral litigation proceedings as long as it is consistent with, and subject

to, Federal, State, and/or applicable rules of evidence. In no event, shall the videotaped deposition, in whole or in part, be put on an online forum, nor shall it be sent electronically except to be used for any legal, valid purpose in litigation.

6.     Attorneys' fees and costs, both entitlement and amount (if any), for the Defendants are reserved.

DONE AND ORDERED in Orlando, Orange County, Florida, this _17_ day of _April_ , 2017.

_____
HONORABLE CHRISTI L. UNDERWOOD
Circuit Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and furnished via ___E - FILING___ this _17_ day of ___APRIL___ , 2017 to attorneys of record:

Lauren C. Heatwole, Esq.
Heatwole Law Firm, P.A.
1415 E. Robinson Street, Suite B
Orlando, Florida 32801
Telephone: 407-490-2467
Fax: 407-641-9530
Email: Lauren@HeatwoleLaw.com
*Attorney for Defendants*

Kelly Parsons Kwiatek, Esq.
Cobb Cole Attorneys at Law
P.O. Box 2491
Daytona Beach, Florida 32115
Telephone: 386-323-9269
Fax: 386-944-7958
Email: Kelly.Parsons@cobbcole.com
*Attorney for Plaintiff*

_____
Judicial Assistant / Attorney

# Exhibit H



# Fifth District Court of Appeal

**Case No: 5D** [_____]  Search

**17-1172**

**MICHAEL CONNOLLY**
**vs**
**GABRIEL MURPHY AND GCM HOLDINGS, LTD.**

|   | Date | Type | Pleading | Note |
|---|------|------|----------|------|
| 📄 | 09/19/2017 | Order | ORD-Case Stayed Pending Bankruptcy | |
| 📄 | 09/13/2017 | Event | Suggestion of Bankruptcy | |
| 📄 | 08/28/2017 | Response | Response | TO MOT ATTY FEES |
| 📄 | 08/17/2017 | Motion | Motion For Attorney's Fees | FOR MERIT PANEL CONSIDERATION |
| 📄 | 08/17/2017 | Response | Reply | |
| 📄 | 08/03/2017 | Notice | Other Notice | OF TWO CITATION CORRECTIONS FOR RESPONSE |
| 📄 | 08/02/2017 | Order | Order Grant EOT to Reply to Response | |
| 📄 | 08/01/2017 | Motion | Motion Extension of TimeTo Reply To Respons | |
| 📄 | 07/28/2017 | Brief/Record | Appendix to Response | |
| 📄 | 07/28/2017 | Response | Response | PER 4/25 ORDER |
| 📄 | 07/24/2017 | Order | ORD-GRANT. SUBSTIT. OF COUNSEL | |
| 📄 | 07/21/2017 | Motion | Motion For Substitution of Counsel | |
| 📄 | 07/20/2017 | Order | Order Grant EOT to file Response to Ct. Order | |
| 📄 | 07/19/2017 | Motion | Motion for Extension of Time to File | |

| | | | | |
|---|---|---|---|---|
| | | | Response | |
| 📄 | 07/07/2017 | Order | Order Grant EOT to file Response to Ct. Order | |
| 📄 | 07/06/2017 | Motion | Motion for Extension of Time to File Response | |
| 📄 | 07/05/2017 | Order | Order Deny Motion to Strike | |
| 📄 | 06/26/2017 | Response | Response | PER 6/15 ORDER |
| 📄 | 06/15/2017 | Order | ORD-TO FILE RESPONSE | |
| 📄 | 06/14/2017 | Motion | Motion To Strike | |
| 📄 | 06/13/2017 | Order | Order Deny Miscellaneous Motion | |
| 📄 | 06/13/2017 | Notice | Notice of Appearance | |
| 📄 | 06/06/2017 | Order | Order Grant EOT to Reply to Response | |
| 📄 | 06/05/2017 | Motion | Motion Extension of TimeTo Reply To Respons | |
| 📄 | 06/02/2017 | Response | Response | TO ADDITIONAL SUGGESTIONS IN SUPPORT OF MOT TO DISQUALIFY |
| 📄 | 05/26/2017 | Brief/Record | Appendix to Response | |
| 📄 | 05/26/2017 | Response | Response | PER 5/16 ORDER TO MOT DISQUALIFY |
| 📄 | 05/25/2017 | Event | Miscellaneous Docket Entry | "ADDITIONAL SUGGESTIONS IN SUPPORT OF MOT TO DISQUALIFY" |
| 📄 | 05/25/2017 | Brief/Record | Appendix | TO ADDITIONAL SUGGESTIONS |
| 📄 | 05/22/2017 | Order | Order Grant EOT to file Response to Ct. Order | |
| 📄 | 05/19/2017 | Motion | Motion for Extension of Time to File Response | |
| 📄 | 05/19/2017 | Notice | Notice of Appearance | |
| 📄 | 05/16/2017 | Order | ORD-TO FILE RESPONSE | |
| 📄 | 05/16/2017 | Brief/Record | Appendix | TO MOT DISQUALIFY |
| 📄 | 05/16/2017 | Motion | Miscellaneous Motion | TO DISQUALIFY |
| 📄 | 05/09/2017 | Order | Order Grant EOT to file Response to Ct. Order | |
| 📄 | 05/09/2017 | Brief/Record | Appendix | |

| | 05/09/2017 | Motion | Motion for Extension of Time to File Response | |
| | 05/08/2017 | Notice | Other Notice | OF NON-REPRESENTATION |
| | 04/25/2017 | Order | ORD-Respondent to Respond | |
| | 04/24/2017 | Receipt | Case Filing Fee | : Receipt: 2017 - 1014097 Amount: 300 |
| | 04/20/2017 | Order | Order to pay filing fee - Writ (300) | |
| | 04/20/2017 | Brief/Record | Appendix to Petition | FILED HERE 4/19/17 |
| | 04/20/2017 | Letter | Acknowledgement Letter 1 | |
| | 04/20/2017 | Invoice | Filing Fee $300 | : Invoice #: 2017 - 1012499 Amount: 300 |
| | 04/20/2017 | Petition | Petition Filed | FILED HERE 4/19/17 |

# Exhibit I

RECEIVED, 9/13/2017 3:50 PM, Joanne P. Simmons, Fifth District Court of Appeal

IN THE FIFTH DISTRICT COURT OF APPEAL
STATE OF FLORIDA

MICHAEL CONNOLLY

             CASE NO. 5D17-1172

     Petitioner,

v.

GABRIEL MURPHY AND
GCM HOLDINGS LTD.,

     Respondents.

_____

## NOTICE OF AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE

  Petitioner, MICHAEL CONNOLLY, hereby provides notice that an involuntary bankruptcy petition has been filed against Gabriel Murphy, which action is styled as *In re Gabriel C. Murphy, putative debtor*; United States Bankruptcy Court, Middle District of Florida, Ft. Myers Division; Case No. 9:17-bk-07843-FMD, invoking the automatic stay provisions of 11 U.S.C. § 362(a).



      By: /s/ Kelly Parsons Kwiatek
         ANDREA KURAK
         FLA. BAR NO.  0414069
         KELLY PARSONS KWIATEK
         FLA. BAR NO. 860611
         Primary Email:
         Andrea.Kurak@CobbCole.com
         Kelly.Parsons@CobbCole.com
         Secondary Email:

Michele.Staples@CobbCole.com
149 South Ridgewood Ave., Suite 700
Daytona Beach, FL 32114
Telephone: (386) 323-9269
Facsimile: (386) 944-7958
ATTORNEY FOR PETITIONER,
MICHAEL CONNOLLY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of September, 2017, a true and correct copy of the above and foregoing was e-filed via eDCA and furnished via email to: Lauren Heatwole, Esq., Heatwole Law Firm, 1415 E. Robinson Street, Suite B, Orlando, FL 32801, Lauren@HeatwoleLaw.com, Kathry@HeatwoleLaw.com, Shannn@HeatwoleLaw.com.

/s/ Kelly Parsons Kwiatek
Attorney